# APPENDIX A



# Pima County Protocols

## for the
## Multidisciplinary Investigation
## of Child Abuse





**Office of the Pima County Attorney**
**Barbara LaWall, Pima County Attorney**
**Tucson, Arizona**



**October 2014**

| Table of Contents |
|---|

**Section I**

Statement of Purpose ..................................................................................................................3

History ........................................................................................................................................4

Participating Agencies ...............................................................................................................5

Multi-Disciplinary Team Members Roles and Responsibilities ................................................6

**Section II – Protocols**

Department of Child Safety –*protocol pending*......................................................................12

Law Enforcement Protocol .......................................................................................................13

Office of Child Welfare Investigations –*protocol pending* ....................................................19

Medical Protocol ......................................................................................................................20

Behavioral Health Protocol ......................................................................................................25

Southern Arizona Mental Health Corporation (SAMHC) Protocol ........................................30

Extended Crisis Intervention Services .....................................................................................32

Pima County Attorney Protocol ...............................................................................................38

Schools' Roles and Responsibilities Protocol ..........................................................................45

Victim Services Protocol .........................................................................................................50

Judicial Protocol for Juvenile and Superior Court ...................................................................52

Adult Probation Protocol..........................................................................................................59

Indian Child Welfare Act .........................................................................................................64

**Section III - Southern Arizona Children's Advocacy Center Protocol** ...........................65

**Section IV – Reporting and Training Responsibilities**

Mandatory Reporting ...............................................................................................................74

Mandated Reporter Training ....................................................................................................77

Annual Report to the Governor ...............................................................................................79

Procedures for Dispute Resolution ..........................................................................................79

Training ....................................................................................................................................80

Case Studies .............................................................................................................................81

**Section V – Appendices**

Appendix A - A.R.S. §13-3620 – Mandatory Reporting ...................................................84

Appendix B - Arizona Revised Statutes §8-817 – Investigation Protocols .......................88

Appendix C - Records Request Form ...............................................................................90

Appendix D - Forensic Medical Examinations .................................................................91

Appendix E - Extended Crisis Intervention Services – Multi Disciplinary Team
    Authorization Form ...................................................................................100

Appendix F - Minimal Facts Interview ..........................................................................101

Appendix G - Rule 39 of Criminal Code, Victim's Rights .............................................102

Appendix H - Attorney General's Opinion: School District Cooperation with Child
    Protective Services ....................................................................................105

Appendix I - Attorney General's Opinion: Whether Private Schools May Impose
    Requirements or Limitations on Child Protective Services ......................107

Appendix J - Attorney General's Opinion: Responsibility to Pay for Medical Expenses
    Incurred during Investigation ....................................................................111

Appendix K - Glossary of Medical Terms ......................................................................113

Appendix L - Definitions of Abuse .................................................................................116

Appendix M - Physical Neglect Report Form .................................................................120

Appendix N - Behavioral Health Agency Report Form .................................................122

Appendix O - Information for Victims of Crime ............................................................124

Appendix P - Urgent Pediatric Sexual Abuse Triage Procedures ...................................125

Appendix Q – Department of Child Safety Cue Questions ............................................126

Appendix R - Resources and Contacts ............................................................................127

Appendix S - Tips for Examining Child Sex Abuse Victims .........................................129

Appendix T - ARS §8-810 Missing Children Notification .............................................130

## STATEMENT OF PURPOSE

This protocol, developed from a collaborative effort of government and non-governmental agencies that work with child victims and witnesses, is offered as a model for handling child abuse cases in Pima County.  It provides guidelines to assist those who investigate and work with child abuse and domestic violence in reducing the secondary trauma that is often associated with such investigations.

The collaborative partners set the following goals for this document:
1. Recognition that children should be treated with dignity and respect.
2. Promotion of a system that recognizes the standards and contributions of the various disciplines involved.
3. Creation of workable guidelines for joint investigations of all allegations of criminal conduct.  *(See Appendix L)*
4. Provision of a consistent and efficient approach to the investigation, prosecution and management of child abuse and neglect cases in Pima County.
5. Limitation of the number of interviews of the child victim or witness.
6. Development of a method of monitoring joint investigations and variances there from.

