1  **WO**

2

3

4

5                    **IN THE UNITED STATES DISTRICT COURT**

6                        **FOR THE DISTRICT OF ARIZONA**

7

8   Brian Wright, et al.,                              No. CV-21-00257-TUC-JGZ

9                    Plaintiffs,                       **ORDER**

10  v.

11  Southern Arizona Children's Advocacy
    Center, et al.,
12
                     Defendants.
13

14          This civil rights action arises out of an investigation into the alleged abuse of LAW,

15  a minor who was removed from school and subjected to an invasive physical examination

16  without the consent or knowledge of his parents. In their First Amended Complaint (FAC),

17  Plaintiffs LAW and his family members assert constitutional claims against the Town of

18  Sahuarita, the Sahuarita Police Department (SPD), and individual SPD officers[1] (Sahuarita

19  Defendants); the Southern Arizona Department of Child Safety (AZDCS) and its

20  employees (AZDCS Defendants);[2] and the Southern Arizona Children's Advocacy Center

21  (SACAC or Advocacy Center) and its Director, Dr. Dale Woolridge. (Doc. 15 at 2.) The

22
    ─────────────────────
23  [1]  SPD employees named in the FAC are Detective Thomas Johnston, Detective Christin
    Pelayo, and Officer Melina Carrizosa. (Doc. 15 at 3–4.)

24  [2]  DCS employees named in the FAC are DCS Specialist Gerardo Talamantes, Supervisor
25  Meghean Francisco, On-Going Case Manager Joana Encinas, Supervisor Jeannette
    Sheldon, Supervisor Betina Noriega, Facilitator Brian Maldanado, South Region Program
26  Manager Michelle Orozco, and Supervisor Jason Dedmon. (*Id.* at 4–5.)
     The Court dismissed Jason Dedmon pursuant to the parties' stipulation. (Doc. 34.) The
27  Court also dismissed Defendants Encinas and Sheldon from Claims Eighteen, Nineteen,
    and Twenty. (*Id.*) Defendant Maldanado is mentioned in the FAC, but Plaintiffs do not
28  allege any claims against Defendant Maldanado. Accordingly, the Court will dismiss
    Maldanado without prejudice.

Advocacy Center and Dr. Woolridge filed an answer to the FAC. (Docs. 25, 27.) Pending before the Court are the motions to dismiss filed by the Sahuarita and AZDCS Defendants. (Docs. 30, 37.) The motions, which are fully briefed, challenge the Court's subject matter jurisdiction and assert the defenses of issue preclusion and qualified immunity. (Docs. 30, 43, 60; Docs. 37, 55, 62.)

Oral Argument on the motions to dismiss was held on June 14, 2022. (Doc. 72.) Before oral argument, Plaintiffs filed a Request for Judicial Notice of Adoption and two Notices of Supplemental Authority. (Docs. 63, 68, 73.) The request for judicial notice is also fully briefed. (Docs. 63, 64, 66.)

For the following reasons, the Court will grant the motions to dismiss in part and deny the motions in part. The Court will grant the request for judicial notice.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and internal quotation marks omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." *Id.* at 569. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the sufficiency of the complaint, all well-pleaded factual allegations are taken as true and construed in the light most favorable to

1    the nonmoving party, *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018), and all

2    reasonable inferences are to be drawn in favor of that party as well. *Caltex Plastics, Inc. v.*

3    *Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

## BACKGROUND[3]

5    Plaintiff LAW lives with his father, Brian Wright; his stepmother, Irlanda Wright;

6    his sibling LW; his stepsibling, MZ-G; and his halfsibling, MW. (Doc. 15 ¶¶ 10–14, 26.)

7    At the time of the events in this suit, LAW was a first-grade student at Copper View

8    Elementary School in the Sahuarita Unified School District. (*Id.* ¶ 27.) As a result of an

9    underlying medical condition, LAW was required to wear pull ups. (*Id.* ¶¶ 24, 27.) LAW's

10   father, Mr. Wright, and the school agreed that, when LAW was at school, LAW would

11   report as needed to the school nurse, Jessica Mendez, who would change LAW's pull ups.

12   (*Id.*)

13   On December 16, 2020, when the school nurse was changing LAW's pull up, she

14   observed a bruise on LAW's hamstring midway between the bottom of the buttock and the

15   knee. (*Id.* ¶ 37.) The mark looked like it could have been caused by a belt. (*Id.* ¶ 38.)

16   Mendez conferred with other school officials and, consistent with mandatory reporter

17   obligations, a call was made to AZDCS and SPD to report suspected child abuse. (*Id.* ¶¶

18   38–39.)

19   SPD Officer Carrizosa and Detective Johnston responded to the school and observed

20   the marks on LAW. (*Id.* ¶¶ 40–42.) Without informing LAW's parents, the officers "took

21   custody" of LAW and transported him to the Advocacy Center. (*Id.* ¶¶ 43–44.) The

22   Advocacy Center then took custody of LAW, at the direction of the officers, and

23   interviewed LAW while the officers observed the interview through a one-way mirror. (*Id.*

24   ¶ 46.) During the interview, LAW stated that his stepmother, Mrs. Wright, had recently hit

25   him with a belt. (*Id.* ¶ 47.) He also mentioned that his mother had hit him with a Hot Wheels

26

27   ─────────────
     [3] The facts included in this Background are taken from the FAC which is 79 pages long
28   and contains 299 allegations and 37 pages of attachments. (Doc. 15.) This Background
     Section is brief but additional factual allegations are included as necessary in the
     discussion. The Court recognizes that in evaluating the motions to dismiss, the Court must
     accept the factual allegations in the FAC as true. *See Twombly*, 550 U.S. at 555.

track when he was four years old. (*Id.*)

The officers asked Dr. Woolridge to conduct a medical examination of LAW. (*Id.* ¶ 48.) Dr. Woolridge conducted an invasive examination, which Detective Johnston documented and photographed. (*Id.* ¶¶ 53–54.) The medical exam of LAW documented "multiple contusions — location & nature of lesions concerning for inflicted injury." (*Id.* ¶ 55.) The medical report described the original mark on the left hamstring as "wrapping effect implies flexible nature of impact object" and "impact silhouette indicating nature and shape of implement used." (*Id.*) The report concluded, "contusions @ different stages of healing suggests injury events over a series of days . . . ." (*Id.*) After the examination, LAW was turned over to AZDCS Specialist Talamantes. (*Id.* ¶¶ 58–60.)

AZDCS staff determined that LAW was in imminent danger of physical abuse and would not release LAW from its custody until the parents signed off on a "Present Danger Plan." (*Id.* ¶ 60.) Mr. Wright agreed to the Plan so that AZDCS would not seize LAW or place him in foster care. (*Id.* ¶ 63.) The Plan required a safety monitor to live in the home twenty-four seven and prohibited either parent from having contact with LAW in the absence of the safety monitor. (*Id.* ¶ 60.)

