KRISTIN K. MAYES
ATTORNEY GENERAL

CLAUDIA ACOSTA COLLINGS (021647)
JENNIFER J. SANDERS (020657)
Assistant Attorneys General
416 West Congress, 2nd Floor
Tucson, Arizona 85701-1315
(520) 638-2800 • Fax (520) 628-6050
Claudia.Collings@azag.gov
Jennifer.Sanders@azag.gov

Attorneys for State Defendants
Talamantes, Francisco, Encinas,
Sheldon, Noriega, and Orozco

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al., | No. CV-21-00257-TUC-JGZ |
| Plaintiffs, | |
| v. | **STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [DOC. 85]** |
| Southern Arizona Children's Advocacy Center, et al., | |
| Defendants. | |

Defendants Gerardo Talamantes, Meghean Francisco, Joanna Encinas, Jeannette Sheldon, Betina Noriega, and Michelle Orozco (DCS Defendants) move for an order dismissing Plaintiffs' Second Amended Complaint. Dismissal is appropriate because Plaintiffs again failed to state a claim upon which relief may be granted under Federal Rules of Civil Procedure 12(b)(6).[1]  This motion is supported by the following Memorandum of Points and Authorities.

---

[1] DCS Defendants will file a Motion for Summary Judgment prior to the close of discovery in this matter on issue preclusion. Plaintiffs attack prior orders of the state court in the underlying matter, which Brian Wright also appealed, but later abandoned. DCS Defendants did not want to convert this Motion to a Motion for Summary Judgment by attaching all of the court records to show issue preclusion is applicable here.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Background.**

    **A.     Brief Summary of Allegations Related to DCS Defendants.**

This lawsuit arises out of an underlying state court order authorizing the removal of L.A.W. from Brian Wright's physical custody and a contested juvenile court dependency petition, for which L.A.W. was adjudicated dependent. Plaintiff Brian Wright is L.A.W.'s biological father. (Doc. 85, ¶ 14.) Plaintiff Irlanda Wright was L.A.W.'s stepmother at the time of the allegations in the complaint. (*Id.*, ¶¶ 21-22.)

On December 16, 2020, the Sahuarita Police Department initiated an investigation after receiving a report from a school mandatory reporter that seven-year-old L.A.W. may have been physically abused with a belt. (Doc. 85, ¶¶ 13, 35-41.) Officers Carrizosa and Johnston then transported L.A.W. to the Southern Arizonan Child Advocacy Center where he was interviewed and received a forensic medical examination. (*Id.*, ¶¶ 41, 43-47, 50-52.) Two hours later, Defendant Talamantes, an investigator with the Arizona Department of Child Services (DCS) arrived to initiate an investigation. (*Id.*, ¶ 55.) Talamantes also went to Brian Wright's home and observed the officers' interviews after the officers had arrived there with a search warrant. (*Id.*, ¶ 62-63, 65-66.) Talamantes did not take physical custody of L.A.W. that day. (*Id.*, ¶ 60.) Francisco was the supervisor that assigned Talamantes the investigation. (*Id.*, ¶ 55.)

Talamantes continued his investigation through December 28, 2020, during which he reviewed documents, visited the Wright home a couple of times, and interviewed Brian, Irlanda, and the child's siblings. (*Id.*, ¶¶ 68-72.) On December 28, 2020, Talamantes secured from the court an ex parte order for removal of L.A.W., convened a Team Decision Making meeting, wherein he announced that he had secured the order, and subsequently removed L.A.W. from Wright's physical custody. (*Id.*, ¶¶ 74-76.)

The next day, on December 29, 2020, Brian Wright submitted a complaint to the

DCS Ombudsman's Office regarding the DCS employees' actions during L.A.W.'s removal. (*Id.*, ¶ 77.)

On December 31, 2020, DCS filed a Dependency Petition and a request for temporary custody. (*Id.*, ¶ 79; Doc. 85-2 at 2 [Appendix B].) Talamantes prepared a Report to the Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing, which was filed with the juvenile court. (*Id.*, ¶¶ 82-82.) The court kept the temporary orders in place until the conclusion of the Preliminary Protective hearing, where the court found that DCS had not met the burden of proving that temporary custody was clearly necessary to prevent abuse or neglect, but it ordered that a safety supervisor remain in the home while L.A.W. was returned, and set dates for future hearings for the adjudication of the dependency petition. (*Id.*, ¶¶ 83-84.)

