WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al., | No. CV-21-00257-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Southern Arizona Children's Advocacy Center, et al., | |
| Defendants. | |

Plaintiffs have filed a Second Amended Complaint alleging numerous Defendants violated their constitutional rights during an investigation by the Arizona Department of Child Safety (DCS), into Brian and Irlanda Wright's treatment of Mr. Wright's son, LAW. Pending before the Court is a Motion to Dismiss the Second Amended Complaint, filed by DCS employees Gerardo Talamantes, Meghean Francisco, Joanna Encinas, Jeannette Sheldon, Betina Noriega, and Michelle Orozco (DCS Defendants). (Doc. 100.) The motion is fully briefed. (Docs. 104, 107.) For the reasons that follow, the Court will grant in part and deny in part the Motion to Dismiss.

**I.   Legal Standard**

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the court takes the well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). To prevail on a motion to dismiss under Rule 12(b)(6), the movant must show either that the complaint lacks a cognizable legal theory

or fails to allege facts sufficient to support its theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court draws all reasonable inferences in the nonmovant's favor. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Courts may resolve claims of qualified immunity at the motion-to-dismiss stage. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892 (9th Cir. 2022).

## II.   Discussion

In their Motion to Dismiss, DCS Defendants contend the Court should (1) dismiss Mrs. Wright from all claims arising from her protected liberty interest in her relationship with LAW; (2) dismiss all claims against supervisory defendants; (3) dismiss Claims Seventeen and Nineteen; and (4) dismiss Mrs. Wright and LAW from Claim Twenty-Two. The Court will address each argument in turn.[1]

### A.   Claims Arising from Mrs. Wright's Relationship with LAW

DCS Defendants argue that the Court should dismiss Mrs. Wright's claims arising from her relationship with LAW because she did not have a constitutionally protected liberty interest in that relationship. (Doc. 100 at 7.) DCS Defendants also argue Mrs. Wright cannot identify any clearly established law showing she had a right to be free from the alleged constitutional violations that arose from her relationship with LAW. (*Id.*) DCS Defendants thus contend Mrs. Wright's claims arising from her relationship with LAW must be dismissed under the doctrine of qualified immunity. (*Id.*)

In their Second Amended Complaint, Plaintiffs allege that Mr. and Mrs. Wright introduced each other to their respective children four months after "they began dating and

---

[1] The Second Amended Complaint, like the First Amended Complaint, is lengthy, comprised of 60 pages and 225 numbered paragraphs. The Court has summarized the events that gave rise to Plaintiffs' claims in a September 30, 2022 Order addressing motions to dismiss the First Amended Complaint. (*See* Doc. 76 at 3–5.) The Court does not restate the background facts here, and instead includes only those facts from the Second Amended Complaint that are necessary and relevant to the pending Motion to Dismiss.

fell in love." (Doc. 85 ¶ 16.) Plaintiffs allege Mrs. Wright became LAW's primary caregiver after the families moved in together in January 2017, when LAW was about three years old. (*Id.* ¶¶ 13, 17–19.) For the next four years and until the events giving rise to this action, Plaintiffs allege Mrs. Wright did for LAW "all the things a mother would do," including monitoring his medical care and giving him love and affection. (*Id.* ¶¶ 20–22.) Plaintiffs also allege LAW had no memory of his biological mother, whose visitation rights were terminated in the summer of 2017, and soon referred to Mrs. Wright as his mother. (*Id.* ¶¶ 17, 20.)

These alleged facts may be sufficient to establish Mrs. Wright's constitutionally protected liberty interest in her relationship with LAW. The Court, however, need not reach that issue. The doctrine of qualified immunity protects government officials from liability for conduct that does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Even if Mrs. Wright had a constitutionally protected liberty interest in her relationship with LAW, a constitutional right of that kind was not clearly established. Plaintiffs point to no legal authority—and the Court finds none[2]—that would place a reasonable person on notice that interfering with a de facto, nonadoptive, nonbiological parent-child relationship would violate the de facto parent's constitutional rights. The Court will therefore dismiss with prejudice Mrs. Wright's Claims Two, Seventeen, and Nineteen.

### B. Claims Against Supervisory Defendants

"A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013). Plaintiffs adequately allege that

---

[2] *Cf. Miller v. California*, 355 F.3d 1172, 1175–77 (9th Cir. 2004) (noncustodial grandparents, who were de facto parents under state law, had no protected liberty interest in their relationship with their biological grandchildren); *Backlund v. Barnhart*, 778 F.2d 1386, 1389–90 (9th Cir. 1985) ("[F]oster parents do not enjoy the same constitutional protections that natural parents do.").

