Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 1 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Brian Wright, et al.,             )
                                  )
    Plaintiffs,                   )
                                  )
v.                                )   Case No.
                                  )   4:21-cv-00257-JGZ
Southern Arizona Children's       )
Advocacy Center, et al.,          )
                                  )
    Defendants.                   )
_____)

DEPOSITION OF

MARIE FORDNEY

June 2, 2023
2:00 p.m.

4801 East Broadway Boulevard, Suite 301
Tucson, Arizona

REPORTED BY:   RICHAEL M. SILVIA, RMR, CRR, CRCR
               Arizona CR No. 51017
               New Mexico CR No. 554

COLVILLE & DIPPEL, LLC
1309 East Broadway Boulevard
Tucson, Arizona   85719-5824
ArizonaDepos.com
Arizona RRF No. R1129

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 2 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center                    Page 2

1  The deposition of MARIE FORDNEY, noticed by
2  Plaintiffs, was taken on June 2, 2023, from 2:00 p.m.
3  to 2:45 p.m., at Slutes, Sakrison & Rogers, P.C., 4801
4  East Broadway Boulevard, Suite 301, Tucson, Arizona,
5  before Richael M. Silvia, Registered Merit Reporter,
6  Certified Realtime Reporter, Colorado Realtime
7  Certified Reporter and Arizona Certified Reporter No.
8  51017.
9                    APPEARANCES OF COUNSEL
10
11 For the Plaintiffs:
12         LAW OFFICE OF MICHAEL GARTH MOORE
           BY:  MICHAEL GARTH MOORE, ESQ.
13         6336 North Oracle Road
           Suite 326, No. 119
14         Tucson, Arizona   85742
           (520) 437-9440
15         mike@mgmoorelaw.com

16 For the Defendant Southern Arizona Children's Advocacy
   Center & Marie Fordney:
17
           GRASSO LAW FIRM, P.C.
18         BY:  PARI K. SCROGGIN, ESQ.
           2250 East Germann Road
19         Suite 10
           Chandler, Arizona   85286
20         (480) 739-1203
           pscroggin@grassolawfirm.com
21
   For the Defendant Dale Woolridge, MD:
22
           SLUTES, SAKRISON & ROGERS P.C.
23         BY:  KATHLEEN ROGERS, ESQ.
           4801 East Broadway Boulevard
24         Suite 301
           Tucson, Arizona 85711
25         (520) 624-6691
           krogers@sluteslaw.com

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 3 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center                    Page 3

```
 1              APPEARANCES OF COUNSEL (Continued)

 2
    For the Defendant Town of Sahuarita:
 3
                JELLISON & ROBENS PLLC
 4              BY:  RODNEY STATES, ESQ.
                18801 N Thompson Peak Pkwy
 5              Suite D235
                Scottsdale, Arizona 85255
 6              (602) 277-6009
                Rodney@jrlawaz.com
 7

 8  For the Defendants Orozco, Francisco, Noriega, Encinas,
    Talamantes, & Sheldon:
 9
                OFFICE OF THE ATTORNEY GENERAL
10              BY:  CLAUDIA ACOSTA COLLINGS, ESQ.
                     JULIE RHODES, ESQ. (Via Zoom)
11              400 West Congress
                South Building, Suite 315
12              Tucson, Arizona 85701
                (520) 628-6504
13              Claudia.collings@azag.gov

14  Also Present:

15              Brian Wright

16

17

18

19

20

21

22

23

24

25
```

