UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Brian Wright, et al.,   Case No.: 4:21-cv-00257-JGZ

    Plaintiffs,

vs.

Southern Arizona Children's Advocacy Center,

    Defendants.

---

DEPOSITION OF

MORGAN RAU

September 19, 2023

9:07 a.m. to 10:20 a.m.

1309 E. Broadway Blvd
Tucson, Arizona 85719

REPORTED BY:  Sandra Marruffo, RPR
               Arizona CR No. 50815
Colville & Dippel
1309 E Broadway Blvd
Tucson, Arizona 85719-5824
(520) 884-9041
ArizonaDepos.com
Arizona RRF No. 1129

Case 4:21-cv-00257-JGZ   Document 282-3   Filed 12/20/23   Page 2 of 10
Deposition of MORGAN RAU
Wright vs Southern Arizona Children's Advocacy Center                                    Page 2

```
 1              The deposition of MORGAN RAU, noticed by
 2   Michael Garth Moore, Esq., was taken on September 19,
 3   2023, from 9:07 a.m. to 10:20 a.m., at the Offices of
 4   Colville & Dippel, 1309 E. Broadway Boulevard, Tucson,
 5   Arizona, 85719, before Sandra Marruffo, Arizona
 6   certified reporter No. 50815.
 7
 8                       APPEARANCES OF COUNSEL
 9   Attorney for Plaintiffs:
10
              MICHAEL GARTH MOORE
11            BY:  Michael Garth Moore, Esq.
              6336 North Oracle Road
12            Suite 326
              P.O. Box 119
13            Tucson, Arizona 85704
              mike@mgmoorelaw.com
14
15   Attorneys for Southern Arizona Children's Advocacy
     Center:
16
              GRASSO LAW FIRM, P.C.
17            BY:  Pari Scroggin, Esq. (via Zoom)
              2250 East Germann Road
18            Suite 10
              Chandler, Arizona 85286
19            pscroggin@grassolaw.com
20
     Attorneys for Defendants Orozco, Francisco, Noriega,
21   Encinas, Talamantes & Sheldon:
22            ASSISTANT ATTORNEY GENERAL
              BY:  Claudia Acosta Collings, Esq.
23            416 W. Congress Street
              2nd Floor
24            Tucson, Arizona 85701
              Claudia.Collings@azag.gov
25
```

```
 1                APPEARANCES OF COUNSEL (continued)
 2
     Attorneys for Defendant Dale Woolridge, MD:
 3
                SLUTES, SAKRISON & ROGERS, P.C.
 4              BY:  Tom Slutes, Esq.
                4801 E. Broadway Boulevard
 5              Suite 301
                Tucson, Arizona 85711
 6              (520) 624-6691
                Tslutes@sluteslaw.com
 7
 8   ALSO PRESENT:
     Brian Wright
 9   Michele Tomas
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 4:21-cv-00257-JGZ   Document 282-3   Filed 12/20/23   Page 4 of 10
Deposition of MORGAN RAU
Wright vs Southern Arizona Children's Advocacy Center
Page 4

```
 1                    INDEX OF EXAMINATION
 2
     EXAMINATION                                          PAGE
 3
 4   By Mr. Moore                                         5
 5   By Ms. Acosta Collings                               47
 6
 7
 8
 9              (No exhibits were marked.)
10
                INDEX TO EXHIBITS REFERENCED
11
     EXHIBIT       DESCRIPTION                            PAGE
12
     7             Children's Advocacy Center 12/16/20    22
13                 Intake Form
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                   DEPOSITION TRANSCRIPT
 2                   September 19, 2023
 3                        *   *   *
 4                       MORGAN RAU,
 5   having been first duly sworn to tell the truth, the whole
 6   truth, and nothing but the truth under penalty of
 7   perjury, was examined and testified as follows:
 8                       EXAMINATION
 9       Q.   BY MR. MOORE:   Good morning, Ms. Rau.
10       A.   Good morning.
11       Q.   A second time.   You've already identified
12   yourself.   But just for the record, spell your full name
13   for us.
14       A.   Yeah.   Morgan, M-O-R-G-A-N.   Last name Rau,
15   R-A-U.
16       Q.   And are you currently employed -- I'm going to
17   use the term CAC for Southern Arizona Child Advocacy
18   Center.   Is that okay?
19       A.   Yes.
20       Q.   All right.   Are you currently employed by that
21   entity?
22       A.   Yes.
23       Q.   Okay.   What do you do there?
24       A.   I am the director of forensic interviewing.
25       Q.   Okay.   Okay.   And how long have you been the
```

