

# PIMA COUNTY PROTOCOLS

## FOR THE MULTIDISCIPLINARY INVESTIGATION OF CHILD ABUSE

OFFICE OF THE PIMA COUNTY ATTORNEY
BARBARA LAWALL, PIMA COUNTY ATTORNEY
TUCSON, ARIZONA

PIMA COUNTY
ATTORNEY
TUCSON
ARIZONA

PLAINTIFF'S
EXHIBIT
tabbies

OCTOBER 2014

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ
SACAC 000045

## TABLE OF CONTENTS

**Section I**

Statement of Purpose .......... 3

History .......... 4

Participating Agencies .......... 5

Multi-Disciplinary Team Members Roles and Responsibilities .......... 6

**Section II – Protocols**

Department of Child Safety –*protocol pending* .......... 12

Law Enforcement Protocol .......... 13

Office of Child Welfare Investigations –*protocol pending* .......... 19

Medical Protocol .......... 20

Behavioral Health Protocol .......... 25

Southern Arizona Mental Health Corporation (SAMHC) Protocol .......... 30

Extended Crisis Intervention Services .......... 32

Pima County Attorney Protocol .......... 38

Schools' Roles and Responsibilities Protocol .......... 45

Victim Services Protocol .......... 50

Judicial Protocol for Juvenile and Superior Court .......... 52

Adult Probation Protocol .......... 59

Indian Child Welfare Act .......... 64

**Section III - Southern Arizona Children's Advocacy Center Protocol** .......... 65

**Section IV – Reporting and Training Responsibilities**

Mandatory Reporting .......... 74

Mandated Reporter Training .......... 77

Annual Report to the Governor .......... 79

Procedures for Dispute Resolution .......... 79

Training .......... 80

Case Studies .......... 81

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse, page 1

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

**Section V – Appendices**


Appendix A - A.R.S. §13-3620 – Mandatory Reporting ....................84
Appendix B - Arizona Revised Statutes §8-817 – Investigation Protocols ....................88
Appendix C - Records Request Form ....................90
Appendix D - Forensic Medical Examinations ....................91
Appendix E - Extended Crisis Intervention Services – Multi Disciplinary Team Authorization Form ....................100
Appendix F - Minimal Facts Interview ....................101
Appendix G - Rule 39 of Criminal Code, Victim's Rights ....................102
Appendix H - Attorney General's Opinion: School District Cooperation with Child Protective Services ....................105
Appendix I - Attorney General's Opinion: Whether Private Schools May Impose Requirements or Limitations on Child Protective Services ....................107
Appendix J - Attorney General's Opinion: Responsibility to Pay for Medical Expenses Incurred during Investigation ....................111
Appendix K - Glossary of Medical Terms ....................113
Appendix L - Definitions of Abuse ....................116
Appendix M - Physical Neglect Report Form ....................120
Appendix N - Behavioral Health Agency Report Form ....................122
Appendix O - Information for Victims of Crime ....................124
Appendix P - Urgent Pediatric Sexual Abuse Triage Procedures ....................125
Appendix Q – Department of Child Safety Cue Questions ....................126
Appendix R - Resources and Contacts ....................127
Appendix S - Tips for Examining Child Sex Abuse Victims ....................129
Appendix T - ARS §8-810 Missing Children Notification ....................130




Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

and updated to produce the January 2007 Protocol. In 2008 the legislature addressed issues of child abuse and joint investigations amending the statutes. A statewide summit including law enforcement, Child Protective Services and County Attorneys was held in Phoenix to review those changes and recommend common elements for protocols and reporting statewide.

Pima County is committed to the use of child and family advocacy centers, and in co-location of relevant agencies in the investigation and prosecution of cases of child maltreatment. Agencies in Pima County joined in a collaborative effort to develop an advocacy center that serves the needs of children and also addresses the needs of adult victims of sexual assault, domestic violence and elder abuse. Phase I of this project was the new Children's Advocacy Center with co-location of a number of partner agencies, including the Pima County Attorney's Office, the Pima County Sheriff's Office, Tucson Police Department, Child Protective Services, the EMERGE Center for Domestic Violence Services, Victim Services, Las Familias Angel Center for Childhood Sexual Abuse Treatment, and the Southern Arizona Children's Advocacy Center. The $6 million building was financed through county bond funds and opened in October 2008.

