Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br><br>Southern Arizona Children's Advocacy Center,<br><br>　　　　Defendants. | case no.: 4:21-cv-00257-jgz<br><br>**PLAINTIFF BRIAN WRIGHT'S STATEMENT OF FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT DALE WOOLRIDGE**<br><br>Hon. Jennifer Zipps<br>United States District Judge |

## STATEMENT OF FACTS

1.　Defendant Dale Woolridge, M.D., is the Medical Director of the Southern Arizona Child Advocacy Center [hereafter, "SACAC"] and has held that position since 2007;

2.　In addition to Defendant Woolridge, two other doctors are contracted at the SACAC in the capacity of "Associate Medical Director"; Deposition of Dale Woolridge, page 7, lines 9-11 [hereafter, "Woolridge, page:line"] (Doc. 282-1);

3. All three doctors are employed to conduct "medical forensic examinations" aka "forensic medical examinations" [hereafter "FME"] on children brought to the SACAC;

4. Since 2007, Defendant Woolridge has conducted on average three (3) to four (4) FME's per month, Woolridge depo, 7:2-6; for a total of between 450 and 550 such examinations;

5. The other two Associate Medical Directors also conduct FME's;

6. The SACA doctors perform FME's only at the direction of law enforcement or agents of the Arizona Department of Child Safety [hereafter, "AZDCS"].  Deposition of Marie Fordney, Executive Director, page 28, lines 16 through 21; page 30 line 22 through page 31, line 4 [hereafter, "Fordney, page:line"] (Doc. 282-2); Woolridge, 30:11;

7. The SACAC will not conduct a FME at the request of a parent or other caregiver. Fordney 31:10-13;

8. The SACAC policy on conduct of FME's is memorialized in two documents: (1) The Pima County Protocols for Multidisciplinary Investigation of Child Abuse [hereafter, "the Pima County Protocols" or "PCP's"], Defendant SACAC MSJ, Doc. 274-1, Pima County Protocols; and (2) the Standards of the National Children's Alliance [hereafter, the "NCA Standards"]. Fordney, 8:15-22; 9:4-9; Plaintiffs' Exhibit 3, NCA Standards, Doc. 282-5; Woolridge, 12:7-23;

9. SACAC's function within the framework of the PCP's is "colocation of relevant agencies in the investigation and prosecution of cases of child maltreatment." Of

these "partner agencies" are included the Pima County Attorney's Office and law enforcement agencies. As stated in the NCA Standards, "A CAC is not a facility but serves as an interagency coordinated response center. Defendant SACAC MSJ, Doc. 274-1, PCP. Doc. 282-4, p.5; Exhibit 3, Doc. 282-5, p. 12;

10.   These partner agencies, together, are named the "Multi-Disciplinary Team." The role of the "Multi-Disciplinary Team" (MDT) "is to ensure compliance with the Protocols, which includes "monitoring investigations of criminal conduct (as defined in A.R.S §8-801) to ensure that joint investigation (sic) are done where applicable…." "The core MDT is a group of professionals from specific, distinct disciplines that collaborates from the point of report throughout a child and family's involvement with the CAC.";

11.   Appendix L to the PCP's identifies the Arizona statutory definitions of, among other provisions relevant to crimes against children, "Abuse," "Physical Injury" and "Serious Physical Injury." Defendant SACAC MSJ, Doc. 274-1, Doc. 282-4, pp. 117-120;

12.   SACAC publicly states that "The Children's Advocacy Center works closely with law enforcement**,** the Department of Child Safety, prosecuting attorneys, and community agencies to ensure that these child victims are treated with respect and dignity and receives the services they need, while assuring offenders are held accountable for their crimes." http://www.cacsoaz.org/what-is-cac/;

13. As to forensic interviews [hereafter, "FI"], which proceed the FME, "[u]nder no circumstances will defense attorneys, suspects or other alleged victims be allowed to observe the interview. Every person who observes the interview is a potential witness and could be subpoenaed to trial by the prosecution and/or defense." Interviews will be monitored by "an investigator from DCS, OCWI [AZDCS's internal "Office of Child Welfare Investigations"] and/or law enforcement. Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 69;

14. As publicized by SACAC, "The purposes of a forensic interview are: (1) To obtain information from the child that may be helpful in a criminal investigation…." The forensic interviews are "recorded and provided to law enforcement." http://www.cacsoaz.org/forensic-interviews/;

