Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br><br>Southern Arizona Children's Advocacy Center,<br><br>    Defendants. | Case No.: 4:21-cv-00257-JGZ<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BRIAN WRIGHT'S MOTION FOR PARTIAL SUMMARY JUDGEMENT AGAINST SOUTHERN ARIZONA CHILD ADVOCACY CENTER**<br><br>**ORAL ARGUMENT REQUESTED**<br><br><br>Hon. Jennifer G. Zipps<br>United States District Judge |

Now comes Plaintiff Brian Wright, on his own behalf and that of his minor son, L.A.W., and for the points and authorities supporting his Motion for Partial Summary Judgment against Defendant Southern Arizona Child Advocacy Center [hereafter. "SACAC"] on the Fifth and Sixth Claims of the Third Amended Complaint, Doc. 283, states as follows.[1]

---

[1] Before this motions practice commenced, the undersigned proposed to all defense counsel the process this Court strongly encouraged in Doc. 99, ¶13 for a streamlined

1

## I. THE FORENSIC MEDICAL EXAMINATION CONDUCTED BY DEFENDANT DALE WOOLRIDGE VIOLATED PLAINTIFF'S RIGHTS UNDER THE FIRST, FOURTEENTH AND FOURTH AMENDMENTS

As addressed in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiff Brian Wright's Motion for Partial Summary Judgment Against Defendant Dale Woolridge, Doc. 284 [hereafter, "MP&A Woolridge"], and the Statement of Facts applicable thereto, Doc. 285 [hereafter, "SOF Woolridge"], Dr. Woolridge's intrusive forensic medical examination [hereafter, "FME"] on the body of the child L.A.W. on the afternoon of December 16, 2020, in the absence of court order or parental notification and consent, violated the child's right to bodily integrity/privacy under the Fourth and Fourteenth Amendments [Sixth Claim], and both the child's and father's right to familial association under the First and Fourteenth Amendments [Fifth Claim]. It must not be overlooked that a "genital/anal" examination is standard operating procedure at SACAC, even, as here, where there is no allegation nor evidence of sexual abuse of the child subjected to the examination. SOF Woolridge, ¶¶37-39, 42-43.

As also addressed therein, at the time he conducted the FME, the forensic examiner was acting as the Medical Director of SACAC, and also conducted the examination in collaboration with law enforcement in investigating allegations of criminal child abuse. SOF Woolridge ¶¶2, 42. The Defendant's willful participation and collaboration with Detective Johnston of the Sahuarita Police Department requires that his conduct be

---

briefing of cross-motions for summary judgment. No one agreed, so Plaintiffs will follow the briefing process set out in Local Rule 56.1.

deemed to have been taken *under color of custom, or usage, of* [the State of Arizona]" that deprived the father and son of rights secured by the Constitution. 42 U.S.C. §1983. Judgment is therefore warranted against Defendant Woolridge.

The only question remaining for adjudication, other than determining damages, is the liability of SACAC.

## II. THE SACAC'S POLICY, CUSTOM OR USAGE WAS THE MOVING FORCE BEHIND DEFENDANT WOOLRIDGE'S VIOLATION OF PLAINTIFF BRIAN WRIGHT AND HIS SON, L.A.W.'S, CONSTITUTIONAL RIGHTS[2]

The liability of the SACAC is determined under the *Monell* doctrine. Under that doctrine, [the plaintiff] may recover from the city if his injury was inflicted pursuant to … custom, or usage. *Chew v. Gates*, 27 F. 3d 1432, 1444 (9th Cir. 1994); quoting *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). The policy "need only cause [the] constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992). This Court laid out the elements of proof in granting Plaintiffs leave to file their Third Amended Complaint. *Wright v. Southern Ariz. Child Advocacy Center,* 2022 U.S. Dist. LEXIS 140592 (D. Ariz. August 11, 2023) (Zipps, J.).

In the instant case, the facts reveal that Woolridge acted pursuant to SACAC's policy [policy in the broadest sense including long-standing practice, custom and usage] and that that policy was the moving force behind the violations. Woolridge and his two

---

[2] SACAC seeks summary judgment, Doc. 273, that argues that the Plaintiffs are limited to the allegations of the Third Amended Complaint in contesting liability. This is incorrect in law and fact, as will be addressed in a responsive pleading.

(2) Associate Medical Directors have conducted hundreds of the same examinations, under the same circumstances, all directed by law enforcement to further criminal investigations, and all without parental notification. SOF Woolridge ¶¶4-6, 16, 18, 20. This evidence satisfies the necessary elements of *Monell* liability. *City of St. Louis v. Prapotnik,* 485 U.S. 112, 121 (1988); *Los Angeles County v. Humphries,* 562 U.S. 29, 36 (2010); *Christie v. Iopa,* 176 F.3d 1231, 1235 (9th Cir. 1999); *Gillette v. Delmore,* 979 F. 2d 1342, 1346 (9th Cir. 1992). When policy is embodied in custom or usage, it is actionable *even if it contradicts* written charter, regulation or other official pronouncements. *Prapotnick,* 485 U.S. 130-31.