While protocols are designed as templates with the benefits of predictability and adherence in mind, individual steps within a particular protocol are certainly not intended to be followed by rote with unthinking or irrational rigidity.  For example, technological and clinical advances, or circumstances belonging uniquely to the moment at hand, may justifiably operate to modify steps from those described herein and without altering the overall purpose or efficacy of that protocol.  Accordingly, it is well-recognized by the authors that best practices within a particular discipline can encompass variations in, or evolution of, a process while still retaining absolute medical or functional integrity of the result.

While it is recognized that each partner/agency has its own mandate to fulfill, the Task Force also acknowledges that no one single agency or discipline can fully address the problem of child abuse.  Therefore, each agency must be cognizant of the needs of the victim, as well as sensitive to the needs of other professionals involved.  Where any interagency conflict exists, the best interests of the child shall be the overriding concern.

# HISTORY

    The Pima County Task Force on Child Abuse Prosecution was formed in 1989 to address issues of investigation and prosecution of child abuse.  In 1992 the Pima County Attorney's Office was the recipient of grant funds from the Governor's Office for Children to establish multi-disciplinary, interagency cooperation for the investigation and management of child abuse cases.

    The Pima County Attorney's Office took the lead in utilizing the Task Force to develop a set of protocols which contained a comprehensive array of policies and procedures representing all applicable disciplines.  The Pima County Task Force's <u>Protocol for the Interagency Investigation of Child Abuse in Pima County</u> came into existence in 1993.  Over the succeeding years effective and meaningful partnerships were forged and strengthened among law enforcement agencies, Child Protective Services (CPS – since replaced by the Department of Child Safety, DCS), medical providers and the County Attorney's Office which enhanced the overall abilities of each agency to respond to cases of child abuse.  Representatives of the partner agencies meet twice monthly in a Multi-Disciplinary Team (MDT) setting which allows for the review, and continued improvement in the system's response to the needs of children.  The MDT supplanted the Task Force.

    In 1999 the <u>Protocol</u> was revised to reflect the utilization by the partner agencies of the Southern Arizona Children's Advocacy Center.  The Children's Advocacy Center provides forensic interview and medical services at a single facility.  Crisis intervention, domestic violence support, and counseling referrals for victims and their non-offending family members are offered.  Law enforcement and DCS are located in the Center's building, and are therefore immediately involved in the process.  Case staffings and briefings occur there as well.  (See Section III for the Advocacy Center's policy and procedural information).

    In 2003 representatives of the Pima County Attorney's Office, law enforcement, Child Protective Services, non-profit organizations, legislators and the Governor's Office participated in a six month process to address issues relating to child protection and possible reform of the system which responds to crimes against children and issues of child welfare.  The resultant House Bill redefined the mission of Child Protective Services and required that law enforcement and Child Protective Services jointly investigate all allegations of Criminal Conduct (See Appendix L).

    In March of 2004, the Pima County Attorney's Office reconvened the Pima County Task Force on Child Abuse Prosecution to revise the existing <u>Protocol</u>.  Original members of the Task Force, as well as new members, collaborated on its complete and extensive revision.  In August 2006 the procedures in the 2004 protocol were reviewed

and updated to produce the January 2007 Protocol.  In 2008 the legislature addressed issues of child abuse and joint investigations amending the statutes. A statewide summit including law enforcement, Child Protective Services and County Attorneys was held in Phoenix to review those changes and recommend common elements for protocols and reporting statewide.

Pima County is committed to the use of child and family advocacy centers, and in co-location of relevant agencies in the investigation and prosecution of cases of child maltreatment.  Agencies in Pima County joined in a collaborative effort to develop an advocacy center that serves the needs of children and also addresses the needs of adult victims of sexual assault, domestic violence and elder abuse.  Phase I of this project was the new Children's Advocacy Center with co-location of a number of partner agencies, including the Pima County Attorney's Office, the Pima County Sheriff's Office, Tucson Police Department, Child Protective Services, the EMERGE Center for Domestic Violence Services, Victim Services, Las Familias Angel Center for Childhood Sexual Abuse Treatment, and the Southern Arizona Children's Advocacy Center.  The $6 million building was financed through county bond funds and opened in October 2008.

In 2013 the state legislature established the Office of Child Welfare Investigations (OCWI) (Arizona Revised Statute §841-1969) to investigate criminal conduct (See Appendix L) allegations, conduct trainings, and to coordinate with Child Protective Services and law enforcement. The 2014 Protocol is the result of those changes and other necessary updates.  At the time of publication the State of Arizona was reviewing the structure of CPS (now DCS) and OCWI.  The Pima County Attorney wishes to thank all those who showed their commitment to this effort by attending meetings, reviewing and drafting portions of the document, providing materials for appendices, and in many other ways contributing to its completion.