During this same time period, SPD officers applied for and obtained a warrant to search the Plaintiffs' home for the belt or Hot Wheels racetrack, which might have made the mark on LAW's buttocks, as well as "[a]ny other fruits, instrumentalities or evidence of" child abuse. (*Id.* ¶ 64.) The warrant was issued and officers subsequently searched the home, separating the family during the execution of the search warrant. (*Id.* ¶ 65–67.) During the search, officers required LW and MZ-G to change into their swimsuits, and MZ-G to disrobe and expose his genitals and buttocks. (*Id.* ¶ 67.) Officers seized two belts and a Hot Wheels set. (*Id.* ¶ 68.) Later that night, SPD determined there was no probable cause to bring charges against either parent and closed its investigation. (*Id.* ¶ 69.)

On December 27, 2020, after its own investigation, AZDCS Specialist Talamantes filed a sworn application for ex parte seizure of LAW. (*Id.* ¶ 77.) The order was issued and LAW was temporarily removed from his home. (*Id.* ¶¶ 78–79.) AZDCS subsequently filed

a Petition for Dependency. (*Id.* ¶ 87.) From January 2021 through October 2021, the matter was adjudicated in the Juvenile Court, and certain restrictions were imposed, limiting Mr. and Mrs. Wright's contact with LAW. (*Id.* ¶¶ 90–102.) On April 18, 2021, LAW was returned to the Wright's home, but was removed again in June when the safety monitor was not present in the home. (*Id.* ¶¶ 104–05, 112–20.) Thereafter LAW was placed in various locations, including a group home, until June 25, 2021, when he was returned home. (*Id.* ¶¶ 121–136.) Plaintiffs allege that, during this time period, AZDCS obstructed their efforts to reunify with LAW. (*Id.* ¶¶ 95, 97, 99, 100.)

On August 19, 2021, AZDCS recommended that the Safety Plan be lifted and the Dependency action be dismissed, but on August 26, the Department reversed its position, stating it intended to continue the Dependency and continue legal custody and control of LAW. (*Id.* ¶¶ 141–42.) Plaintiffs allege that, on no grounds whatsoever, Defendants then obstructed the return of legal custody and control of LAW to his parents for the next 50 days. (*Id.* ¶ 143.)

In their First Amended Complaint, Plaintiffs allege violations of their constitutional rights by Sahuarita, SPD, and SPD employees (Claims One to Four, Ten to Fourteen, and Twenty-Three), and by AZDCS and its employees (Claims Fifteen to Twenty-Three). (*Id.* ¶¶ 144–161, 207–295.) Plaintiffs also seek declaratory and injunctive relief against Sahuarita (Claim Twenty-Three), alleging that the Advocacy Center Protocols are facially unconstitutional. (*Id.* ¶ 298.)[4]

## DISCUSSION

In addressing the Defendants' motions to dismiss, the Court first considers Defendants' arguments related to subject matter jurisdiction, standing, and issue preclusion. (Doc. 30 at 18; Doc. 37 at 8–15.) The Court then considers Defendants' qualified immunity challenges and arguments that the FAC's factual allegations are insufficient to state a claim. (Doc. 30 at 10–18; Doc. 37 at 15–30.)

---

[4] Plaintiffs' claims against the Advocacy Center and Dr. Wooldridge (Claims Five to Nine, Twenty-Three) are not at issue in the pending motions. (*See* Doc. 15 ¶¶ 168–206, 295–99; Docs. 25, 27.)

I. **Subject Matter Jurisdiction**

    A. **Lack of Standing**

        Plaintiffs allege familial association and due-process claims under the First and Fourteenth Amendments in Claims Fifteen to Twenty-Two. (Doc. 15 ¶¶ 232–94.) Defendants argue that Mrs. Wright, LW, MG-Z, and MW lack standing to assert such claims. (Doc. 30 at 18; Doc. 37 at 8.) Defendants state that, historically, the Supreme Court holdings on familial association claims involve biological families, and Plaintiffs have failed to allege any facts that would otherwise give standing to LAW's stepmother and stepsiblings. (Doc. 37 at 9.) Defendants also argue that, as a sibling, LW does not have a protected liberty interest in LAW's companionship. (*Id.* at 8–9.)

        Standing under Article III of the Constitution is a limitation on a district court's subject matter jurisdiction and is properly addressed in a motion to dismiss under Rule 12(b)(1). *Catacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). The injury in fact requirement of standing requires plaintiffs to show that they suffered "an invasion of a legally protected interest." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

        1. **Irlanda Wright**

        Under the Fourteenth Amendment, "a parent has a constitutionally protected liberty interest in the companionship . . . of his or her child." *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) (citing *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985)). But "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to Fourteenth Amendment protections." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018). The First Amendment similarly protects "certain intimate human relationships." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir. 1995) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, (1984)). The First Amendment right of association "protects those relationships, including family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of beliefs but also distinctly personal aspects of

one's life.'" *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545–46 (1987) (internal citation omitted).

Plaintiffs acknowledge that Mrs. Wright was not LAW's parent at the time of the events giving rise to the claims, but argue that the allegations that LAW's father was married to Mrs. Wright and that she had nearly completed the process of adopting LAW are sufficient to establish standing. (Doc. 55 at 7.) The Court disagrees.

Plaintiffs' factual allegations do not establish that Mrs. Wright had an intimate relationship with LAW. Plaintiffs fail to allege facts showing the nature or length of the relationship or certain basic elements that are traditionally recognized as characteristic of family. *See Wheeler*, 894 F.3d at 1058 (finding no standing in absence of allegations that the biological parent had "raised [the child], otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during childhood."). The fact that Mrs. Wright is now LAW's legal parent[5] does not change the Court's conclusion. Plaintiffs have failed to show that Mrs. Wright was LAW's parent or had a protected interest at the time of the alleged injury.[6] Because Plaintiffs' allegations do not establish that she had a legally protected interest as LAW's stepparent, the Court will dismiss Mrs. Wright's familial association claims in Claims Two, Four, and Fifteen to Twenty-Three.

## 2. LAW's Siblings

Binding precedent precludes Plaintiffs' argument that LAW's siblings have standing to assert familial association claims. *See Ward v. San Jose*, 967 F.2d 280, 283–84

---

[5] Plaintiffs request that the Court take judicial notice of Mrs. Wright's recent adoption of LAW, a request that Defendants oppose. (Docs. 63, 64.) The Court will grant the motion for judicial notice. In evaluating a motion to dismiss for failure to state a claim, "courts must consider the complaint in its entirety, as well as . . . matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Under Fed. R. Evid. 201, a court may take judicial notice at any stage of the proceedings "as long as the facts noticed are not subject to reasonable dispute." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). Defendants do not dispute the authenticity of the adoption order.

[6] The Court also rejects Plaintiffs' argument that Mrs. Wright's claims should be allowed to proceed to discovery; the information needed to establish standing is in the Plaintiffs' possession.