Defendant Encinas was the DCS Ongoing Case Manager who assumed responsibility for the case on January 5, 2021, after the Preliminary Protective Hearing. (*Id.*, ¶¶ 80, 86.) She remained the case manager until the Dependency was dismissed on October 14, 2021. (*Id.*, ¶ 137.) Defendant Sheldon was the DCS Ongoing Supervisor for Encinas until she moved to a different position within the agency. (*Id.*, ¶¶ 80, 86.) Defendant Noriega became Encinas' supervisor after Sheldon's departure sometime after April 7, 2021. (*Id.,* ¶¶ 86, 89.) Defendant Orozco is the Assistant Program Manager for the South Region for DCS, who was apprised of all of the facts of her subordinates during DCS's involvement in the underlying case. (*Id.*, ¶ 89.)

In June 2021, after another disruption with a safety monitor in the Wright home, Encinas removed L.A.W. from the home. (*Id.*, ¶¶ 108, 110-12, 114.) Shortly thereafter, Wright emailed Encinas, Noriega, and Orozco demanding an emergency TDM and that they investigate and approve another safety monitor, and notified them of his intention to file another formal complaint. (*Id.*, ¶¶ 119-20.)

On October 14, 2021, after a full and fair opportunity to exercise his due process

rights, and after Wright completed tasks and services required by DCS and the court, Judge Abrams dismissed the dependency. (*Id*., ¶ 137.)

### B. Procedural History.

On November 1, 2021, Plaintiffs filed a First Amended Complaint. (Doc. 15.) The DCS Defendants filed a Motion to Dismiss on January 27, 2022. (Doc. 37.) On September 30, 2022, the Court granted the DCS Defendants' Motion to Dismiss in part and denied it in part. (Doc. 76.) It dismissed Counts 16 through 20 without prejudice, Counts 15 and 21 with prejudice, and partially dismissed Count 22 with prejudice. (*Id.*) The remaining DCS Defendants then filed their Answer to the First Amended Complaint regarding Count 22, only. (Doc. 78.)

On November 17, 2022, the Plaintiffs filed a Motion for Leave to File Second Amended Complaint (Doc. 81), which the Court granted five days later (Doc. 83). Plaintiffs then filed a 60-page, 12-count Second Amended Complaint, with three appendices. (Doc. 85, 85-1, 85-2, 85-3.) Plaintiffs added factual allegations and combined previously dismissed allegations of Fourth Amendment violations into the re-alleged Claims 17 and 19 for judicial deception and added dismissed Plaintiffs Irlanda and L.A.W. back into his retaliation Claim 22. (Doc. 85.) The three counts as numbered in the Second Amended Complaint that are now alleged against the DCS Defendants are as follows:

1. **Seventeenth Claim** – Fourth and Fourteenth Amendment violations for the alleged judicial deception in securing the *Ex Parte* Removal Order to seize L.A.W., brought on behalf of Brian, Irlanda, and L.A.W, against Defendants Talamantes and Francisco. (Doc.85, ¶¶ 194-204.)

2. **Nineteenth Claim** – Fourth and Fourteenth Amendment violations for the alleged judicial deception in filing a dependency petition and a request for temporary orders in the underlying dependency matter brought on behalf of Brian, Irlanda, and

4

L.A.W. against Defendants Talamantes and Francisco. (Doc. 85, ¶¶ 206-16.)

3. **Twenty Second Claim**- First Amendment violation for retaliation for proceeding with the underlying dependency matter despite Wright's protected expressions or grievances brought on behalf of Brian, Irlanda, and L.A.W against Defendants Encinas, Sheldon, Noriega, and Orozco. (Doc. 85, ¶¶ 218-225.)

## II.   Legal Standard.

Dismissal under Rule 12(b)(6) can result from "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Moreover, a complaint is subject to dismissal for failure to state a claim if the allegations of the complaint, taken as true, reveal an affirmative defense or legal bar to recovery. *Jones v. Bock*, 549 U.S. 199, 215 (2007) (dismissal for failure to state a claim was appropriate when the allegations showed that relief was barred by the statute of limitations). Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A complaint should be read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that plaintiff is entitled to relief "rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Court may consider only the complaint, exhibits properly submitted as part thereof, and matters that may be judicially noticed. *See* Fed. R. Civ. P. 12(d); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Court may take judicial notice of matters of public record and facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