Francisco, Sheldon, Noriega, and Orozco participated in or directed the asserted constitutional violations, or knew of the violations and failed to prevent them. Plaintiffs allege Francisco approved Talamantes's removal petition, despite knowing of its misrepresentations, and participated in submitting lies and misrepresentations to the court for the petition for continued custody. (Doc. 85 ¶¶ 73, 199, 202, 207, 209, 213–14.) Plaintiffs allege Sheldon worked directly with Encinas in taking retaliatory actions following Mr. Wright's complaint. (*Id.* ¶¶ 86–89, 92, 219–20.) Plaintiffs allege Noriega participated in similar retaliatory actions. (*Id.* ¶¶ 86, 94, 115, 119, 126, 135–36, 219–20.) Finally, Plaintiffs allege Orozco had full knowledge of the asserted facts and still permitted the alleged retaliation. (*Id.* ¶¶ 89, 94, 119, 121, 128–29, 219–20.) The Court will therefore deny DCS Defendants' Motion to Dismiss all supervisory defendants.

### C. Claims Seventeen and Nineteen

In Claims Seventeen and Nineteen, Plaintiffs allege Fourth and Fourteenth Amendment judicial-deception claims against Talamantes and Francisco. (*Id.* ¶¶ 193–216.) The allegations in Claim Seventeen pertain to DCS's ex parte petition to remove LAW from Mr. Wright's custody. (*Id.* ¶¶ 193–204.) The allegations in Claim Nineteen relate to DCS's dependency case and petition to temporarily keep LAW from Mr. Wright's custody. (*Id.* ¶¶ 205–216.)

To plead their judicial-deception claims, Plaintiffs must allege "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021). The Court dismissed Claims Seventeen and Nineteen without prejudice in its September 30, 2022 Order. (Doc. 76 at 21–24.) The grounds for dismissal included Plaintiffs' failure to allege sufficiently specific and material facts that would allow the Court to evaluate whether, despite the alleged misrepresentations and omissions, probable cause would have existed to remove and temporarily keep LAW from Mr. Wright's custody. (*Id.*)

In their Second Amended Complaint, Plaintiffs allege Talamantes and Francisco

made several material misrepresentations and omissions during the removal and temporary custody proceedings. (Doc. 85 ¶¶ 193–216.) For instance, Plaintiffs allege Talamantes and Francisco lied about whether LAW stated Mrs. Wright physically disciplines him regularly; mispresented that Mrs. Wright hits LAW with "a belt and a Hot Wheels racing track"; misrepresented Mr. and Mrs. Wright's admission that they spanked their children with an open hand on rare occasions as an admission that they use "physical discipline"; lied about whether Mr. and Mrs. Wright were under criminal investigation; lied about whether Mr. Wright admitted Mrs. Wright caused LAW's bruises; lied about whether Mr. and Mrs. Wright minimized concerns that physically disciplining LAW caused bruising; lied about whether LAW's bruising did not reflect being hit by a hand; misrepresented that different stages of bruising on LAW indicated different instances of physical discipline; and omitted evidence showing that LAW's bruising was caused from "roughhousing" with siblings and not any form of spanking or physical discipline. (*Id.* ¶¶ 202, 209–10.)

Talamantes and Francisco contend the judicial-deception claims still fail because, even if the Court sets aside these alleged misrepresentations and omissions, there was still probable cause to remove and temporarily keep LAW from Mr. Wright's custody. (Doc. 100 at 9.) To be sure, the DCS petitions also included evidence of LAW's bruising and a forensic medical exam. (*Id.*) According to Plaintiffs' Second Amended Complaint, this exam identified five "marks" and "contusions" on LAW; a linear mark and "wrapping" injury consistent with LAW's "disclos[ure] of belt as cause [for the injury]"; and "contusions @ [at] different stages of healing," suggesting "injury events over a period of days." (Doc. 85 ¶¶ 177–79.)

Under Arizona law, a superior court may allow DCS "to take temporary custody of a child on finding that probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect and it is contrary to the child's welfare to remain in the home." Ariz. Rev. Stat. Ann. § 8-821(B). Likewise, to continue temporary custody, DCS "has the burden of presenting evidence as to whether there is probable cause to believe that continued temporary custody is clearly necessary to prevent

abuse or neglect pending the hearing on the dependency petition." *Id.* § 8-824(F).