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 4 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center                    Page 4

```
                              I N D E X

                                                              PAGE
EXAMINATION OF MARIE FORDNEY:
June 2, 2023

By Mr. Moore:                                                5, 41
By Ms. Collings:                                                40
By Ms. Scroggin:                                                --
By Ms. Rogers:                                                  --
By Mr. States:                                                  --
By Ms. Rhodes:                                                  --


                                                           INITIAL
DEPOSITION EXHIBITS                                      REFERENCE
(None.)


PREVIOUSLY MARKED DEPOSITION                               INITIAL
EXHIBITS:                                                REFERENCE


Exhibit 1     Pima County Protocols for the                      8
              Multidisciplinary Investigation of
              Child Abuse (SACAC 00045 through
              00180)

Exhibit 3     National Children's Alliance                       9
              Standards for Accredited Members,
              2017 Edition (ASWRIGHT007408 through
              007471)

Exhibit 7     Children's Advocacy Center Intake                 14
              Form Paperwork (SACAC 00001 through
              00029)


INFORMATION REQUESTED:
(None.)

QUESTIONS INSTRUCTED NOT TO ANSWER:
(None.)
```

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 5 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center                Page 5

```
 1          The following proceedings were taken pursuant
 2   to the Arizona Rules of Civil Procedure.
 3                       MARIE FORDNEY,
 4   having been first duly sworn to state the whole truth,
 5   testified as follows:
 6                        EXAMINATION
 7   BY MR. MOORE:
 8       Q.   Good afternoon.
 9       A.   Hi.
10       Q.   We always do this, we don't have to.
11            But would you give your full name to our
12   court reporter here and spell it?
13       A.   Yes.  My name is Marie Fordney, M-a-r-i-e
14   F-o-r-d-n-e-y.
15       Q.   And is it Ms. or Mrs.?
16       A.   Mrs.
17       Q.   Mrs.  Okay.
18            Ms. Fordney, we're here today, as you saw
19   this morning, to address issues regarding the medical
20   examination of Brian's son that was conducted
21   December 16, 2020.  I know that you were not a part of
22   that examination.  But what I would like to ask you is,
23   you're the executive director of -- and I'm going to
24   call it "the Center," it's the Southern Arizona Child
25   Advocacy Center, but the Center, correct?
```

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 6 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center                    Page 8

```
 1        A.    The board has monthly meetings.
 2        Q.    Okay.  And in terms of your duties and
 3   responsibilities, is there a written job description or
 4   something of the sort?
 5        A.    Yes.
 6        Q.    Am I correct?  Okay.
 7              So in terms of those responsibilities, do you
 8   have the authority to institute changes to the
 9   protocols used by the Center with regard to the medical
10   examination of children?
11        A.    No.
12        Q.    Who has that authority?
13        A.    Their -- the -- the protocols really are the
14   purview of the county attorney's office.
15        Q.    Okay.  So we got a big thick document here,
16   Exhibit 1, the Pima County protocols dated
17   October 2014, which long predated your involvement.  So
18   I assume you didn't have anything to do with the
19   development of these.
20              But in your work, have you had the occasion
21   to read the protocols?
22        A.    Yes.
23        Q.    Okay.  Now, is -- is the Center also -- I
24   believe it's accredited with the National Children's
25   Alliance.
```

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 7 of 11
**Deposition of MARIE FORDNEY**
**Wright vs Southern Arizona Children's Advocacy Center**                                Page 9

1   **A.   Yes.**
2   Q.   Am I correct?
3   **A.   Yes, it is.**
4   Q.   And there are standards published by the
5   National Children's Alliance, which we addressed
6   briefly with Dr. Woolridge.
7        Are you familiar with the standards, the one
8   I have here, 2017 edition, it's Plaintiff's Exhibit 3?
9   **A.   Broadly, yes.**
10  Q.   Okay.  Understand, broadly.
11       And the Center intends to comply with these
12  standards?
13  **A.   Yes.**
14  Q.   Correct?  Okay.
15       And have -- since you've been there, have
16  there been reviews of the Center in its -- its
17  activities by the NCA?
18  **A.   Yes.**
19  Q.   How often have people come down to the
20  Center?
21  **A.   The last reaccreditation site visit was**
22  **virtual.**
23  Q.   Okay.  How often is that done?
24  **A.   If I'm recalling correctly, it's every five**
25  **years.**

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 8 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center
Page 28