```
 1                THE WITNESS:  Okay.
 2        Q.   BY MR. MOORE:  Is that all right?
 3        A.   Yes.
 4        Q.   Okay.  Okay.  So when were you first employed
 5   at CAC?
 6        A.   I have been working there for about nine and a
 7   half years.
 8        Q.   And when -- when did you take up the position
 9   of forensic interviewer?
10        A.   That -- it's been about six and a half years.
11        Q.   Six and a half.  Okay.  So if we go back three
12   years -- about three years till December 16th of 2020,
13   you've been in that job for three years yourself,
14   correct?
15        A.   Correct.
16        Q.   Okay.  So you're experienced, right?
17        A.   Yes.
18        Q.   All right.  Now, how would you define forensic
19   interviewing?
20                MS. SCROGGIN:  Form.
21                THE WITNESS:  How do I -- I define it as
22   interviewing a child for court.
23        Q.   BY MR. MOORE:  And in terms of interview --
24   interviewing, we're talking about the forensic
25   interviewer asks the child questions and the child
```

```
 1   were more, and then COVID hit and it dropped off --
 2        A.   Correct.
 3        Q.   -- and now it's gone back up?
 4        A.   Correct.
 5        Q.   Okay.  So there was a lag there in that period
 6   of time?  All right.
 7        A.   Correct.
 8        Q.   In any event, you do a lot, sounds like?
 9        A.   Correct.
10        Q.   Okay.  Let me talk in more general terms about
11   the whole process at CAC.  How generally does a -- how
12   does a child come to CAC?
13        A.   So when law enforcement has a case involving a
14   child --
15        Q.   Uh-huh.
16        A.   -- they'll call and schedule an appointment
17   with our front desk.  And then on the day of, family
18   shows up or child shows up and they're checked in.  Then
19   a briefing is conducted with an interviewer, the
20   detective, DCS if they're present, and the family
21   advocate.  Then the interviewer -- I will go interview
22   the child.  A family advocate will meet with any
23   non-offending family members.
24             And then afterwards, the interviewer is
25   done, most of the time law enforcement will meet with the
```

```
 1   family after.  If a medical is to occur, that usually
 2   hap- -- that does -- most of the time happens after the
 3   interview.
 4        Q.   Okay.  And I -- I appreciate that.  So there
 5   are times when -- it sounds, what you're telling me,
 6   there's times when the family comes to the advocacy
 7   center with the child and there are times when the child
 8   alone comes to the center?
 9        A.   Correct.
10        Q.   Okay.  Any ideas what the percentage of that
11   is?
12        A.   No.
13        Q.   Okay.  Let me -- let me do this:  I'm going to
14   show you what we had previously marked as Plaintiff's
15   Exhibit 7.
16        A.   Okay.
17        Q.   And I've highlighted some things on there just
18   to make it easier for us to talk about it.
19        A.   Okay.
20        Q.   What I -- what I'd like to do is have you just
21   take a few moments and go through the entire document.  I
22   take it you've not seen this before in this -- in this
23   organization?
24        A.   No.  I don't recall seeing this.
25        Q.   Okay.  Go ahead.  Just take a few minutes.
```

```
 1   protocols, Exhibit 1?
 2        A.   No.
 3        Q.   How about the NCA standards?
 4        A.   No.
 5        Q.   Okay.  Have you had any communications about
 6   this case, about your duties, responsibilities, with
 7   anyone other than the attorneys that are representing
 8   yourself and the Center?
 9        A.   No.
10        Q.   Okay.  So you haven't been in any meetings
11   where lawyers from other -- of other defendants have
12   been present?
13        A.   No.
14        Q.   Okay.  Now, what is the policy of the Center
15   regarding notifying parents when a child is brought to
16   the Center by law enforcement or DCS, and the child is
17   intended to go through a forensic medical -- excuse me,
18   forensic interview and a forensic medical exam?
19             MS. SCROGGIN:  Assumes fact not in evidence.
20        Q.   (BY MR. MOORE)  Go ahead.
21        A.   We do not have a policy.
22        Q.   Okay.  Has that issue ever come up in your
23   experience -- withdraw that.  Let me do it this way.
24             Dr. Woolridge talked about meetings on a
25   periodic basis of the multidisciplinary team.
```

```
 1        Q.    (BY MR. MOORE)   So as far as you're
 2   concerned, the Center simply relies on the law
 3   enforcement or the DCS agents telling you that they are
 4   indeed legal guardians, and then the doctor goes
 5   forward with the medical exam?
 6              MS. COLLINGS:    Form.
 7        Q.    (BY MR. MOORE)   Correct?
 8              MS. SCROGGIN:    Foundation.
 9              MR. STATES:    Join.
10        Q.    (BY MR. MOORE)   Withdraw that.
11              The Center has no policy that requires
12   whoever brings the child in to have documentary support
13   that they are the child's guardian, am I correct?
14        A.    Correct, we do not have that.
15        Q.    Okay.  So if a law enforcement officer brings
16   a child in and says, I'm the guardian and I'm authoring
17   you to conduct this medical examination, you do it,
18   right?
19              MS. COLLINGS:    Form.
20        Q.    (BY MR. MOORE)   Yes?
21        A.    Yes.
22              MR. MOORE:  Okay.  Let's take a short break.
23              (Recess taken from 2:32 p.m. to 2:34 p.m.)
24        Q.    (BY MR. MOORE)   Okay.  Let me -- I've just
25   got a couple more questions.  Let me ask you to go to
```