In 2013 the state legislature established the Office of Child Welfare Investigations (OCWI) (Arizona Revised Statute §841-1969) to investigate criminal conduct (See Appendix L) allegations, conduct trainings, and to coordinate with Child Protective Services and law enforcement. The 2014 Protocol is the result of those changes and other necessary updates. At the time of publication the State of Arizona was reviewing the structure of CPS (now DCS) and OCWI. The Pima County Attorney wishes to thank all those who showed their commitment to this effort by attending meetings, reviewing and drafting portions of the document, providing materials for appendices, and in many other ways contributing to its completion.

## PARTICIPATING AGENCIES

Arizona Department of Juvenile Corrections
Arizona State Attorney General's Office
Catholic Diocese of Tucson
City of Tucson Prosecutor's Office
Court Appointed Special Advocates
Community Partnership of Southern Arizona
Tucson Police Department
Emerge Center Against Domestic Abuse
Jewish Child and Family Services
Las Familias
Marana Police Department
Office of Child Welfare Investigations
Oro Valley Police Department
Pima County Adult Probation
Department of Child Safety and Family Services
Pima County Attorney's Office (PCAO)
PCAO - Victim Services
Pima County Sheriff's Department
Pima County Superintendent of Schools
Sahuarita Police Department
South Tucson Police Department
So. Arizona Center Against Sexual Assault
Southern Arizona Children's Advocacy Center
Southern Arizona Mental Health Corporation
Sunnyside Unified School District
Superior Court, Juvenile Division
Tucson Police Department
Tucson Unified School District
University Medical Center – Pediatrics
Wingspan Anti-Violence Project

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse, page 5

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

E. Appropriate lab testing for pregnancy, sexually and non-sexually transmitted diseases will be obtained.
F. A forensic medical report will be completed and used for documentation, and recommendations addendums will be provided if any follow-up exams or test results return with positive findings.

**Acute Assault Exams:** Use of the sexual assault kit, in appropriate settings includes the following:
A. Paper bagging of individualized items of clothing.
B. Collecting specimens from body orifices via swabs.
C. Collecting other debris (trace evidence) which may be present.
D. Collecting specimens via swabs of the areas that may have perpetrator body fluids (bite marks, semen dried on skin) using the Wood's lamp.
E. Proper drying using swab drying device (using non heated air) and handling all materials with gloves
F. Maintaining the chain of custody.

The collection described above is optimal when done prior to bathing, changing clothes, or urination/defecation. Pregnancy and STD prophylaxis need to be considered and offered where appropriate. See Appendix P for triage procedures for Emergency Sexual Abuse Exams.

**Procedures for Physical Abuse & Neglect Evaluations**
A. Physical abuse ranges from minor injury to death. The most serious injuries, and the most frequent deaths are in children "too young to get away" and too young to tell," or those who have special needs or behavior problems.
B. Urgent examination is necessary for obvious, visible injuries, but the potential of hidden internal and skeletal injuries must also be excluded when physical abuse is suspected. These exams require facilities that are able to do diagnostic procedures and consult specialty staff (skeletal surveys, CTS, MRIs, ophthalmologists for retinal injuries, etc.).
C. Injuries sustained by children that are non-accidental are suspected when there is inconsistent or absent history. When there are multiple injuries in different stages of healing, locations not commonly injured (abdomen, genitals, etc.), or delay in obtaining medical care. Changing doctors frequently, and using different urgent care treatment centers to avoid detection of the frequency of a child's visits is also suspicious.
D. Non-emergency medical evaluations should be scheduled at the Children's Advocacy Center after a child has had a forensic interview, if possible. Medical exams are needed in most physical abuse incidents wherein legal proceedings are anticipated. It will be necessary to collect physical evidence related to the child's condition or injuries. This includes all the injuries, and not just the most obvious or serious ones.
E. Reference standards (measuring tapes, gray scale, and color wheels) and multiple angle shots are necessary to photographing bruises and injuries that will be documented in the forensic medical record.