15. As defined by Morgan Rau, Director of Forensic Interviewing at SACAC, an FI is "interviewing a child for court." Deposition of Morgan Rau, Director of Forensic Interviewing, page 10, lines 18 through 22 [hereafter, "Rau, page:line"], Doc. 282-3;

16. As to FME's, "[m]edical exams are needed in most physical abuse incidents wherein legal proceedings are anticipated. It will be necessary to collect physical evidence related to the child's condition or injuries." Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 23;

17. The individual conducting the examination is the "forensic examiner." Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 24;

18. As to the medical examination, "[a]ll children who are suspected victims of child … abuse are entitled to a medical evaluation by a provider with specialized training. The collection and documentation of possible forensically significant findings are vital." Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 30;

19. The SACAC publicizes that the purpose of the FME, is, among others, "To diagnose, document evidence and address any medical conditions resulting from abuse. http://www.cacsoaz.org/medical-evaluations/. Following the FME, "[a] complete medical report and psychosocial report are distributed to DCS and Law Enforcement." Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 24;

20. When a child is brought to the SACAC by law enforcement and a FME is conducted, no parental notification of the intent to conduct the examination is made. Fordney, 11:14-21; 33:11-21;

21. A child upon which an FME is conducted is not asked if he or she consents to the examination. Woolridge 84:17-22;

22. As publicized by the SACAC: "The use of the Child Advocacy Center approach leads to more timely investigations, faster filing of charges, and a dramatic increase in felony prosecutions of child sexual abuse, with a 196% greater rate of convictions." http://www.cacsoaz.org/who-we-are/;

23. Brian Wright is the natural father and legal guardian of L.A.W., a minor male child;

24. L.A.W's date of birth is December 25, 2013;

25. On the morning of December 16, 2020, the child was dropped at his school, Copper View Elementary School [hereafter, "CVES"] by his father;

26. At 10:13 a.m., CVES staff placed a call to the Pima County 911 number, following which Officer Melin Carrizosa of the Town of Sahuarita, Arizona Police Department [hereafter, "SPD"] was dispatched to the school. Plaintiffs' Exhibit 6, Sahuarita Police Department Detail Incident Report for S201220504 [Town Defendant-produced] dated 12/23/20, Wright 003650-3695, Doc. 282-6, [hereafter, "SPD DIR"].

27. Officer Carrizosa responded to the call and arrived at CVES at 10:18 a.m.;

28. At 12:00 p.m. the child arrived at the Southern Arizona Child Advocacy Center [hereafter, "SACAC"] accompanied by Officer Carrizosa. Also arriving at SACAC at that time was SPD Detective Tom Johnston. Exhibit 6, SPD DIR, at 003681;

29. On the Intake Form, filled out by Morgan Rau of the SACAC, both Brian and Irlanda Wright were identified, including their home address and dates of birth. Plaintiff's Exhibit 7, produced by SACAC, SACAC 0001-00029, at 0002, Doc. 282-7;

30. Between 12:14 p.m., and 12:39 p.m., the child was subjected to a forensic interview by Morgan Rau. SPD Detective Johnston and Officer Carrizosa observed the FI. Defendant Woolridge was not present for the FI. Plaintiff's Exhibit 7, SACAC 0002, Doc. 282-7;

31. At 1:00 p.m., Defendant Woolridge conducted an FME on the child. The report of his FME consists of nine (9) handwritten entries on SACAC forms. He has no

recollection of the examination. Plaintiff's Exhibit 7, SACAC 0006-15, Doc. 282-7; Woolridge, 83:21-25;

32. Defendant asserts that the FME was conducted in conformance with Arizona law and "public policy".... Woolridge, 16:2-18;

33. At the time the FME commenced, there was no probable cause that Brian Wright had violated Arizona law. Hence, L.A.W. was not lawfully in the custody of Detective Johnston, who had no right to direct that a forensic medical examination be conducted. Plaintiff's Exhibit 82, Town Defendants' Response to Request for Admission No. 9, 2:11-25, Doc. 282-11; Plaintiff's Exhibit 75, A.R.S. §8-821(D), (K)(2), Doc. 282-10;

34. The first page of the FME report is titled "Authorization to Perform Forensic Medical Examination. The specific language states:

> I confirm I am a legal guardian of [child's name inserted by Woolridge] and I authorize Dr. Woolridge (name of examiner) to perform a medical forensic examination, provide treatment, collect evidence, and photograph injuries. I also give permission to release copies of the completed report to law enforcement for purposes of continuing an investigation.