Instructive here is the case of *Rabinowitz v. City of Los Angeles*, 287 F. Supp. 3d 933 (C.D. Cal., 2018), wherein a police officer's detention and interrogation of a minor at school as to allegations of child abuse was found to violate the child and parents' rights under the Fourth and Fourteenth Amendment, but the officer was immunized by qualified immunity. The court nonetheless held that the City was still liable under *Monell*. The Court discussed that the City's policy regarding notification of parents before detaining and questioning a child was ambiguous at the time of the incident, but went on to hold that the officer's acknowledgement that he had conducted upwards of 1,000 interviews while notifying parents in advance on only two (2) or three (3) occasions established, as a matter of law, the existence of a long-standing practice or custom in violation of child's Fourth Amendment right to privacy. *Id.,* at 964-65. The Court granted summary judgment for the plaintiffs against the City.

In the instant case, Woolridge alone has subjected 450-550 children to these intrusive FME's since 2007, and this does not count the numbers done by his associate examiners. SACAC Executive Director Forney concedes that parents are not given notice of such examinations being contemplated. *Wallis v. Spencer*, 202 F.3d 1126 (1999), the seminal case holding that unconsented medical examinations violate both the Fourth and Fourteenth Amendments, went on to require the municipality to defend the conduct of its police officers, noting that the evidence of an agreement between the city and the private institution where the examinations were conducted, as well as the defendant's testimony that she ordered the examinations as part of her function of investigating abuse, gave rise to "A reasonable inference … that it was 'standard operating procedure' to obtain those examinations without seeking judicial authorization or notifying the parents…." *Id.,* at 1143. Here, there is no mere inference of the customary practice – the Defendant admits the customary practice that *Wallis* ruled to be unconstitutional.

Citing the controlling decision of *Mann v. County of San Diego,* 907 F.3d 1154, 1164 (9th Cir. 2018) this Court previously noted that proof of deliberate indifference is not required "when a municipality's deliberate adoption of its policy or practice shows it acted culpably." *Wright, id.,* 2023 U.S. Dist. LEXIS at *12. *Mann* was addressed extensively in Plaintiff's Motion as to Woolridge, and that will not be repeated here. But *Mann* rejected the County Defendant's argument that to win, the Manns had to plead and prove the policy "shocks the conscience." *Mann,* 907 F.3d at 1164. In that "deliberate indifference" is a subset of the "shocks the conscience" standard [*Porter v. Osborn*, 546

F.3d 1131, 1137 (9th Cir. 2008)], Brian Wright need not plead nor prove that the SACAC's long-standing policy of conducting intrusive FME's without parental consent carries any *scienter* requirement. This being a claim of "direct violation" by SACAC, as in *Mann,* proof of the policy as the moving force behind the violation is all that is required. *Id., at* 1665, citing *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1185-86 (9th Cir. 2002), overruled on other grounds by *Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016).

Indeed, Defendant Woolridge alleges that the FME was conducted in conformity with "Arizona law" and "public policy," SOF Woolridge ¶32, this being echoed by SACAC's Fourth Affirmative Defense, Doc. 221, p. 59. But the child was examined in violation of Arizona law, because he was not lawfully in Detective Johnston's custody. Id., ¶33. In order to secure legal temporary custody of child, in the absence of a court order, the child must be in imminent danger of abuse, and the officer must prepare and serve on the parent a Temporary Custody Notice. A.R.S. §8-823(A), (B). Not only was there no exigency, Detective Johnston never prepared, nor served, the Temporary Custody Notice.

Further, the Supremacy Clause, Article VI, Section 2, of the Constitution of the United States mandates that federal law trumps any "public policy" of a state and in the instant case, the examination of L.A.W. was prohibited by the Constitution as construed by the Ninth Circuit for twenty (20) years before the date of this incident. Hence, neither Arizona nor federal policy countenanced the unconsented examination. Even if the

examination had been countenances by Arizona law, "state law cannot provide immunity from suit for federal civil rights violations." *Wallis, supra,* at 1144.

While *sufficient* on these facts that the SACAC's liability springs from the individual Defendant's violation of the constitution, such a finding is not *necessary*. Direct *Monell* liability is independent of the liability of its agents. *Fairly v. Luman,* 281 F.3d 913, 917 (9th Cir. 2002); *Horton v. Horton v. City of Santa Maria,* 915 F.3d 592, 604 (9th Cir. 2019). Thus, where individual liability fails because the constitutional violation is caused by collective action of state actors, the requisite elements not attaching to the actions of any individual sufficient to subject that person to liability, or the individual is exonerated for any other failure of proof, including qualified immunity, *Monell* liability is not thereby extinguished if the entity's policy, practice, custom or usage was the moving force in the constitutional violation. *Fraley, supra,* at 917, n.4. Here, of course, the violation could not have occurred but for the collaboration of Det. Johnston and Defendant Woolridge, under the long-standing custom and usage of SACAC. Whether the facts fail of proof as to Woolridge's individual liability, which they do not, SACAC is not thereby exonerated.

### III.  CONCLUSION

For the reasons set forth above, it is respectfully submitted that summary judgment should be entered against Defendant SACAC on both the Fifth and Sixth Claims, and that the Court order that the question of damages is for the finder of fact.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on December 21, 2023. Notice of this filing will be sent to all parties and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system.

Respectfully submitted,

/s/ Michael Garth Moore