## PARTICIPATING AGENCIES

| | |
|---|---|
| Arizona Department of Juvenile Corrections | Pima County Attorney's Office (PCAO) |
| Arizona State Attorney General's Office | PCAO - Victim Services |
| Catholic Diocese of Tucson | Pima County Sheriff's Department |
| City of Tucson Prosecutor's Office | Pima County Superintendent of Schools |
| Court Appointed Special Advocates | Sahuarita Police Department |
| Community Partnership of Southern Arizona | South Tucson Police Department |
| Tucson Police Department | So. Arizona Center Against Sexual Assault |
| Emerge Center Against Domestic Abuse | Southern Arizona Children's Advocacy Center |
| Jewish Child and Family Services | Southern Arizona Mental Health Corporation |
| Las Familias | Sunnyside Unified School District |
| Marana Police Department | Superior Court, Juvenile Division |
| Office of Child Welfare Investigations | Tucson Police Department |
| Oro Valley Police Department | Tucson Unified School District |
| Pima County Adult Probation | University Medical Center – Pediatrics |
| Department of Child Safety and Family Services | Wingspan Anti-Violence Project |

## MULTI-DISCIPLINARY TEAM ROLES AND RESPONSIBILITIES

The role of the Multi-Disciplinary Team (MDT) is to ensure compliance with the Pima County Protocols for the Multidisciplinary Investigation of Child Abuse. That includes monitoring investigations of criminal conduct (as defined in A.R.S. §8-801) to ensure that joint investigation are done where applicable. The MDT brings together knowledge, experience and expertise of the team members to maximize the effectiveness of the investigative process while providing support for the professional involved in the cases.

The MDT meets on a regular basis to serve as a forum for sharing information, ideas and resources and for joint problem solving, networking, and for addressing issues confronting the investigative team. The MDT Case Reviews consider:

1. Monitor child interviews
2. Monitor, discuss and plan the investigation process
3. Review medical exams
4. Discuss protection issues
5. Provide input regarding prosecution and sentencing
6. Review family's attitude toward prosecution
7. Coordinate criminal and civil proceedings
8. Support professionals to prevent burnout.
9. Review Criminal and civil disposition
10. Promote formal and informal communication among partners
11. Discuss treatment needs of the child and Family

Any member of the team may recommend a case for review at an MDT meeting. The County Attorney representative identifies cases for review to the team members in advance of each case review meeting, collects case information, leads the case reviews, and submits a notice of case review to applicable agencies when appropriate. All members of the team are expected to be present for the case review. All participants in the case agree to abide by the Arizona Revised Statute §8-542 by signature on a dated attendance record.

**MULTI-DISCIPLINARY TEAM MEMBERS**

**Behavioral Health Providers** are advocates for victims and children, and therefore are concerned about preventing re-victimization and facilitating healing. Behavioral Health professionals may provide child victims and/or their families with crisis intervention, mental health assessments, therapeutic interventions, support, and information and referrals. Additionally, they may detect child abuse allegations (or further abuse information) while providing services to children and families. As mandated reporters, Behavioral Health professionals are obligated by law to immediately report suspected child abuse to law enforcement/DCS.

**Department of Child Safety (DCS)**
 In January 2014, Governor Jan Brewer created a new agency to focus on child safety and the provision of services to families in need. DCS will respond to reports of child neglect and abuse twenty-four hours a day, seven days a week, initiate prompt investigations as warranted, and participate in multi-disciplinary investigations with other MDT partners. When children are found to be in imminent harm, or there is no parent, guardian or custodian able or willing to provide care for the child, DCS and law enforcement have the authority to remove them from their home. If the safety of the child(ren) cannot be ensured in the home, then DCS may file a dependency petition. If children become wards of the court then DCS will develop a case plan to provide services aimed at reunification and/or permanency for the child, with a primary focus on the safety of the child.
- *Because DCS's role and procedures are evolving, this portion of the Protocol will be revised as circumstances require.*

**Court Appointed Special Advocates (CASA)** are community based trained volunteers instrumental in advocating for abused and neglected children during the dependency process. The volunteer is appointed by Juvenile Court, through a court order, for the duration of the case. Once appointed, the volunteer will interview all interested parties in the case, be a participant in case planning, and gather and provide independent, factual information to aid the court in its decision regarding the child's safety and best interests. The court order entitles the CASA volunteer access to all documents and information per A.R.S. §8-522. Sometimes case manager's notes and the Dept. of Public Safety criminal records checks will not be made available to the advocate. The information volunteers should receive includes, but is not restricted to, medical, psychological, legal files, police reports, educational records and any other pertinent items in the case file. The child(ren)'s file(s) should be made available at any time for the advocate to review.