(9th Cir. 1991) (concluding sibling does not have a cognizable constitutional interest to assert a loss of familial association claim as to another sibling); *see also J.P. by and through Villanueva v. Cnty. of Alameda*, 803 Fed. App'x 106, 109 (9th Cir. 2020) (unpublished) ("In *Ward v. San Jose* [], we explicitly ruled that siblings do not possess a cognizable liberty interest to assert a loss of familial association claim under the Fourteenth Amendment. No basis exists to disregard this precedent simply because the claim is raised under the First Amendment rather than the Fourteenth Amendment."). Accordingly, the Court will dismiss with prejudice the familial association claims brought by LAW's sibling, stepsibling, and halfsibling in Claims Seventeen to Eighteen and Twenty to Twenty-Three.

### B.    Application of *Rooker-Feldman* Doctrine

AZDCS Defendants assert Plaintiffs' claims for violation of due process under the First and Fourteenth Amendments are barred by the *Rooker-Feldman* doctrine because the Plaintiffs are seeking federal appellate review of the state court dependency proceedings. (Doc. 37 at 14.) Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Claims are barred under the doctrine "when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (emphasis in original).

The *Rooker-Feldman* doctrine does not bar Plaintiffs' claims. First, Plaintiffs allege their injuries were caused by the Defendants' actions, not by errors made by the state court. Second, Plaintiffs do not seek relief from any state court judgment or order. Rather, Plaintiffs seek damages from the Defendants. Thus, dismissal on this ground is not warranted.

## II.    Issue Preclusion

AZDCS Defendants assert Plaintiffs' claims are barred by issue preclusion because Plaintiffs had a full and fair opportunity to litigate the sufficiency of the ex parte removal order, the taking of temporary custody, the repeated orders to keep LAW in temporary

custody, LAW's dependency adjudication, and other findings regarding services implemented by AZDCS to reunify the family. (Doc. 37 at 11.) Defendants note that Plaintiffs were appointed counsel and were able to ask for and have contested evidentiary hearings regarding those issues. (*Id.*) Further, AZDCS Defendants assert that the parties *actually* did litigate these issues and a final judgment was entered against Plaintiffs Mr. Wright and LAW.  (*Id.* at 14.)

"[A] federal court considering whether to apply issue preclusion based on a prior state court judgment must look to state preclusion law." *McInnes v. California.*, 943 F.2d 1088, 1092–93 (9th Cir. 1991); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 933 (9th Cir. 2001). Under Arizona law, issue preclusion applies when "a fact was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it and the fact was essential to the prior judgment." *Crosby-Garbotz v. Fell in and for Cnty. of Pima*, 434 P.3d 143, 146 (Ariz. 2018) (cleaned up). "The party contending that an issue has been conclusively litigated and determined in a prior action has the burden of proving that contention." *Airfreight Exp. v. Evergreen Air Ctr., Inc.*, 158 P.3d 232, 238 (Ariz. Ct. App. 2007) (quoting Restatement (Second) of Judgments § 27 cmt. F (1982)).

AZDCS Defendants fail to establish that Plaintiffs actually litigated during the state court dependency proceedings the issues presented in their federal complaint. Defendants describe the continuous-review process created by the Arizona legislature and the Arizona Supreme Court, but Defendants do not show that Plaintiffs challenged, or could have challenged, in this process and in the dependency proceedings, the alleged violations of their constitutional rights asserted in the case at bar. Defendants cite numerous § 1983 cases where federal courts held that a probable cause claim was precluded by the state court's determination of that claim in a separate state court action. (*See* Doc. 62 at 12.) However, in each of those cases, the court pointed to the specific state court proceeding in which the plaintiff had challenged probable cause and the state court had resolved the challenge. Defendants fail to make such a showing here. In fact, at oral argument, defense counsel for

AZDCS stated only that Plaintiffs had ample opportunity to present evidence to the Juvenile Court and "presumably" they did that. Dismissal based on issue preclusion is thus unwarranted.

**III.     Qualified Immunity**

Both the AZDCS and the Sahuarita Defendants seek to dismiss all constitutional claims against them on qualified immunity grounds. (Doc. 30 at 10–18; Doc. 37 at 15–26.) Applying the qualified immunity doctrine, Defendants argue that Plaintiffs fail both to plead a constitutional violation and to show an alleged violation of clearly established law. (Doc. 30 at 10–18; Doc. 37 at 15–26.)

"Qualified immunity shields a police officer from liability for civil damages under Section 1983 'unless the officer violated a clearly established constitutional right.'" *Williamson v. National City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (internal citation omitted). A defendant may properly raise qualified immunity in a motion to dismiss. *Keates v. Kolie*, 883 F.3d 1228, 1235 (9th Cir. 2018) (discussing the standard of review for qualified immunity on a motion to dismiss). On a motion to dismiss for qualified immunity, the court "consider[s] two different questions: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established." *Id.* at 1235 (cleaned up). The two prongs of the qualified immunity test "raise legal issues" for a court to decide. *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014). A court has discretion in deciding which of the two prongs of the analysis should be addressed first in light of the circumstances of the particular case. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Rice v. Morehouse*, 989 F.3d 1112, 1125 (9th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640(1987)). "The Supreme Court has repeatedly cautioned courts not to define clearly established law at a high level of generality." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). While there need not be a case directly on point, "existing precedent must

have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 73 (2017). To meet its burden, a plaintiff must identify "a case where an officer acting under similar circumstances as [the defendant] was held to have violated the [law]." *Id.* "[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be a 'consensus' of courts outside the relevant jurisdiction." *Sharp*, 871 F.3d at 911 (internal citation omitted).

### A.   Claims One and Two

In Claim One, Plaintiff LAW alleges Officer Carrizosa and Detective Johnston violated his Fourth Amendment rights by seizing and searching him at his school, transporting him to the Advocacy Center, participating in the forensic exam at the Center, and continuing to detain him at the Center. (Doc. 15 ¶¶ 144–49.) In Claim Two, Plaintiffs Mr. and Mrs. Wright allege that the same conduct by Carrizosa and Johnston violated their First and Fourteenth Amendment right to familial association.[7] (*Id.* ¶¶ 150–55.)

### 1.   Medical Examination of LAW

Plaintiffs allege that Detective Johnston and Officer Carrizosa authorized and participated in SACAC's invasive medical examination of LAW's genital and rectal areas, without parental consent. (*Id.* ¶¶ 53–54, 152.) Plaintiffs cite *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) and *Mann v. County of San Diego*, 907 F.3d 1154, 1161 (9th Cir. 2018), in support of their assertion that such conduct violated clearly established law. (Doc. 43 at 11, 14–15.) In *Wallis*, the Ninth Circuit held:

> Barring a reasonable concern that material physical evidence might dissipate or that some urgent medical problem exists requiring immediate medical attention, the state is required to notify parents and to obtain judicial approval before children are subjected to investigatory physical exams.