**III.   The Court Should Grant the State Defendants' Motion to Dismiss.**

   **A.   Qualified Immunity Protects the State Defendants from All of Irlanda's Claims.**

Qualified immunity protects government employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is immunity from suit and, therefore, intended to ensure that "insubstantial claims" against government officials are resolved prior to discovery—"at the earliest possible stage in litigation." *Id.* at *232* (internal quotations and citations omitted). To make a finding based on qualified immunity, the Court must determine: (1) if Plaintiff alleged a deprivation of a constitutional right at all, and (2) if that right was clearly established at the time of the violation. *Id.* at 232. "When this test if properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hernandez v. City of San Jose,* 897 F.3d 1125, 1132 (9th Cir. 2018).

The relationship between a parent and child implicates a fundamental liberty interest. *See Lemire v. Cal. Dep't of Corrs. & Rehab.,* 726 F.3d 1062, 1075 (9th Cir. 2013) ("Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct.") The protections under the Due Process Clause are limited to a "narrow range of liberty interests" traditionally protected as fundamental. *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995).

Irlanda Wright claims that her Fourteenth Amendment rights were violated under Claims 17 and 19 when Defendants Talamantes and Francisco allegedly used judicial deception in securing the ex parte removal order and filing the dependency petition with a request for temporary orders. (Doc. 85 at 46-56.) She also claims that her First

Amendment right to be free from retaliation was violated under Claim 22 when Brian Wright complained about DCS Defendants' alleged conduct. (*Id.* at 57-59.)

But under the facts of this case, Irlanda was L.A.W.'s stepmother, and at best she was a prospective adoptive parent. (Doc. 85, ¶¶ 21-22.) She was not L.A.W.'s parent.

Notably, the DCS Dependency Petition does not list Irlanda Wright as a party to the underlying action. (Doc. 85-2 at 2-6.) The Temporary Custody Notice shows that it was provided by Talamantes to Brian Wright as the parent of L.A.W.—not to Irlanda. (*Id.* at 8.) The Application and Declaration for Ex-Parte Removal of Child specifically states that Brian Wright is the child's father, the child's mother's parental rights had been terminated, and Irlanda is the stepmother. (*Id.* at 10.) The TDM Summary Report also identifies Irlanda as the stepmother. (*Id.* at 13.)

A district court in the Ninth Circuit has held that a de facto parent or a prospective adoptive parent, such as Irlanda, does not have a clearly established a liberty interest protected by the Due Process Clause. *Olvera v. County of Sacramento*, 932 F.Supp. 2d 1123, 1143 (E.D. Cal. 2013) (analyzing and applying California law). In *Mullins*, the Ninth Circuit declared that "whatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest." *Id.* at 794; *see also Griggs v. Arizona*, No. CV 12-02257-PHX-JAT, 2013 WL 1498947, at *4 (D. Ariz. Apr. 10, 2013) (stating that a prospective adoptive parent has "no interest in the child derived from the Due Process Clause").

Thus, Irlanda does not have a constitutionally protected liberty interest in her relationship with L.A.W. as his step-mother nor as a prospective adoptive parent. She thus cannot establish a constitutional deprivation and will be unable to provide clearly established law that she has any cognizable right to be free from such alleged constitutional violations. The DCS Defendants are thus protected by qualified immunity, and the Court should dismiss Irlanda from this action.

### B. Plaintiffs Have Failed to State a Claim for Judicial Deception Under Claims 17 and 19.

Social workers "have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'" *Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908 (9th Cir. 2008). They do not enjoy absolute immunity however, "if they fabricate[] evidence during an investigation or [make] false statements in a dependency petition affidavit [. . .] because such actions aren't similar to discretionary decisions about whether to prosecute." *Id.* To successfully allege a violation of the constitutional right to be free from judicial deception, a plaintiff must state a claim that includes "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021); *see also Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (a plaintiff must establish that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty").