The test for probable cause asks whether, under the circumstances, a reasonably prudent person would have believed the presented allegations. *Gonzales v. City of Phx.*, 52 P.3d 184, 187 (Ariz. 2002). Abuse means "the infliction or allowing of physical injury." Ariz. Rev. Stat. Ann. § 8-201(2). Physical injury may include "any skin bruising." *See Louis C. v. Dep't of Child Safety*, 353 P.3d 364, 368 (Ariz. Ct. App. 2015); *see also* Ariz. Rev. Stat. Ann. § 13–3623(F)(4). In these proceedings, the superior court applies the preponderance of the evidence standard. Ariz. Rev. Stat. Ann. § 8-844(C); *In re Cochise Cnty. Juv. Action No. 5666–J*, 650 P.2d 459, 460–61 (Ariz. 1982); *Louis C.*, 353 P.3d at 370.

Plaintiffs sufficiently allege that Talamantes and Francisco made deliberate or reckless misrepresentations and omissions that were material to the state court's decision to remove and keep LAW from Mr. Wright's custody. *See Benavidez*, 993 F.3d at 1147. The facts alleged by Plaintiffs, including the alleged forensic medical exam, likely support a finding of probable cause as to at least an incident of physical abuse. However, the question here turns on whether removal and continued custody of LAW were "clearly necessary" to prevent future abuse. A finding of probable cause on this point is undercut by Talamantes and Francisco framing a likelihood of future abuse with the aforementioned alleged misrepresentations and omissions: Mrs. Wright regularly disciplining LAW physically, including with objects such as a belt; Mr. and Mrs. Wright knowing this discipline practice caused LAW bruising; and, nevertheless, Mr. and Mrs. Wright showing little concern that it was harming or injuring LAW. (Doc. 85 ¶¶ 202–04, 209–10.) Assuming Talamantes and Francisco made the alleged misrepresentations and omissions, as the Court must at this stage, setting them aside would undermine the state court's finding that LAW clearly required protection from future abuse.

For these reasons, Plaintiffs have sufficiently pled their judicial-deception claims. The Court will deny DCS Defendants' Motion to Dismiss Claims Seventeen and Nineteen.

//

### D. Claim Twenty-Two

To state a retaliation claim, a plaintiff must allege "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). The Court dismissed Mrs. Wright and LAW from Claim Twenty-Two because they failed to plead any allegations related to them. (Doc. 76 at 26–27.) In the Second Amended Complaint, Mrs. Wright and LAW allege that Mr. Wright engaged in constitutionally protected speech by filing a complaint to benefit himself and his family. (Doc. 85 ¶ 219.) Mrs. Wright and LAW also allege DCS Defendants retaliated against all three of them because of Mr. Wright's complaint by delaying family unification, seizing LAW without justification, making false statements, denying Mr. Wright information, lying to him, and intimidating the family. (*Id.* ¶¶ 217–25.)

DCS Defendants argue Mrs. Wright and LAW fail to state a retaliation claim because they fail to allege that they, too, engaged in constitutionally protected speech. (Doc. 100 at 12.) However, Mrs. Wright and LAW may allege they suffered retaliation for their perceived association with the speech of a close family member. *See Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291, 1302 (M.D. Ala. 2012) (collecting cases); *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (First Amendment retaliation claim based on spousal relationship); *Isakhanova v. Muniz*, No. 15-CV-03759-TEH, 2016 WL 1640649, at *4 (N.D. Cal. Apr. 26, 2016) (First Amendment retaliation claim based on parent-child relationship). Mrs. Wright and LAW meet this standard by alleging DCS Defendants retaliated against them because of their close relationships with Mr. Wright. (*See* Doc. 85 ¶ 224.) For this reason, the Court will deny DCS Defendants' Motion to Dismiss Mrs. Wright and LAW from Claim Twenty-Two.

//
//
//

**III.    Conclusion**

Accordingly,

**IT IS ORDERED**:

1. DCS Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 100) is **granted** in part and **denied** in part.

2. Mrs. Wright's Claims Two, Seventeen, and Nineteen are **dismissed** with prejudice.

3. DCS Defendants must file an answer to all remaining claims in Plaintiffs' Second Amended Complaint within **21 days** of the date of this Order.

Dated this 14th day of March, 2023.

_____
Honorable Jennifer G. Zipps
United States District Judge