1  Q. I'm just going to ask, this has to do -- this
2  is number five, medical evaluation rationale. I'm just
3  going to ask -- read to you the first couple sentences
4  and ask you a question about it:
5          "All children who are suspected victims of"
6  child abuse -- "child sexual abuse are entitled to a
7  medical evaluation by a provider with specialized
8  training. The collection and documentation of possible
9  forensically significant findings are vital."
10         Is that your understanding of what the
11 obligation is relative to the medical exam?
12   A. That is the standard.
13   Q. Okay. What does forensic mean?
14   A. I actually don't have a good definition for
15 that word.
16   Q. Okay. Dr. Woolridge has testified that
17 children do not undergo medical examinations at the
18 Center unless they are requested by law enforcement or
19 DCS.
20         Is that your understanding?
21   A. Yes.
22   Q. Okay. Does the agency -- excuse me,
23 agency -- does the Center have an internal unit that
24 creates and administers the website?
25   A. No.

Case 4:21-cv-00257-JGZ   Document 282-2   Filed 12/20/23   Page 9 of 11
Deposition of MARIE FORDNEY
Wright vs Southern Arizona Children's Advocacy Center                Page 29

1  Q. Who does that?
2  A. **A third-party contractor.**
3  Q. I understand that.
4     Are you familiar with what's on the web?
5  A. **Yes. Generally, yes.**
6  Q. It has to be approved by you before it goes
7  up, right?
8  A. **I don't recall approving everything that's on**
9  **there, no.**
10 Q. Well, let me read to you some things and tell
11 me if you understand these to be accurate.
12 A. **Okay.**
13 Q. "When law enforcement or the Department of
14 Child Safety believe that a child may be experiencing
15 abuse, the child is brought to the Children's Advocacy
16 Center, a safe, trauma-informed, child-focused
17 environment, by a non-offending family member or
18 caregiver."
19    That's on the website. Is that an accurate
20 statement regarding when a child comes to the Center?
21 A. **Can you read it again?**
22 Q. When a law enforcement -- "When law
23 enforcement or the Department of Child Safety believe a
24 child may be experiencing abuse, the child is brought
25 to the Children's Advocacy Center, a safe,

```
 1   trauma-informed, child-focused environment, by a
 2   non-offending family member or caregiver."
 3        A.   And the question is, is that when they're
 4   brought to the Center, yes.
 5        Q.   Okay.
 6        A.   That's true, that's accurate.
 7        Q.   Okay.  Now, as executive director, you
 8   understand that there's an intake process.
 9             Are you aware there's a pre-staffing that's
10   done before the child is interviewed?
11        A.   Yes.
12        Q.   The next step would be the child being
13   interviewed, correct?
14        A.   Generally, yes.
15        Q.   And the next step after that would be, if
16   it's determined by those who have pre-staffed this on
17   the basis of their staffing and the medical -- excuse
18   me, the forensic interview, that one of the medical
19   doctors will be called in to do a medical exam.
20             That's your understanding of the general
21   process?
22        A.   Medical exams are provided at the request of
23   law enforcement and child welfare.
24        Q.   Okay.  So in other words, the decision as to
25   whether a medical exam will be requested is in the
```

```
 1   hands of law enforcement or DCS that's there at the --
 2   at the facility.
 3           Am I correct?
 4       A.  Yes.
 5       Q.  Okay.  And if that's done, if they request
 6   it, then a medical exam is done, correct?
 7       A.  Yes.
 8       Q.  Okay.  And that's the way it is every time,
 9   right -- withdraw that.
10           Is there anyone else besides law enforcement
11   or DCS that has the authority to say, I want this child
12   medically examined?
13       A.  No.
14       Q.  Okay.  By the way, did Morgan Rau have
15   relate -- anybody related to her that's affiliated with
16   the Center?
17           MS. SCROGGIN:  Foundation.
18       A.  No, she doesn't.
19       Q.  (BY MR. MOORE)  She does not?
20       A.  No.
21       Q.  Okay.  Did she have in the past?
22           MS. SCROGGIN:  Foundation.
23       A.  Yes.
24       Q.  (BY MR. MOORE)  I'm sorry?
25       A.  She did, yes.
```