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse,                    page 23

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

F.  The forensic examiner may need to review all past medical records, tests and pertinent information in order to give an opinion in establishing a physical abuse or neglect case. Referral to specialists for diagnostic procedures (i.e., skin biopsy) may also be included in these cases. In some cases, appropriate lab studies may be necessary to exclude bleeding disorders or inherited disorders.

**Communication and Information Sharing with the Southern Arizona Children's Advocacy Center**

All medical records released to DCS and/or Law Enforcement should be made available to the forensic examiner at the Children's Advocacy Center, and all pertinent past medical history (including immunizations) should be obtained if a family member doesn't accompany the child. Information regarding the disclosure (who, what, when, where, why, and how) needs to be available to the forensic examiner at the time of the exam. Children with positive test results for sexually transmitted diseases need to have the written report accompany the child. DCS or the child's guardian is required to sign a request for the HIV testing.

Following the exam, the forensic examiner summarizes the findings, recommendations, and any follow-up needed. In joint investigations, it is expected that this information will be shared between the investigators in a timely manner. The child's guardian is given whatever information is necessary for the health and welfare of the patient, and encouraged to contact the Children's Advocacy Center if any new symptoms develop. Results of positive labs are shared with the patient (when appropriate), guardian, DCS, and Law Enforcement, as well as suggestions for medical follow-up if necessary. The guardian is given information on the health and welfare of the patient, as well as information on any needed medical follow-up and/or further testing or to establish primary care.

A complete medical report and psychosocial report are distributed to DCS and Law Enforcement. Records, including lab reports, may be forwarded to community physicians but require a parental or custodial (DCS) signed release. Medical personnel will take precautions to maintain patient confidentiality, and will contact patient/family members with DCS involvement if further information is needed. It is expected that unusual situations or difficult issues may arise which require a team staffing to facilitate the overall management of a case.

## SOUTHERN ARIZONA MENTAL HEALTH CORPORATION (SAMHC) PROTOCOL

### SAMHC'S ROLES AND RESPONSIBILITIES

In 2003, Governor Napolitano mandated that all children taken into DCS custody be ensured, at a minimum, an urgent response from the behavioral health system, and in some cases, immediate response.

Arizona Department of Health Services (ADHS) defines urgent response as a rapid and prompt response to a person who may be in need of medically necessary covered behavioral health services. An urgent response should be initiated in a punctual manner, within a timeframe indicated by the person's clinical needs, but no later than twenty-four hours from the initial identification of need. Urgent responses must be initiated upon notification by DCS that a child has been, or will be, removed from the home.

ADHS defines immediate response as "an expedited and instant response to a person who may be in need of medically necessary covered behavioral health services. An immediate response should be initiated without delay, within a timeframe indicated by the person's clinical needs, but no later than two hours from the initial identification of need."

Governor Napolitano's mandate recognized that removal of a child from his or her home is a situation in which assessment and/or provision of behavioral health services are medically necessary.

The Regional Behavioral Health Authorities throughout the state were charged with carrying out the Governor's mandate. In Pima County, The Community Partnership of Southern Arizona (CPSA) asked SAMHC, the community crisis provider, to ensure behavioral health assessment to all children removed from their homes. SAMHC's urgent or immediate response to these situations began 8/15/03.

### SAMHC PROCESS FOR URGENT OR IMMEDIATE BEHAVIORAL HEALTH RESPONSE

**A. Upon Placement of a Child Removed from the Home DCS Will:**

- Fax completed Family Dispatch Form (listing all children removed and children left in the home) to SAMHC at 618-8624 (7 days/week) within 24 hours of removal. The fax transmission includes Consent to Treat and Release of Information forms for each child.
- If the DCS Specialist is concerned that a child is a current danger to self or others, the specialist shall call SAMHC at 490-4056 (M-F 8:00-4:00) or if after hours/weekends at 622-6000, to request response within two hours.
- For all children aged five to eighteen (5 to 18), call SAMHC to report any changes (placement, child returned home, etc.) prior to the Preliminary Protective Hearing (PPH).