Plaintiff's Exhibit 7, SACAC 000006, Doc.;

35. On the top of the second page, SACAC 00007, under the box named "Medical History provide by:" Dr. Woolridge entered, "No Guardian present";

36. Dr. Woolridge marked "unknown" as to all the conditions specified on the form, including those of "Physical Abuse History" and "Sexual Abuse History";

37. Under the heading "History Disclosed by Patient," SACAC 0008, Defendant entered, "6 yo male presents w/le [with law enforcement] for medical evaluation – concern regarding bruise noted by teacher at school…patient interviewed at CAC – patient disclosed mother hit w/ [with] belt";

38. Defendant documented no other history of the alleged abuse than he noted in this section of the report. Woolridge, 78:15- 79:11;

39. Before Defendant commenced the FME, the child had no complaints of pain, there was no report of any an urgent need for medical care, and no report of any sexual abuse. Woolridge, 89:16-20; 91:10-14;

40. Present in the room for the examination were Maria Garrick, of the SACAC, and Detective Johnston. Johnston took photographs of the child's body as pointed out by Defendant;  Woolridge, 86:16-87:11; Plaintiff's Exhibit 12, Doc. 282-8;

41. Defendant Woolridge understands that the photographs are intended to assist the police in the investigation of child abuse. Woolridge, 62:14-20;

42. Conducting an FME is a "coordinated effort" between the examiner and law enforcement. Woolridge, 91:18-92:5;

42. During the FME, according to the report, Defendant Woolridge commenced a genital/anal examination of the child's body. This required him to remove the undergarment – in this case, the pullups the child wore – position the child, and then "retract" the buttocks to access the anus. The examination of the anus is to check for contusions or abrasions. Woolridge, 137:5-139:3;

43. However, the report states "patient resistant to exam" of the anus. Defendant does not recall at what point the child became resistant. Exhibit 7, SACAC 0009, Doc. 282-7; Woolridge, 139:12-14;

44. Defendant marked on a body diagram, SACAC 00010, the location and general appearance of the lesions he found on examination. He did not attempt to draw these to scale. Woolridge 101-3-6;

45. Defendant is knowledgeable about the legal definitions regarding physical abuse found in the PCP, Appendix L, and he looks for all the conditions bullet pointed in those definitions during an examination. Woolridge 127:20-128:22; Defendant SACAC MSJ, Doc. 274-1, PCP pp.117-118, Doc. 282-4;

46. Appendix L gives the definition of "Serious Physical Injury" from A.R.S. §13-3623. These specific conditions track with those defined in A.R.S. §8-201(34) with the exception that the latter statute includes an injury that "causes significant physical pain" -- subsection 34(c). Plaintiff's Exhibit 61, ARS §8-201(34)(c), Doc. 282-9;

47. Defendant did not note the presence of any of the specific conditions identified under the definition of "Serious Physical Injury" in Appendix L, PCP, p. 118. Woolridge, 128:23-131:3;

48. The "horizontal lesions" Defendant noted on the body diagram were "very superficial hyperemic lesions" which "tend to clear very fast".… Woolridge, 132:20-133:18;

49. Defendant was unable to assess when the horizontal bruise on the left hamstring occurred, but he noted no signs of healing; Woolridge, 135:19-136:24;

50. Under "Exam Findings/Diagnosis" Woolridge entered, "Multiple contusions – location & nature of lesions concerning for inflicted injury. Injuries c/w [consistent with] pt [patient] disclosure of belt as cause." Exhibit 7, SACAC 000012, Doc. 282-7;

51. Defendant defines the term "inflicted" as meaning either intentional or accidental from an "outside source." Woolridge, 104:22-105:16; 106:20-21; 107:8-9;

52. The injuries he identified, according to Defendant, are "consistent with accidental play, consistent with intentional injury…." This is the "pure definition" of a differential diagnosis. Woolridge, 107:18; 122:1-12;

51. Defendant's position is that the manner he in which he described the lesions in the report would not mislead "trained professionals" to conclude that he found that the lesions were deliberately inflicted, ruling out accidental cause as a differential diagnosis. Thus, the report isn't written as "loose information that could be extrapolated inappropriately." Woolridge, 123:15-124:22;

52. On January 5, 2021, Woolridge's FME report was reviewed by Associate Medical Director Dr. Rachel Crampton as part of the quality assurance process at SACAC. Crampton did not have the photographs to review. Dr. Crampton noted that she "Cannot comment on nature of lesions without images." Exhibit 7, SACAC 0003, Doc. 282-7;

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on December 20, 2023. Notice of this filing will be sent to all parties and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system.

Respectfully submitted,

/s/ Michael Garth Moore