**Domestic Violence Agencies** offer emergency shelter, personal and legal advocacy, child advocacy, domestic violence education, walk-in services, and transitional and permanent housing for victim/survivors of domestic violence. Understanding that domestic violence is rooted in power and control, domestic violence advocates work to assist victim/

survivors in finding independence and safety through empowerment. Domestic violence child advocacy services are designed to assist with safety planning for children, to lessen the effects of domestic violence on children, and to address the learned use of violence by children. Recognizing that in most homes where child abuse occurs domestic violence is also present, domestic violence advocates provide crucial support to the non-offending parent. Advocates understand that victim/survivors are the experts in their own lives and that the best way to provide safety for children is by empowering the non-offending parent to also achieve safety and freedom from violence.

**Juvenile Court** is a division of the Arizona Superior Court and is given the sole authority to hear adoption, severance (termination of parental-child relationship), delinquency (juvenile criminal), incorrigibility (runaway or out of control), and dependency (civil child abuse or neglect cases). The Juvenile Court adjudicates matters involving the protection of minors (persons under 18) who have been abused or neglected or have no parent or guardian willing or able to care for them. The delinquency section of the Juvenile Court faces issues of child abuse in two manners: 1) as perpetrators of the abuse, juveniles suspected of sexual offending are referred for investigation and supervision; (2) as victims, juveniles at any point in the system may present as suspected victims of child abuse.

**Las Familias'** mission is to facilitate the healing process of children and adults who have experienced childhood sexual abuse. The agency is licensed by the State of Arizona to provide outpatient mental health services to children and adults. In collaboration with the Southern Arizona Children's Advocacy Center, Las Familias offers Extended Crisis Services. Crisis Counselors provide crisis debriefing and facilitate enrollment in longer term counseling services for children and their caretakers referred from the Advocacy Center. Extended Crisis Services focus on children who do not require out of home placement. Services include work on site at the Advocacy Center, crisis support over the phone or in person, a six-week psycho educational group for caretakers, and expedited intakes into longer-term mental health services.

**Law Enforcement** responds to incidents of allegations of abuse and violence involving children and families to determine if a crime has been committed and, if so, to discover the facts and evidence necessary to bring the perpetrators into the Criminal Justice System. Law enforcement's responsibility is to conduct an impartial investigation within the bounds of statutory requirements and case law, while considering the needs of the victim and the responsibilities of other organizations involved in the treatment, support and recovery of the victim and their families (if appropriate).

**Medical Providers** – Evidence of child abuse may be detected by medical personnel during an examination or disclosures of abuse may be made. As mandated reporters, medical personnel are obligated by law to report suspected child abuse to law enforcement/DCS. Patients may also be presented to trained forensic examiners, physicians, or sexual assault nurse examiners (S.A.N.E.), for child abuse evaluations

(which occur when sexual or physical abuse is alleged). These examinations are done for the purpose of assessing injuries, acquiring possible physical evidence and reassuring the victim about his/her medical condition.

The Southern Arizona Children's Advocacy Center has trained pediatric forensic examiners under contract who may provide medical services to law enforcement and DCS, as well as physicians and other health care providers, concerning suspected child maltreatment cases. These services include medical exams, consultations, review and interpretations of lab tests and other medical findings obtained by forensically trained professionals. Medical personnel will provide witness testimony on findings and diagnosis reached during such evaluations and consultations. The Center's forensic examiners often refer cases to Community Medical Personnel for specialized treatments and assessments.

### Office of Child Welfare Investigations (OCWI)

The principal goal of the Office of Child Welfare Investigations is to protect children by conducting uniform investigations into allegations of criminal conduct child abuse. The Office of Child Welfare Investigations will enhance the quality and efficiency of investigations by maximizing resources through a joint investigative process. The Office of Child Welfare Investigations will assist Law Enforcement and Prosecutors in holding offenders accountable. The Office of Child Welfare Investigations will assist the Department of Child Safety and the Attorney General's Office in their assessment of long term safety and best outcomes for children.