202 F.3d at 1141 (cleaned up). In *Mann*, the Ninth Circuit reiterated this principle, holding that the Fourth and Fourteenth Amendments are violated when a child is subjected to an

---

[7] "[T]he Fourteenth, First, and Fourth Amendment provide a guarantee 'that parents will not be separated from their children without due process of law except in emergencies." *Keates*, 883 F.3d at 1236. "Despite the different constitutional source of the right . . . the same legal standard applies." *Id.* Therefore, the Court's analysis of Plaintiffs' Fourth Amendment claims applies equally to their First and Fourteenth Amendment claims.

investigatory physical exam without parental notice or consent, unless destruction of evidence is possible or there is an immediate medical need. 907 F.3d at 1161 (quoting *Wallis*, 202 F.3d at 1141).

The Court agrees that *Wallis* and *Mann* clearly establish that Officer Carrizosa and Detective Johnston's alleged involvement in the search of LAW would violate the Plaintiffs' constitutional rights. According to the allegations in the First Amended Complaint, the officers did not notify the parents, obtain their consent, or obtain a judicial order before requesting and observing the forensic physical examination of LAW. (Doc. 15 ¶ 152.) Here there is no suggestion that the exam was warranted because physical evidence might dissipate or that an urgent medical problem required immediate medical attention. Indeed, the officers already had taken photographs of the bruises and there are no factual allegations suggesting an urgent medical need. (*Id.* ¶ 42.) *See Mann*, 907 F.3d at 1163 (noting that the destruction of evidence exception is not justified where state officials had already photographed a bruise on a child). In such circumstances, reasonable officers would have known that they were violating clearly established law. *See Rice*, 989 F.3d at 1125. Notably, Defendants do not specifically assert qualified immunity as to the physical examination of LAW.

### 2. Search and Seizure of LAW at School and Transport to and Interview of LAW at Advocacy Center

Plaintiffs fail to identify clearly established law that would have alerted Detective Johnston and Officer Carrizosa that they would commit a constitutional violation by searching and seizing LAW at his school, and transferring him to and interviewing him at SACAC. Plaintiffs cite two district court cases: *Dees v. County of San Diego*, 302 F. Supp. 3d 1168 (S.D. Cal. Oct. 10, 2017), and *Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 939 (C.D. Cal. 2018). District court cases are not controlling authority. *Sharp*, 871 F.3d at 911. In addition, the *Dees* court's finding of an unconstitutional seizure was reversed by the Ninth Circuit, and qualified immunity was not at issue. *See Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1154–55 (9th Cir. 2020). *Rabinovitz* is also unhelpful. Contrary to the

Plaintiffs' argument, the district court there concluded that a law enforcement officer was entitled to qualified immunity because neither the Supreme Court nor the Ninth Circuit had addressed the Fourth Amendment's application to a law enforcement officer's in-school detention and interrogation of a suspected child abuse victim. *Rabinovitz*, 287 F. Supp. 3d at 947–48 ("[L]aw enforcement's authority to detain and interview—in a private area on a school campus—a minor who is a suspected victim of child abuse, without a warrant or court order or presence of exigent circumstances, is undecided."). Indeed, only one year before the events giving rise to the present case, the Ninth Circuit Court held that the right of minor children to be free from unconstitutional seizures and interrogations by government officials at school had not been clearly established. *See Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019).

Plaintiffs also cite cases for the general proposition that the Fourth Amendment requires a showing of probable cause prior to certain search and seizures. (Doc. 43 at 8.) None of the cited authority, however, presents circumstances similar to the questioning and search of LAW at his school, or to his transport and interview at SACAC. These cases do not place the constitutional questions raised in Plaintiffs' claims "beyond debate." *See White*, 580 U.S. at 73.

The Court will require Defendants Johnston and Carrizosa to answer Claims One and Two with respect to the allegations that they authorized and participated in a forensic examination of LAW in violation of the Constitution. The remaining allegations in Claims One and Two will be dismissed with prejudice.

## B.   Claims Three and Four

In Claims Three and Four, Plaintiffs LAW, Mr. Wright, and Mrs. Wright allege that the policy and protocol of the Town of Sahuarita "is unconstitutional on its face, as authorizing such unconsented interrogations, seizures, transport, detention and invasive medical examinations, in the absence of notice to the parents of the right to attend and deny consent; and without the Town Council's agents first submitting a sworn application on probable cause to, and securing a warrant from, a disinterested magistrate." (Doc. 15 ¶ 159;

*see also id.* ¶ 16.) Plaintiffs allege that Detective Johnston and Officer Carrizosa acted pursuant to Sahuarita's unconstitutional protocols, and that previous medical examinations were conducted under the protocols. (*Id.* ¶ 158.) Plaintiffs attach to the First Amended Complaint the *Pima County Protocols for The Multidisciplinary Investigation of Child Abuse* (Sixth ed., 2014) at issue. (Docs. 15-1, 15-2.) The protocols, however, do not include any policy similar to what Plaintiffs allege has been adopted by the Town of Sahuarita.

"Where the complaint makes conclusory allegations that are contradicted by documents referred to or incorporated in the complaint, a court may decline to accept such conclusory allegations as true." *J.K.J. v. City of San Diego*, 17 F.4th 1247, 1254 (9th Cir. 2021) (cleaned up). Here, Plaintiffs' allegation that the Town of Sahuarita's protocols are unconstitutional on their face is conclusory and contradicted by Plaintiffs' supporting documentation of the policy. Plaintiffs fail to point to any language in the protocols which authorizes interrogations, seizures, or medical exams of suspected victims of child abuse without parental consent. In fact, the Protocols specifically require that law enforcement "conduct an impartial investigation within the bounds of statutory requirements and case law." (Doc. 15-2 at 5.) Because Plaintiffs do not plausibly allege that the Town of Sahuarita had a facially unconstitutional policy that caused the constitutional violations in this case, the Court will dismiss with prejudice Claims Three and Four.[8]

### C.    Claim Eleven

In Claim Eleven, Plaintiffs Mr. Wright, Mrs. Wright, LW, and MZ-G assert a Fourteenth Amendment claim of judicial deception. (Doc. 15 ¶¶ 212–19.) Plaintiffs allege that: Detective Pelayo intentionally included, in his sworn affidavit in support of an application for a search warrant of Plaintiffs' home, falsehoods and misrepresentations; Detective Pelayo omitted material exculpatory facts; and Detective Johnston agreed to

---

[8] In Claim Twenty-Three, Plaintiffs seek a declaratory judgment against the Town Council, similarly alleging that the Protocols under which Defendants conducted the medical examination of LAW are facially unconstitutional. (Doc. 15 ¶¶ 295–99.) As Plaintiffs have failed to identify any Town policy or protocol permitting a medical examination of a minor, without notice to or consent of the parents, the Court will dismiss Claim Twenty-Three as to Sahuarita, for failure to state a claim.

those facts. (*Id.* ¶¶ 214, 217.) Plaintiffs allege that the false information and misrepresentations gave the application the false appearance of probable cause, resulting in the issuance of the warrant. (*Id.* ¶¶ 216, 218.)