Under the judicial-deception claim under Claim 17, Plaintiffs provide a list of so-called "lies of a material nature" that Talamantes wrote in the application for an ex parte removal order. (Doc. 85, ¶ 202.) They claim that Talamantes lied when he stated that L.A.W. had reported that his step-mother regularly uses physical discipline and that L.A.W. did not make such a statements; or that it was materially misleading to report that she "hits" L.A.W. with objects, including a belt and a Hot Wheels track. (*Id.*, ¶¶ 202 (a-b).) But the reference to the statements was from L.A.W.'s disclosures while at the SACAC, a separate source, where Brian and Irlanda were not present to be able to make the blanket assertions that L.A.W. did not make those disclosures. (*See* Doc. 85-2 at 11.) Plaintiffs make a conclusory allegation that the SPD investigation was closed by the time Talamantes wrote his application. (Doc. 85, ¶ 202(c).) Plaintiffs admit that they spanked

8

their children with an open hand, but claim that it was a material misrepresentation to state that they used physical discipline. (*Id.*, ¶ 202(d).) Plaintiffs claim Talamantes lied when he asserted that Brian Wright stated on December 17, 2020, the day after the forensic examination, that he had seen small bruises or marks on L.A.W. and when Talamantes opined that Brian and Irlanda had minimized the concerns about L.A.W.'s physical discipline causing bruises. (*Id.*, ¶ 202(e-g).)

Plaintiffs then provide a list of "intentionally omitted material evidence" that would allegedly refute the physical-abuse allegations, including the narratives that Brian and Irlanda had provided to the SPD officers refuting the abuse allegations and statements by the siblings that they felt safe in the home and that they fought each other. (Doc. 85, ¶ 203.) But Talamantes only had to provide to the court when he filed is application for an ex parte removal order, the facts which he believed supported probable cause for the removal of the child.

Even excluding the allegedly false statements and the omitted statements, Talamantes's application and declaration still provides that LA.W. was observed with a red mark, which was turning into a bruise; L.A.W. reported that he got the bruise the day before; L.A.W. was reluctant to disclose that he recently had been in trouble; a forensic medical exam showed that L.A.W. had multiple contusions to his inner thigh, hamstring, and buttock area; SPD had executed a search warrant; a Present Danger Plan was implemented but the next day Brian disagreed with the necessity of the plan to ensure L.A.W.'s safety; Brian stated that the marks may have been from a sibling or from when stepmother spanked L.A.W.; Irlanda did not see any bruising although she changed L.A.W. every day. (Doc. 85-2 at 10-12.) Talamantes explained that L.A.W.'s young age, vulnerability, and limited ability to protect himself were factors in the assessing thee threat to his safety. (*Id.* at 12.) Moreover, the picture attached to the Second Amended Complaint show L.A.W.'s bruises from his examination on December 16, 2020. (Doc. 85

at 14.) Thus, notwithstanding Plaintiffs' allegations, Talamantes's application for ex parte removal order still supports a finding of probable cause. Plaintiffs therefore fail to state a claim of judicial deception under Claim 17.

Likewise, the same rationale applies to Plaintiffs' claims under Claim 19, as Plaintiffs allege that the Dependency Petition repeated "word-for-word" the application for ex parte removal order, and that the same lies and misrepresentations were repeated in the TDM Summary, the Temporary Custody Notice, and the Court Report. (Doc. 85 at 52-56; Doc. 85-2; Doc. 85-3.) There are many other statements in the allegations of the Petition and supporting documents, including in the application for ex parte removal order that supports a finding that continuation of temporary custody was necessary. (Doc. 85-2; Doc. 85-3.) Moreover, because Brian Wright and L.A.W. had access to, possessed, and had the opportunity to present all controverting evidence to support their arguments that the statements in the Dependency Petition or supporting documents were false to the presiding judge over the dependency matter, the DCS Defendants did not suppress or improperly omit anything. *See Patterson v. Miller*, 451 F. 3d 1125, 1151-1155 (9th Cir. 2020)(rejecting a claim that social workers failed to provide a juvenile court with what plaintiff believed to be "exculpatory" evidence because plaintiff was well aware of the "exculpatory" evidence and there was no evidence that she was denied the opportunity to put forth any exculpatory evidence on her own behalf with the assistance of her attorney). For these reasons and notwithstanding Plaintiffs' allegations, Plaintiffs have failed to show that a violation occurred, and therefore Claim 19 fails and should be dismissed.

**C.    There Is No Respondeat Superior Liability in Section 1983 Cases.**

The claims against Francisco, Sheldon, Noreiga, and Orozco fail because there is no respondeat superior liability. Supervisory defendants cannot be liable for the violations of section 1983 for conduct by others they supervise, i.e. *respondeat superior*. Defendants are liable only for their own wrongful conduct. *Taylor v. List*, 880 F.2d 1040,

1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (vicarious liability does not apply in the context of section 1983 claims). Therefore, a "plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018).