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse, page 30

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

special arrangements have been made with the Clinical Services Supervisor.

If an investigator is unable to attend the interview, s/he is responsible for finding a replacement to observe the interview. If this is not possible, the interview will be rescheduled. The investigator is responsible for notifying all other team members concerning the rescheduled appointment.

In the case of jurisdiction issues, the scheduling agency will contact the appropriate law enforcement or DCS agency to transfer the case.

## THE FORENSIC INTERVIEW PROCESS

**Interview Rooms:** SACAC operates four interview rooms in which children feel comfortable and are not easily distracted. These rooms are equipped with microphones, video cameras, small tables and chairs and drawing/writing materials.

**Observation Room:** Investigative team members monitor the forensic interviews via monitors in adjacent observation rooms. Transmitters and earpieces are available to permit direct contact between the investigators in the observation rooms and the forensic interviewers during the course of the interviews.

**24-Hour Access:** SACAC is accessible 24 hours per day/7 days per week to law enforcement, DCS, and OCWI. The lead investigator using the facility after-hours must sign the log sheet, be responsible for the operation of the equipment, turn off all lights and equipment upon departure, and activate/deactivate the alarm system.

**Forensic Interviewers:** SACAC employs professionals trained in child development and forensic interviewing, and tries to maintain at least one interviewer who speaks Spanish. Interviewers are required to attend basic and advanced forensic interview training, and complete a supervised/mentored training period. Investigators who meet the requirements of their respective county's child forensic interviewing training may conduct their own interviews, however the agency will be charged for equipment and room use.

**Observers:** Interviews shall be monitored by an investigator from DCS, OCWI, and/or law enforcement. No one should accompany the child in the interview room, unless, due to special circumstances, the investigative team agrees to allow a parent, guardian or other support person.

Under no circumstances will defense attorneys, suspects, or other alleged victims be allowed to observe the interview. Every person who views the interview is a potential witness and could be subpoenaed to trial by the prosecution and/or defense. Those allowed in the observation room, with the consent of the team, include:

| | |
|---|---|
| Guardian Ad Litem | Forensic Examiners |
| Interpreters | Supervisors/consultants/peer reviewers |

All observers must sign a confidentiality statement.

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse,   page 69

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

# APPENDIX L
## CRIMINAL CONDUCT ALLEGATIONS
## DEFINITIONS OF ABUSE

(This material is intended simply to provide guidelines and is not to be considered legal advice. Emphasis has been added in some sections.)

- The definitions of Criminal Conduct in A.R.S. 8-801(2) define the term only for the purposes of the duties of the Department of Child Safety and do not limit the meaning of "crime", "criminal act", "abuse", or "neglect" in any other context. Furthermore, the definitions of "Criminal Conduct" in A.R.S. 8-801(2) do not limit the legal duty imposed by A.R.S. 13-3620 to report abuse and neglect appropriately, nor the responsibility of any partner agency to cross-report any act that endangers a child to other partner agencies. For further elaboration on what information should be shared between partner agencies, please see the Joint Investigation Protocol.