**Pima County Attorney's Office (PCAO)** is responsible for the prosecution of all felony offenses involving child physical and sexual abuse, neglect, sexual assault, and domestic violence. The PCAO interacts on a daily basis with Law Enforcement, OCWI and DCS in the investigation and prosecution of cases in which children are victims or witnesses to felony offenses involving physical and sexual abuse, sexual assault, neglect and domestic violence. The office reviews these cases for charging and confers with victims and their families regarding decisions to charge or not charge. Once these cases are charged cases are prosecuted with a goal of holding offenders as fully accountable for their crimes as is possible while being ever mindful of the needs of the child victim. Deputy Pima County Attorneys participate in MDTs and in the training of Law Enforcement, DCS and other partners who work with and provide services to victims of abuse and neglect.

**Pima County Adult Probation Department** primarily interacts with child abuse victims in three ways: 1) in the preparation of a pre-sentence investigation report for the Court before sentencing; 2) in the supervision of sentenced sex offenders and child abuse/neglect offenders in which any contact with children, and particularly the victim(s), is either prohibited or closely supervised; and, 3) when a probation officer, in the course of supervising a probation case, discovers reasonable grounds that a child has been abused/neglected or exposed to frequent domestic violence between other parties in the household.

**Southern Arizona Children's Advocacy Center** is a non-profit agency that provides a one-stop, child-friendly environment for: the collection of forensic evidence in suspected child maltreatment cases (including audio and video taped interviews and medical examinations); the coordination of multi-disciplinary investigations; case management, crisis intervention and advocacy services; referrals to victim assistance and support services; and on-call triage of urgent pediatric sex abuse cases and after-hours advocacy (upon law enforcement request).  Professionals on staff are trained in child development, forensic interviewing and victim advocacy.   In addition, the Center coordinates MDT Meetings twice a month.  And finally, the agency conducts Mandated Reporter Trainings throughout Southern Arizona, school-based personal safety trainings for children Pre-Kindergarten through Middle School, and coordinates seminars for partner agencies on child abuse related topics.

**Southern Arizona Mental Health Corporation (SAMHC)** is the community crisis provider for behavioral health services in Pima County. SAMHC provides immediate (2 hour) or urgent (24 hour) behavioral health response to children removed from the home by DCS. In discussion with DCS, the most appropriate site for behavioral health assessment is determined. The assessment can be conducted at the school, foster care placement, relative placement, group home, SAMHC clinic or DCS office. SAMHC evaluates each child in order to best assess what, or if any behavioral health services are clinically indicated.

**Schools, public, charter, private, and religious, along with child care centers and other youth-services organizations**, are a major source of reports regarding child abuse and neglect.  They offer a neutral site for preliminary interviews of children by DCS and/or law enforcement.  Schools share both confidential and non-confidential information with DCS and law enforcement as needed to conduct a child welfare investigation.  Schools are responsible for updating all personnel regarding their mandated reporter responsibilities and for observing the guidelines offered by these Protocols.

**Victim Services** is a prosecutorial-based program of the Pima County Attorney's Office.  Victim Advocates assist child victims of physical and sexual abuse and children who have witnessed domestic violence via on-scene crisis intervention and Court advocacy during the course of prosecution.  Crisis Advocates provide crisis response to victims and witnesses of violent crimes in Pima County 24 hours a day, 7 days a week.  They provide emotional support, answer questions, assess needs, explore options and provide referrals to other community resources.  Victim Advocates provide criminal or juvenile justice system information and support to victims and families, advocacy, and social service referrals.

## MEDICAL PROTOCOL

The medical evaluations of child abuse cases can be complex, and involve physical, emotional, and psychosocial issues, as well as custody and legal ramifications. Suspected abuse is uncovered through the presenting symptoms, by a child's disclosure, or by suspicions of a child's caregiver, or another reporter. Medical providers are faced with the dual task of ensuring the health and safety of the patient while remaining objective and thorough in assisting with their obligation to report their findings for the investigation and management of these cases by the Department of Child Safety, the Office of Child Welfare Investigations and Law Enforcement. A calm, non-confrontational approach to informing family members of this duty, without judgment or speculation is essential. (See Appendix A, A.R.S. §13-3620)