"[J]udicial deception may not be employed to obtain a search warrant." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). To demonstrate that law enforcement officers obtained a warrant through judicial deception, a plaintiff must make a showing "that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (quoting *KRL*, 384 F.3d at 1117); *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002). If a party sufficiently alleges a reckless or intentional disregard for the truth, the court must determine the materiality of the allegedly false statements by purging those statements and determining whether what remains justifies issuing the warrant. *Ewing*, 588 F.3d at 1224. Similarly, "[i]f the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, established probable cause." *Id.* Probable cause means "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

According to Plaintiffs, the operative facts sworn to by Detective Pelayo in his affidavit in support of the warrant included:

> On December 16, 2020, while working, a student caretaker for student in need at a school in Sahuarita witnessed marks on a six-year-old-male student while changing the child's diaper. The marks observed were below the buttocks. When the child was questioned by the caretaker of how he obtained those marks, the child deflected and would not give details on how they were obtained.
>
> Law enforcement was contacted and the child was taken for a forensic interview. During the forensic interview, the child disclosed that he was hit by his mother, quote unquote, with a small brown belt, as well as Hot Wheels track. A medical exam was conducted on the minor by Dr. Woolridge, who advised that the minor had several episodes of bruising on his person. Upon

speaking with the miner's (sic) father, he disclosed his knowing that the minor's stepmother hit the minor last night.

(Doc. 15 ¶ 214.) Plaintiffs allege Detective Pelayo misrepresented that: (1) LAW "deflected" questions about the "marks" found on him and "would not give details on how they were obtained"; (2) implied that LAW reported his mother recently hit him with both a "brown belt" and a "Hot Wheels track"; and (3) falsely stated that Mr. Wright disclosed that Mrs. Wright "hit" LAW the night before.[9] (*Id.* ¶ 215.) Plaintiffs allege Detective Pelayo omitted the facts that: (1) school staff were only concerned with the single mark on the left hamstring because the other marks were known to be common "little boy bruises" that predated December 16, 2020; (2) LAW stated that the last time Mrs. Wright spanked him was five days earlier; and (3) there were many contradictions in LAW's interview as set out in Paragraph 47 of the FAC.[10] (*Id.*)

---

[9]  The FAC is internally inconsistent as to whether Mrs. Wright hit LAW the night before. The FAC alleges both that the affidavit contained the false statement that Mr. Wright disclosed that Mrs. Wright "hit" LAW the night before, (Doc. 15 ¶ 215), and also the allegation that Mrs. Wright did hit LAW the night before. (*See id.* ¶ 33.)

[10]  In Paragraph 47, Plaintiffs allege:

> In the interview, LAW again reiterated that he did not remember how he got the mark, that it did not hurt; that when his parents spanked him it did not cause pain; stated that his mother had hit him with a Hot Wheels track when he was four (4) years old; and once hit him with a belt when he was five (5) years old. He denied his parents ever causing a bruise or mark on him. When asked when was the last time his mother spanked him, he recounted in some detail an incident five (5) days earlier when she had caught him and MZ-G stealing some granola and spanked him on his bottom with her open hand. He also stated he felt safe at home, except for his sister, LW, who, he stated, MZ-G protected him from, that LW scratched MZ-G and that he, LAW, had punched her "like 30 times on the back" to make her stop. The interviewer did not follow up on that volunteered information, but left the room. She returned after conferring with Defendants, and began questioning LAW again about the events of five (5) days before. This time LAW stated that his mom spanked him with a belt, contradicting the previous statement.

(*Id.* ¶ 47.) In its analysis, the Court does not consider the FAC's further allegation that there may be other falsehoods and omissions that are not in the FAC. (*Id.* ¶ 215; Doc. 43 at 17.) The Court looks only to the well-pleaded factual allegations contained in the complaint. *Twombly*, 550 U.S. at 555.

Taking Plaintiffs' allegations as true, if the alleged misrepresentations were purged from the affidavit and relevant[11] omitted information were added, probable cause remained for issuance of the search warrant. Detective Pelayo's reimagined affidavit would have included the following information: a student caretaker for a student in need witnessed marks on the six-year-old child's leg below the buttocks; the marks were not there the day prior; during the forensic interview, the child gave inconsistent explanations for the marks and reported that he was hit by his mother in the past with a small brown belt and a Hot Wheels track; the child also reported that his mother had spanked him five days earlier, with her open hand or a belt, for stealing granola; and Dr. Woolridge's forensic medical exam of the child found that the child had several episodes of bruising on his person. These facts evidence a fair probability that a belt or Hot Wheels racetrack, or other instrumentalities which might have made the mark on LAW's body, could be found in the Wright's home. (*Id.* ¶ 64.) *See Illinois v. Gates*, 462 U.S. 213, 230 (1983) (noting probable cause is to be determined by the totality of the circumstances and means a fair probability, not certainty). Accordingly, the Court will dismiss Claim Eleven with prejudice. Plaintiffs have failed to plead a constitutional violation of judicial deception, and it does not appear that they can do so given that their own factual allegations support a finding of probable cause. *See Ewing*, 588 F.3d at 1224.

### D.   Claim Ten

In Claim Ten, Plaintiffs allege that Detectives Johnston and Pelayo, based on the facts known to them at the time, lacked probable cause to seek a search warrant, and no reasonable officer knowing the facts would have sought a warrant. (Doc. 15 ¶ 210.) In their statement of Claim Ten, Plaintiffs do not include facts to support these conclusory allegations. (*Id.* ¶¶ 207–11.) Rather, Plaintiffs incorporate the preceding 206 paragraphs and 55 pages, and ask the Court to examine the entire complaint for support for the claim.

---

[11]   The fact that school staff's concern was limited to the single mark on LAW's left hamstring is of little significance, particularly in light of Dr. Woolridge's findings that "the minor had several episodes of bruising on his person," and the injury was consistent with being hit with a flexible object.

1    (*Id.* ¶ 207; Doc. 43 at 15–17.) In their Response to the Motion to Dismiss, Plaintiffs assert

2    "[f]acts known to the Defendants on the afternoon of December 16th are set out in the FAC

3    and substantially addressed supra." (Doc. 43 at 15.)[12]

4            The Court will dismiss Claim Ten for failure to state a claim. As set forth in its

5    discussion of Claim Eleven above, Plaintiffs' own factual allegations are sufficient to

6    support the state court's finding of probable cause to issue the search warrant. Therefore,

7    the Court will dismiss Claim Ten with prejudice.

8            **E.      Claim Twelve**

9            In Claim Twelve, Plaintiffs LW and MZ-G assert claims for the search and seizure

10   of LW and MZ-G at their home. (Doc. 15 ¶¶ 220–23.) The minor Plaintiffs allege that

11   Detectives Johnston and Pelayo violated their Fourth Amendment right to privacy because

12   the detectives had them disrobe into their swimsuits, took pictures, and directed MZ-G to

13   expose his genitals and buttocks without probable cause, a warrant, or parental consent.

14   (*Id.* ¶¶ 67, 222.)[13] Plaintiffs argue that even if there was probable cause to search LAW,

15   there was no probable cause that LW and MZ-G were being abused. (Doc. 43 at 18.)