In the present case, there are multiple examples in the Second Amended Complaint where a supervisory DCS Defendant is not alleged to have committed a constitutional violation, but alleged to have supervised the act. For example, Plaintiffs allege:

• as to Francisco under Claims 17 and 10 that she reviewed and approved Talamantes's application for ex parte removal order (Doc. 85, ¶ 73); and she put her name on the Court Report (*id.*, ¶¶ 82, 213-14), she "delivered" to her attorney the application for ex parte removal order drafted by Talamantes (*id.,* ¶ 207); and she made misrepresentations in the TDM Summary which was drafted by the TDM Facilitator (*id.*, ¶ 209; Doc 85-2 at 13).

• as to Sheldon under Claim 22 that she approved and directed Encinas with the intention to obstruct the family's reunification efforts (Doc. 85, ¶ 220).

• as to Noriega under Claim 22 that she approved and directed Encinas with the intention to obstruct the family's reunification efforts (*Id.*).

• as to Orozco under Claim 22 that she directed Sheldon and Noriega with the intention to obstruct the family's' reunification efforts (*Id.*).

All of these allegations center on the theory of *respondeat superior*, which is not permitted under section 1983. As the allegations in the SAC are conclusory, vague, and non-specific, DCS Defendants are unable to ascertain whether the alleged liability is based on their "supervisory" duties or on their "own individual actions." In other words, Plaintiffs have failed to plausibly allege how each supervisor's own individual actions

11

violated the Constitution. The Court should therefore dismiss supervisory defendant Encinas from Claims 17 and 19, and supervisory defendants Sheldon, Noriega, and Orozco from Claim 22.

### D. Plaintiffs Irlanda and L.A.W. Have Failed to State a Retaliation Claim Under Claim Twenty-Two.

The Court previously dismissed Plaintiffs Irlanda Wright, L.A.W., and his siblings from Claim Twenty-Two because "no allegations [were] made related to them." (Doc. 76 at 26-27.) The Court should again dismiss Irlanda Wright and L.A.W from Claim Twenty-Two for the same reason.

To state a retaliation claim under the First Amendment, a plaintiff must plausibly allege that (1) she was engaged in a constitutionally protected activity, (2) the defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in defendants' conduct. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th 2019). A constitutionally protected activity includes "voicing criticism" of an agency's conduct, speaking out, or complaining. *Id.* at 1054; *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020).

Plaintiffs have failed to state such a claim here. Only Brian Wright is alleged to have engaged in protected speech when he complained to the Ombudsman's office or expressed that he intended to file another complaint to criticize the DCS Defendants. (Doc. 85, ¶¶ 77, 119. 219, 222.) There are no plausible allegations that either Irlanda or L.A.W. engaged in any protected activity under the First Amendment that subjected them to any retaliatory conduct. Because Irlanda and L.A.W. have failed to allege that they were retaliated against, they have failed to state a plausible claim for relief. The Court should therefore dismiss them from Claim Twenty-Two, again.

**IV.   Certification.**

Pursuant to Local Rule 12.1, undersigned counsel certifies that on Friday, January 13, 2022, prior to filing the State Defendants' Motion to Dismiss, they notified Plaintiffs' counsel by email of their intent to file a motion to dismiss and requested a conference. Undersigned counsel had previously notified Plaintiffs' counsel on December 2, 2022, before their stipulation to extend the deadline to file a responsive pleading to the Second Amended Complaint, that they needed time to review the new allegations in the pleading and would need to meet and confer about a possible motion to dismiss.  The parties corresponded by email on January 13, 2023, but were unable to have a meaningful discussion before the filing of the motion due counsels' schedules.  Undersigned counsel would agree to Plaintiffs' counsel's proposal to dismiss Plaintiffs Irlanda and L.A.W. from Claim 22, if agreed to by his clients, but *not* at the expense of waiving the State Defendants' other defenses raised herein.

**V.   Conclusion.**

For all of the reasons argued above, the DCS Defendants respectfully request that the Court grant their Motion to Dismiss.

RESPECTFULLY SUBMITTED this  17th   day of January, 2023.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

 /s/ Claudia Acosta Collings
CLAUDIA ACOSTA COLLINGS
JENNIFER J. SANDERS
Assistant Attorney General
Attorneys for Defendants Talamantes, Francisco, Encinas, Sheldon, Noriega & Orozco

s/ cac
10956934

13