**AN ALLEGATION OF CRIMINAL CONDUCT PURSUANT TO A.R.S. §8-801{2)** means an allegation of conduct by a parent, guardian or custodian of a child that, if true, would constitute any of the following:

* **SEXUAL CONDUCT WITH A MINOR**
* **SEXUAL ABUSE**
* **MOLESTATION OF A CHILD**
* **CHILD PROSTITUTION**
* **COMMERCIAL SEXUAL EXPLOITATION OF A MINOR**
* **SEXUAL EXPLOITATION OF A MINOR**
* **CHILD ABUSE (PHYSICAL ABUSE AND SEVERE NEGLECT)**
* **DEATH OF A CHILD**
* **CERTAIN DOMESTIC VIOLENCE OFFENSES THAT RISE TO THE LEVEL OF A FELONY (PURSUANT TO A.R.S. §13-3601).**

**"ABUSE" per A.R.S. §8-201** means **the infliction of or allowing of physical injury, impairment of bodily function or disfigurement or the in infliction of or allowing another person to cause serious emotional damage** as evidence by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist pursuant to section §8-821 **and is caused by the acts or omissions of an individual having care, custody and control of a child. Abuse shall include inflicting or allowing sexual abuse** pursuant to section §13-1404, sexual conduct with a minor pursuant to section §13-1405, sexual assault pursuant to section §13-1406, molestation of a child pursuant to section §13-1410 commercial sexual exploitation of a minor pursuant to section §13-3552, sexual exploitation of a minor pursuant to section §13-3553 or child prostitution pursuant to section §13-3212.

**"PHYSICAL INJURY" per A.R.S. §13-3623** means the impairment of physical condition and includes any:

a. skin bruising
b. pressure sores
c. bleeding
d. failure to thrive
e. malnutrition
f. dehydration
g. burns
h. fracture of any bone
i. subdural hematoma
j. soft tissue swelling
k. injury to any internal organ
l. physical condition which imperils health or welfare

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse, page 117

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

**"SERIOUS PHYSICAL INJURY"** means physical injury which creates:

1) a reasonable risk of death or
2) that causes serious or permanent disfigurement or
3) serious impairment of health or
4) loss or protracted impairment of the function of any bodily limb or organ.

**NEGLECT" OR "NEGLECTED" MEANS:**
(a) The inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare, except if the inability of a parent, guardian or custodian to provide services to meet the needs of a child with a disability or chronic illness is solely the result of the unavailability of reasonable services.

**SEXUAL ABUSE (A.R.S. §13-1404)** A person commits sexual abuse by intentionally or knowingly engaging in sexual CONTACT with any person fifteen or more years of age without the consent of that person or with any person who is under fifteen years of age if that sexual CONTACT involves only the female breast.

**SEXUAL CONTACT WITH A MINOR (A.R.S. §13-1405)** A person commits sexual CONDUCT with a minor by intentionally or knowingly engaging in **sexual intercourse or oral sexual CONTACT with any person who is under eighteen** years of age. (This statute has been interpreted by the courts to include attempts to engage in this behavior, even if the attempt it only verbal.)

**SEXUAL ASSAULT (A.R.S. §13-1406)** A person commits sexual assault by intentionally or knowingly engaging in **sexual intercourse oral sexual CONTACT with any person without consent** of such person.

**CHILD PROSTITUTION (A.R.S. §13-3212)** A person commits child prostitution by knowingly:

1. Causing any minor to engage in prostitution;
2. Using a minor for purposes of prostitution;
3. Permitting a minor under such person's custody or control to engage in prostitution;
4. Receiving any benefit for or on account of procuring or placing a minor in any place or in the charge or custody of any person for the purposes of prostitution;
5. Receiving any benefit pursuant to an agreement to participate in the proceeds of prostitution of a minor;
6. Financing, managing, supervising, controlling or owning, either alone or in association with others, prostitution activity involving a minor;
7. Transporting or financing the transportation of any minor through or across this state with the intent that such minor engage in prostitution.

**COMMERCIAL SEXUAL EXPLOITATION OF A MINOR (A.R.S. §13-3552)** A person commits commercial sexual exploitation of a minor by knowingly;

1. Using, employing, persuading, enticing, inducing, or coercing a minor to engage in or assist others to engage in exploitive exhibition or other sexual CONDUCT for the purpose of producing any depiction or live act depicting such conduct;
2. Using, employing, persuading, enticing, or coercing a minor to expose the genitals or anus or areola or nipple of the female breast for financial or commercial gain;\

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse, page 118

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

3. Permitting a minor under such person's custody or control to engage in or assist others to engage in exploitive exhibition or other sexual CONDUCT for the purpose of producing any visual depiction or live act depicting such conduct;
4. Transporting or financing the transportation of any minor through or across this state with the intent that such minor engage in prostitution, exploitive exhibition or other sexual CONDUCT for the purpose of producing a visual depiction or live act depicting such conduct.