The Southern Arizona Children's Advocacy Center provides physicians and sexual assault nurse examiners (S.A.N.E.) who have the education, training and experience to perform forensic examinations of children and provide expert testimony in judicial procedures. The Children's Advocacy Center is designed to reassure the patient and family, and coordinate with a multi-disciplinary team approach. Referrals for medical examinations come from DCS, OCWI, law enforcement, and from community physicians for second opinions or follow-up. (See Appendix D)

The Children's Advocacy Center provides 24 hour services, including forensic medical exams, advocacy and information. Alleged physical abuse, physical neglect, or sexual abuse can be assessed, and the appropriate timing of the exam maximized to obtain forensic evidence with the goal of minimizing re-traumatization to the child. As a rule, the forensic examiner will not accept a case until there is Law Enforcement and/or DCS involvement. Concerning the issue of Emergency Treatment and Labor Act (EMTALA) the transfer of a suspected child abuse victim from an Emergency Department to the Children's Advocacy Center can be done after the medical screening exam (MSE) has been completed. Unless there is concern for significant pain, bleeding or discharge, the genital and anal exam can be deferred to the Children's Advocacy Center forensic examiner, if DCS and/or Law Enforcement is ready to transport. If the referring physician requests direct contact with the Children's Advocacy Center forensic examiner, the Advocates will facilitate this communication.

Medical records from initial evaluations must be released to Law Enforcement and/or DCS per ARS §13-3620, upon their written request and signature on a medical release. The release of medical records does not require the parent/guardian's permission; and should be expeditious, as these records will be needed in the investigations.

**The Medical Evaluation:** Children examined at the Children's Advocacy Center receive a comprehensive physical exam to assess and document growth, sexual maturity, signs of injury, neglect, and sexual abuse, as well as self-injurious behaviors. Although the majority of "after 72 hours" sex abuse exams do not show evidence of acute infection or injury, this does not preclude the possibility that the abuse occurred. The most

important part of the evaluation is the history given by the child.  Even in the situation of a full and detailed disclosure, a medical exam is beneficial in order to ensure the health of the patient.  Similarly, an exam in a non-verbal or pre-verbal child might reveal physical findings not otherwise suspected.

**Sexual Abuse**
A. **The Forensic Interview and Videotaping:**  In most cases a forensic interview precedes the medical examination.  Either the interviewer or one of the investigators (DCS or Law Enforcement) will share information obtained from this process with the medical forensic examiner by, and that person will be present at the time of the exam.  The child should not be re-interviewed by the medical forensic examiner.  However, brief questions directing the medical assessment and biological collection may be necessary.  Any information offered by the victim during the exam should be documented in exact quotes.

B. **The Medical Evaluation**
   1. **Urgent Forensic Medical Exams** (usually within 12 hours at the Advocacy Center or another facility with trained personnel)
      a. **Genital/Rectal Pain, Bleeding** - Children experiencing these symptoms need to be seen as soon as possible to identify the cause, and determine if injury is present or symptoms of sexually-transmitted or non-sexually-transmitted infection is present.
      b. **Recent Anal, Vaginal or Oral Penetration** - Pre-pubertal children need to be examined within 24 hours to collect forensic evidence, as their body swabs deteriorate quickly.  Sperm may be recovered up to 72 hours for older children.  Examinations and collection of biological evidence beyond these time periods may still occasionally yield evidence and may be conducted at the discretion of the investigators and forensic examiner.
      c. **Anogenital Injuries** - Evidence of healing trauma may be more difficult to detect after 4-14 days, and the magnification and lighting of the colposcopy may be needed to define these changes.
      d. **Sexually Transmitted Diseases**
         i. Gonorrhea, Syphilis, Chlamydia, trichomonas, genital herpes and venereal warts are infections that require a medical examination.
         ii. HIV positive children who acquired this disease in an unknown manner require an evaluation.  If the child is older than 12 months, the medical forensic examiner should not assume that the victim acquired the virus through the delivery process from an infected mother.
         iii. Gardnerella (Bacterial Vaginitis) or Monilia (yeast) Infections do not need to be seen for forensic exams.
      e. **Pregnancy** - If a child less than 15 years of age is pregnant, or possibly pregnant, an evaluation is needed.  If there is a possibility of molestation or if there is a question as to whether sexual contact was "consensual" vs. "non-consensual" in an adolescent 15 or older. (See Appendix A regarding mandatory

reporting)  If termination is planned, Law Enforcement should be notified so that fetal tissue can be obtained for paternity testing when appropriate.  The County Attorney should be consulted in any questionable cases.
   f. **Family or Child in Crisis** - In the setting of a disclosure, even when the child has no physical symptoms or forensic evidence is unlikely, an urgent exam should be obtained to give reassurance to the child and family if they are having severe emotional conflict.