16   Notably, Paragraph 67 of the FAC also states that Mr. Wright agreed to Detective

17   Johnston's request that LW and MZ-G change into their swimsuits. (Doc. 15 ¶ 67.)

18   Defendants do not assert qualified immunity as to this claim. (*See* Docs. 30, 60.)

---

[12]  The Court should not have to analyze the 206 preceding paragraphs and guess which of the factual allegations contained in those paragraphs Plaintiffs rely on in support of Claim Ten. Plaintiffs must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Claim Ten, Plaintiffs have not done so. Incorporating the entire complaint and failing to connect the factual allegations to the claim violates Rule 8 and warrants dismissal of the claim. *See Schwartz v. Bank of America*, 2013 WL 12132070, *3 (D. Haw. Jan. 7, 2013) (collecting cases); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. Sept. 8, 2020).

[13]  The FAC contains some contradictory allegations with regard to the seizure and search of LW and MZ-G at their home. Paragraph 67 states that Mr. Wright agreed to Detective Johnston's request that LW and MZ-G change into their swimsuits. (Doc. 15 ¶ 67.) The same paragraph alleges that only MZ-G was required to expose his genitals for a photograph. (*Id.*) But Paragraph 222 *implies* that LW was also required to disrobe and be photographed – without probable cause, a warrant, or parental consent. (*Id.* ¶ 222.)

Plaintiffs have sufficiently pled an unconstitutional search and seizure of MZ-G, and a reasonable officer would have known that such a search would violate MZ-G's rights because the warrant was limited to search of the home. (Doc. 15 ¶ 64.) In addition, as stated above, physical exams requiring a minor to disrobe and expose his genitals violates the Fourth Amendment if the officers lack parental consent or a court order. *See Mann*, 907 F.3d at 1165 (noting that physical investigatory exams include exams where the "[c]hildren are forced to undress and are inspected, by strangers, in their most intimate, private areas"). Therefore, the detectives should have known that requiring MZ-G to disrobe and expose his buttocks and genitals during the execution of the search warrant was unreasonable under the Fourth Amendment and violated clearly established law. Accordingly, Defendants Johnston and Pelayo must answer this claim as it relates to the search of MZ-G.

Plaintiffs have not sufficiently pled this claim as it relates to LW. Plaintiffs allege that Mr. Wright agreed to the Detectives' request that MZ-G and LW change into their swimsuits. (Doc. 15 ¶ 67.) Plaintiffs further allege that Detectives Johnston and Pelayo—without parental consent, a court order, or probable cause—only directed MZ-G to expose his genitals and stand for a photograph. (*Id.* ¶¶ 67, 222) There is no allegation that the Detectives did the same for LW. Claim Twelve as it relates to LW is therefore dismissed with prejudice.

## F.   Claims Thirteen and Fourteen

In Claims Thirteen and Fourteen, Plaintiffs allege First and Fourteenth Amendment loss of familial association claims. (Doc. 15 ¶¶ 224–31.) In Claim Thirteen, Plaintiffs allege that Detectives Johnston and Pelayo separated the parents from the children and detained the children and parents while the officers were executing the search warrant of the home. (*Id.*) Defendants seek to dismiss this claim arguing, among other things, that Plaintiffs fail to identify clearly established law that separating individuals during a search warrant is unconstitutional.  (Doc. 30 at 10.) Plaintiffs fail to point to any clearly established law in response to Defendants' argument. (Doc. 43 at 19.) In addition, the Supreme Court has

held that police officers have the authority to detain persons during the execution of a search when the person is "an occupant of [the address to be searched] at the time of the search." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (three legitimate law enforcement interests provide substantial justification for detaining an occupant: preventing flight in the event that incriminating evidence is found; minimizing the risk of harm to the officers; and facilitating the orderly completion of the search, as detainees' self-interest may induce them to open locked doors or locked containers to avoid the use of force). The Court will thus dismiss Claim Thirteen with prejudice.

Claim Fourteen is a familial association claim arising from Detective Johnston and Pelayo's alleged search and seizure of LW and MZ-G during the search of the Wright's family home. (Doc. 15 ¶¶ 228–31.) During this search, the Detectives allegedly directed MZ-G, but not LW, to disrobe and expose his genitals and buttocks for examination and a photograph. (*Id.* ¶¶ 67, 222.) As discussed above in Part III.A (Claim Two) and III.E (Claim Twelve), these alleged facts sufficiently state a claim for unreasonable search and seizure. Further, Mrs. Wright had a constitutionally protected liberty interest through her mother-child relationship with MZ-G. *See Ward*, 967 F.2d at 283. Defendants Johnston and Pelayo must therefore answer Claim Fourteen but only as it relates to Mrs. Wright and MZ-G.

### G.     Claim Fifteen

In Claim Fifteen, Mr. Wright, Mrs. Wright, and LAW allege a loss of familial association claim under the First and Fourteenth Amendments based on AZDCS employees' securing a safety plan on December 16, 2020, by coercion. (Doc. 15 ¶ 232–48.) Plaintiffs allege that AZDCS Specialist Talamantes knew and concluded that there was no physical abuse of LAW but despite this knowledge and with his superior's approval, Talamantes lied to Mr. Wright regarding LAW's alleged injuries and falsely informed him that if he did not agree to the immediate voluntary safety plan, AZDCS would immediately take custody of his children. (*Id.* ¶¶ 244–47.) Plaintiffs state, as a direct result of the lies and coercion, Mr. Wright executed the voluntary safety plan and relinquished his right to

the control of his children's upbringing, which required that a safety monitor be present at all times in the home. (*Id.* ¶ 248.) AZDCS Defendants argue that Plaintiffs' allegations fail to state a constitutional claim and that they are entitled to qualified immunity because no defendant violated clearly established law. (Doc. 37 at 16–18.) The Court agrees. Plaintiffs' allegations are conclusory and therefore insufficient to show that Talamantes' alleged lie to Mr. Wright violated a constitutional right of Mr. Wright or LAW. In addition, Plaintiffs fail to point to cases which clearly establish such a right.[14] Plaintiffs fail to identify binding precedent which would have alerted Talamantes that his allegedly inadequate investigation or coerced safety plan that allowed the Wright family to live together but with restrictions, would violate the Plaintiffs' constitutional rights. Accordingly, the Court will dismiss Claim Fifteen with prejudice.