**SEXUAL EXPLOITATION OF A MINOR (A.R.S. §13-3553)** A person commits sexual exploitation of a minor by knowingly:
1. Recording, filming, photographing, developing, or duplicating any visual depiction in which a minor is engaged in exploitive exhibition or other sexual CONDUCT;
2. Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing, or exchanging any visual depiction in which a minor is engaged in exploitative exhibition or other sexual CONDUCT.

**ADDITIONAL DEFINITIONS:**
1. "Sexual contact" means any direct or indirect touching, fondling, or manipulation of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such conduct
2. "Without consent" includes any of the following:
   a. The victim is coerced by the immediate use or threatened use of force against a person or property.
   b. The victim is incapable of consent by reason or mental disorder, mental defect, drugs, alcohol, sleep, or any other similar impairment of cognition and such condition is known or should have reasonably been known to the defendant;
   c. The victim is intentionally deceived as to the nature of the act'
   d. The victim is intentionally deceived to erroneously believe that the person is the victim's spouse.
3. "Spouse" means any person who is legally married and cohabiting
4. "Sexual intercourse" means penetration into the penis, vulva, or anus by any part of the body or by any object or masturbatory contact with the penis or vulva.
5. "Oral sexual contact" means oral contact with the penis, vulva or anus
6. "Exploitive exhibition" means the actual or simulated exhibition of the genitals or pubic or rectal areas or any person for the purpose of sexual stimulation of the viewer.
7. "Producing" means financing, directing, manufacturing, issuing, publishing, or advertising for pecuniary gain.
8. "Sexual conduct means actual or simulated
   a. Sexual intercourse including genital-genital, oral-genital, anal-genital, oral-anal, whether between persons of the same or opposite sex;
   b. Penetration of the vagina or rectum by an object except one does as a part of a recognized medical procedure
   c. Sexual bestiality;
   d. Masturbation for the purpose of the sexual stimulation of the viewer;
   e. Sadomasochistic abuse for the purpose of the sexual stimulation of the viewer
   f. Defecation or urination for the purpose of sexual stimulation of the viewer.
9. "Simulated" means any depicting of the genitals or rectal areas that give the appearance of sexual contact or incipient sexual conduct.

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse,    page 119

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ

10. "Visual depiction" included each visual image that is contained in an undeveloped film, video recording or photograph or data stored in any form and that is capable of conversion into a visual image.
11. "Prostitution" means engaging in or agreeing or offering to engage in sexual conduct with any person under a fee arrangement with that person or any other person.
12. "Sexual conduct" means sexual contact, sexual intercourse, or oral sexual contact, or sadomasochistic abuse.
13. "Sadomasochistic abuse" means flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed.

**EMOTIONAL ABUSE**

A.R.S. §8-821 permits a DCS Specialist or peace officer to take temporary custody of a child who is suffering serious emotional damage which can **ONLY BE DIAGNOSED by a medical doctor or psychologist**. The child shall be immediately examined and after the examination the child shall be released to the custody of the parent, guardian, or custodian unless the examination reveals abuse.

The legal definition of emotional abuse is contained in A.R.S. §8-201. "… serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is **diagnosed by a medical doctor or psychologist** pursuant to section §8-821 **and which is CAUSED by the acts or omissions or an individual having care, custody and control of a child**."

* We extend our thanks to the Maricopa County Interagency Council for providing the 2004 template and for this appendix content.

October 2014 – Pima County Protocols for the Multidisciplinary Investigation of Child Abuse, page 120

Wright, et al. v. Southern Arizona Children's Advocacy Center, et al.
United States District Court (Arizona) case no. 4:21-cv-00257-JGZ