2. **Non-Urgent Forensic Medical Exam** (scheduled during the regular medical exam hours)
   a. **On-going chronic sexual abuse** – Those cases with disclosure indicating more remote (weeks & months) activity.
   b. **Extreme Sexualized Behavior** – Exam needed if child gives a history of molestation, or a therapist after working with a child for a while feels that sexual abuse has most likely occurred.
   c. **Custody Disputes** - Allegations of potential abuse are handled in the same manner as in non-custodial cases.  If a verbal child does not disclose sexual abuse during his/her forensic interview, and there's no other indication of sexual victimization, no medical evaluation shall be necessary.  If a medical exam has been conducted, repetitive exams will be avoided unless additional history is very suggestive of medical necessity.  The forensic examiner may have to involve other medical or psychosocial personnel in the event of a parent requesting frequent exams which cause anxiety and emotional conflict for children.
   d. **Non-verbal, pre-verbal, or special needs children** (without symptoms) – One medical evaluation should ideally be conducted when an allegation of sexual abuse is made.  However, some children may be referred to the Advocacy Center for second opinions after a community caregiver has done the initial exam.

**Procedures for Forensic Sexual Abuse Evaluation:** These aspects of the exam are pertinent to all cases, regardless of the time interval from the incident.
A. Complete medical history (including immunizations) will be obtained at the time of the exam (by guardian, DCS, the child or the family).
B. Child is offered a choice of having the exam with or without a supportive person (of his/her choosing).  If this person is disruptive or inappropriate, the adult shall be asked to leave.
C. After the completed physical exam, the genital and anal areas will be examined with good lighting, and whenever possible with the colposcopy for magnifications, and in some case, colposcopy photographs.
D. Any signs of trauma, recent or remote will be documented on body diagrams, and photos, whenever possible (with documentation and reference standards).  Medically directed forensic photography through the use of agency personnel may be conducted to further document non-genital injury.

E. Appropriate lab testing for pregnancy, sexually and non-sexually transmitted diseases will be obtained.
F. A forensic medical report will be completed and used for documentation, and recommendations addendums will be provided if any follow-up exams or test results return with positive findings.

**Acute Assault Exams:** Use of the sexual assault kit, in appropriate settings includes the following:
A. Paper bagging of individualized items of clothing.
B. Collecting specimens from body orifices via swabs.
C. Collecting other debris (trace evidence) which may be present.
D. Collecting specimens via swabs of the areas that may have perpetrator body fluids (bite marks, semen dried on skin) using the Wood's lamp.
E. Proper drying using swab drying device (using non heated air) and handling all materials with gloves
F. Maintaining the chain of custody.

The collection described above is optimal when done prior to bathing, changing clothes, or urination/defecation. Pregnancy and STD prophylaxis need to be considered and offered where appropriate. See Appendix P for triage procedures for Emergency Sexual Abuse Exams.

**Procedures for Physical Abuse & Neglect Evaluations**
A. Physical abuse ranges from minor injury to death. The most serious injuries, and the most frequent deaths are in children "too young to get away" and too young to tell," or those who have special needs or behavior problems.
B. Urgent examination is necessary for obvious, visible injuries, but the potential of hidden internal and skeletal injuries must also be excluded when physical abuse is suspected. These exams require facilities that are able to do diagnostic procedures and consult specialty staff (skeletal surveys, CTS, MRIs, ophthalmologists for retinal injuries, etc.).
C. Injuries sustained by children that are non-accidental are suspected when there is inconsistent or absent history. When there are multiple injuries in different stages of healing, locations not commonly injured (abdomen, genitals, etc.), or delay in obtaining medical care. Changing doctors frequently, and using different urgent care treatment centers to avoid detection of the frequency of a child's visits is also suspicious.
D. Non-emergency medical evaluations should be scheduled at the Children's Advocacy Center after a child has had a forensic interview, if possible. Medical exams are needed in most physical abuse incidents wherein legal proceedings are anticipated. It will be necessary to collect physical evidence related to the child's condition or injuries. This includes all the injuries, and not just the most obvious or serious ones.
E. Reference standards (measuring tapes, gray scale, and color wheels) and multiple angle shots are necessary to photographing bruises and injuries that will be documented in the forensic medical record.