### H.     Claims Sixteen to Eighteen

In Claims Sixteen to Eighteen, Plaintiffs assert claims under the First and Fourteenth Amendments. (Doc. 15 ¶¶ 249–66.) Plaintiffs allege Talamantes and other AZDCS employees knew that continuing the investigation into the Wright family was unjustified, and thus AZDCS lacked probable cause to obtain a removal order. (*Id.*) Plaintiffs further allege that Talamantes and AZDCS employees still obtained a removal order, the execution of which harmed the Plaintiffs, by knowingly misrepresenting and omitting material facts when applying for the order. (*Id.*) Claim Sixteen focuses on AZDCS employees allegedly obtaining the removal order without probable cause. (*Id.* ¶¶ 249–59.) Claim Seventeen

---

[14] In support of their claim, Plaintiffs allege that Talamantes' investigation did not comply with Arizona law, and assert that the Court must look to Arizona law for its determination of whether the officers were on notice that they were violating the Constitution, i.e., that Arizona law can be a basis for clearly established law. (Doc. 55 at 18.) But Talamantes' alleged failure to conduct the full and proper investigation required by Arizona law does not amount to a constitutional violation. The cases relied on by Plaintiffs are not to the contrary. In *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1131 (9th Cir. 2002), the court noted that the state-wide "protocol clearly *suggested* that using pepper spray against nonviolent protestors was excessive." *Id.* (emphasis added). However, the court looked to controlling federal law for its determination of whether a constitutional violation—use of excessive force—occurred. *Id.* at 1130–31. This case, and others cited by Plaintiffs, demonstrate that state law and policy may provide notice to an officer that specific conduct is unconstitutional, but a violation of state law does not in and of itself constitute a constitutional violation or show clearly established federal law.

1  centers on AZDCS employees allegedly using judicial deception to obtain the order. (*Id.*

2  ¶¶ 260–63.) Claim Eighteen addresses the alleged harm AZDCS employees caused the

3  Wright family by executing the order. (*Id.* ¶¶ 264–66.)

4     Defendants argue Plaintiffs fail to state a claim. Defendants assert that Plaintiffs'

5  factual allegations are conclusory and that Plaintiffs fail to plead with particularity the

6  alleged false or omitted statements. (Doc. 37 at 16–17.) Defendants contend that when the

7  conclusory allegations are omitted from the claims, all that is left is the simple performance

8  of statutorily prescribed duties. (*Id.*) Defendants assert that their performance of statutory

9  duties does not constitute a constitutional violation because they are entitled to qualified

10  immunity while performing statutory duties. (*Id.* at 18.) In addition, Defendants argue that

11  even if Plaintiffs alleged facts to support a claim for the violation of constitutional rights,

12  Plaintiffs cannot demonstrate that such rights were clearly established. (*Id.*)

13     A person has a "right to be free from judicial deception in securing [a] removal

14  order." *Greene v. Camreta*, 588 F.3d 1011, 1034 (9th Cir. 2009).[15] A claim of judicial

15  deception involves fraud on the court and the other party, therefore, Plaintiffs "must state

16  with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In addition, a

17  judicial deception claim and the invocation of qualified immunity requires the Court to

18  determine "whether the affidavit, once corrected and supplemented, establishes probable

19  cause." *Ewing*, 588 F.3d at 1224. As a result, in pleading their claim, Plaintiffs must

20  provide the Court with the alleged facts that AZDCS should have presented in the

21  application for a removal order, so the Court can consider whether the corrected

22  information would have supported a finding of probable cause.

23     The Court agrees that Plaintiffs' factual allegations in support of Claims Sixteen,

24  Seventeen, and Eighteen are conclusory[16] and do not comply with Rule 9's particularity

25  ───────────────

26  [15]  Defendants would not have absolute immunity with respect to a claim that they made
    false statements in support of the removal order. *See Beltran v. Santa Clara Cnty.*, 514 F.3d
    906, 908 (9th Cir. 2008).

27  [16]  For example, the FAC alleges that Talamantes made "the following false statements and

28  misrepresentations," and then recites whole paragraphs from the application for the

standard. Due to these deficiencies the Court cannot evaluate whether probable cause for a removal order would exist in the absence of the alleged false statements by Defendants. Plaintiffs allege that certain material facts should have been included in the application, including the facts that there had been no previous reports of child abuse against either parent, the other siblings felt safe at home, and the nurse observed no concerning marks on LAW prior to December 16, 2020. (*Id.* ¶ 256.) Yet these facts are not necessarily material and do not, on their face, undermine a finding of probable cause. *See Ewing*, 588 F.3d at 1224 (noting the court must determine the materiality of the allegedly false statements by purging those statements and determining whether what remains justifies issuing the warrant).

Because Plaintiffs fail to identify the specific statements they allege are false, the Court cannot properly consider the application to determine whether it establishes probable cause. For the same reason, the Court cannot consider whether Plaintiffs allege sufficient facts to show that AZDCS employees engaged in judicial deception or that the execution of the removal order unlawfully harmed the Plaintiffs. Accordingly, the Court will dismiss Claims Sixteen to Eighteen without prejudice.

## I.        Claims Nineteen and Twenty

In Claims Nineteen and Twenty, Plaintiffs allege claims of judicial deception and loss of familial association related to the judicial deception. (Doc. 15 ¶¶ 267–80.) Plaintiffs allege that Talamantes and Francisco provided false statements and omitted materials facts in the petition for dependency, including the supporting documents.[17] (*Id.* ¶¶ 269, 272–76.) Plaintiffs allege that, based on these documents, the juvenile court reaffirmed its ex parte order of removal and ordered that AZDCS continue its custody of LAW. (*Id.* ¶ 273.) Defendants assert that Plaintiffs' conclusory allegation—that that the falsehoods and

_____

removal order. (Doc. 15 ¶ 255.) The FAC fails to identify which parts of the statements are false or how the statements are misleading, and some of the statements are undeniably true, for example, that the SPD executed a search warrant on the family home. (*Id.*)

[17]  Plaintiffs also again generally allege misrepresentations in the initial ex parte removal order. (Doc. 15 at 69.) Because this claim is addressed in Claims Sixteen to Eighteen, the Court will not address it again in Claims Nineteen and Twenty.

omitted facts are "material"—is insufficient to state a claim. (Doc. 37 at 17.)

As stated above, to establish judicial deception, Plaintiffs must show, in part, that the alleged dishonesty is material to the determination of probable cause. *See Ewing*, 588 F.3d at 1224. To determine the materiality of the allegedly false statements, a plaintiff must show that, after purging those statements, what remains does not justify issuing the warrant. *See id.* Plaintiffs merely allege the legal conclusion that all of the misrepresentations and falsehoods are material and do not allege facts showing that, but for the dishonesty, the issuing court would not have ordered the continuation of the removal of LAW. (Doc. 15 ¶ 269; Doc. 55 at 24–26.) Further, even where they list alleged misrepresentations and falsehoods, Plaintiffs still fail to allege specific facts showing the presented statements were misrepresentations or false.[18] Because it is Plaintiffs' burden to show a violation occurred, the Court will dismiss Claims Nineteen and Twenty without prejudice.

## J.    Claim Twenty-One

In Claim Twenty-One, Plaintiffs allege a First and Fourteenth Amendment claim of familial association. (Doc. 15 ¶¶ 281–86.) Plaintiffs allege that AZDCS Defendants Cheldon, Encinas, Noriega, and Orozco falsified facts, intentionally obstructed the Wright family's unification efforts, and acted with deliberate indifference towards the Plaintiffs' constitutional right to familial association. (*Id.*)

Defendants argue that Plaintiffs do not have a constitutional right to be free from child abuse investigations and that Plaintiffs fail to allege facts showing how the AZDCS investigation violated their constitutional rights. (Doc. 30 at 16–18.) Defendants also argue that, even if Plaintiffs adequately plead the violation of their constitutional rights, qualified immunity precludes their claim because no clearly established law prohibits the alleged

---

[18] For instance, Plaintiffs allege that the statement "The marks and bruises were in different stages of healing which indicated different instances of physical discipline" is a misrepresentation, falsehood, or material omission. (Doc. 15 ¶ 269.) However, Plaintiffs fail to allege facts showing how this statement is false or a misrepresentation, particularly in light of other facts Plaintiffs allege, such as "LAW stated that his mom spanked him with a belt" and "[Dr. Woolridge] concluded 'contusions @ different stages of healing suggests injury events over a series of days.'" (*See id.* ¶¶ 47, 55.) Plaintiffs cannot support Claim Twenty-One with conclusory statements that lack the support of factual contentions.

conduct for which Plaintiffs seek relief. (*Id.*)

For clearly established law, Plaintiffs cite *Walter v. County of San Diego*, 2020 WL 7024660 (S.D. Cal. Nov. 30, 2020) and *Armor v. Arizona*, 2009 WL 529326 (D. Ariz. Feb. 27, 2009). (Doc. 55 at 26–29.) These cases are not controlling precedent that can be a basis for clearly established law, *see Sharp*, 871 F.3d at 911, and these cases are distinguishable from the alleged facts of this case.

In *Walter*, the plaintiffs alleged that the department of child safety was obstructing the family's reunification efforts. 2020 WL 7024660, at *10. The plaintiffs in that case, however, alleged a First Amendment retaliation claim and a Fourteenth Amendment failure to protect claim. *Id.* at *7–10. In Claim Twenty-One, Plaintiffs do not raise retaliation or failure to protect claims.

In *Armor*, the plaintiffs alleged Arizona officials released a child out of state before any dependency hearing and without a completed application under the Interstate Compact on the Placement of Children (ICPC). 2009 WL 529326 at *7–8. Although the district court found that the plaintiff stated a procedural due-process claim in that case, this decision is also dissimilar. *See White*, 580 U.S. at 73 (noting a plaintiff must point to a case where an officer was acting under similar circumstances). Unlike the pending case, the plaintiffs in *Armor* alleged a familial association claim based on the complete lack of a hearing and the state's failure to comply with the ICPC. 2009 WL 529326 at *7. In addition, while the plaintiffs in *Armor* generally alleged that state officials obstructed justice, those allegations were related to a fraud and common-law deceit claim, not a familial association claim. *Id.* at *18.

Accordingly, the Court will dismiss this claim, with prejudice, for Plaintiffs' failure to show a violation of clearly established law.

### K.    Claim Twenty-Two

In Claim Twenty-Two, Plaintiffs allege this claim is to vindicate the right of free expression and the right to petition for redress of government. (Doc. 15 ¶¶ 287–94.) During the dependency proceedings, Plaintiffs allege that Mr. Wright filed a complaint to the

Ombudsman's office for redress of AZDCS's actions in this case. (*Id.* ¶ 289.) Plaintiffs further allege that Encinas retaliated against Mr. Wright and falsified facts in response to Mr. Wright's petition for remedy and expression of agency corruption. (*Id.* ¶ 290.) Plaintiffs also allege that Encinas did so with Defendant Sheldon, Noriega, and Orozco's approval or direction. (*Id.*) Plaintiffs assert that Mr. Wright's expressions of concern for the actions taken by Defendants and the filing of his complaint are protected speech. (*Id.* ¶ 291.) Plaintiffs then allege the specific acts Defendants took in retaliation, discussed in more detail below. (*Id.* ¶¶ 284, 290, 292.) AZDCS Defendants assert that Plaintiffs fail to state a claim of retaliation. (Doc. 37 at 29.) The Court disagrees.

It is clearly established that "[a] reasonable official would have known that taking the serious step of threatening to terminate a parent's custody of his children, when the official would not have taken this step absent her retaliatory intent, violates the First Amendment." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1058–59 (9th Cir. 2019). To state a retaliation claim, a plaintiff must allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). First, it is well settled that "voicing criticism of [an] agency's conduct—is constitutionally protected." *Capp*, 940 F.3d at 1054. Mr. Wright alleges that he engaged in such conduct. (Doc. 15 ¶¶ 289, 291.) Second, it is also well established that "[t]he threat of losing custody of one's children is a severe consequence that would chill the average person from voicing criticism of official conduct." *Id.* Mr. Wright alleges that the Defendants intentionally took actions to keep LAW out of Mr. Wright's custody and obstructed his efforts to reunify with LAW. (*Id.* ¶¶ 290, 292.) Third, the "mere existence of a legitimate motive . . . is insufficient to mandate dismissal." *Capp*, 940 F.3d at 1054. While the agency may have been acting in an advocate role as a party representing the bests interests of the child, Plaintiffs sufficiently allege that Defendants took the retaliatory actions in direct response to Mr. Wright's speech. (*Id.* ¶ 292.) *Capp*, 940 F.3d at 1055

(noting that the defendant's retaliatory motive is difficult to prove and may be inferred from "a chronology of events"). Accordingly, Mr. Wright has sufficiently plead a violation of a clearly established right against retaliation. The Court, however, will dismiss all the other Plaintiffs from this claim as no allegations are made related to them.

## CONCLUSION

Although the Court concludes at this stage of the proceedings that some of the defendants are not entitled to qualified immunity, "that does not necessarily mean that this case will progress to trial." *Id.* at 1059. "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *O'Brien*, 818 F.3d at 936.

For the foregoing reasons,

**IT IS ORDERED**:

1. Town of Sahuarita Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 30) is **GRANTED** in part and **DENIED** in part.

2. AZDCS Defendants' Motion to Dismiss and Alternative Motion for More Definite Statement (Doc. 37) is **GRANTED** in part and **DENIED** in part.

3. Plaintiffs' Request for Judicial Notice of Adoption (Doc. 63) is **GRANTED**.

4. The following defendants must answer the following claims within **21 days** of this Order:

   a. Defendants Johnston and Carrizosa must partially answer, as to their authorization and involvement in the medical exam, Plaintiff LAW and Mr. Wright's Claims One and Two.

   b. Defendants Johnston and Pelayo must answer MZ-G's Claim Twelve.

   c. Defendants Johnston and Pelayo must answer Claim Fourteen as it relates to Mrs. Wright and MZ-G.

   d. Defendants Sheldon, Encinas, Noriega, and Orozco must answer Mr. Wright's Claim Twenty-Two.

5. Claims Sixteen, Seventeen, Eighteen, Nineteen, and Twenty are **DISMISSED**

without prejudice.

6. Claims One, Two, Twelve, Fourteen, and Twenty-Two are partially **DISMISSED** with prejudice.

7. Claims Three, Four, Ten, Eleven, Thirteen, Fifteen, and Twenty-One are **DISMISSED** with prejudice

8. Defendants Maldanado and Town of Sahuarita are **DISMISSED** without prejudice.

Dated this 30th day of September, 2022.

Honorable Jennifer G. Zipps
United States District Judge