1   Tom Slutes, Esq.
    SLUTES, SAKRISON & ROGERS, P.C.
2   4801 E. Broadway, Suite 301
    Tucson, Arizona 85711
3   Telephone: (520) 624-6691
    Facsimile: (520) 791-9632
4   Tslutes@sluteslaw.com
    State Bar No. 001212
5   *Attorneys for Defendant Dale Woolridge, MD*

6

7                   IN THE UNITED STATES DISTRICT COURT

8                        FOR THE DISTRICT OF ARIZONA

9

10  Brian Wright, Irlanda Wright, LAW, a       No. 4:21-cv-00257-JGZ
    minor, LW, a minor, MG-Z, a minor, and
11  MW, a minor
                                               **DEFENDANT DALE**
12               Plaintiffs,                   **WOOLRIDGE'S STATEMENT**
                                               **OF FACTS ISO MOTION FOR**
13  Vs.                                        **SUMMARY JUDGMENT**

14  Southern Arizona Children's Advocacy
    Center, an Arizona corporation, Marie
15  Fordney, Dale Woolridge, MD, Marie
    Garrick, Natalie Barragan Dojaque, Morgan
16  Rau, The Town Council of the Town of
    Sahuarita, Arizona, Thomas Johnston,
17  Melina Carrizosa and Christin Pelayo       (Assigned to Hon. Jennifer G. Zipps)

18               Defendants.

19

20                         STATEMENT OF FACTS

21        1.    Defendant Dale Woolridge, M.D., is the Medical Director of the Southern

22  Arizona Child Advocacy Center [hereafter, "SACAC"] and has held that position since

23  2007;

24        2.    In addition to Defendant Woolridge, two other doctors are contracted at the

25  SACAC in the capacity of "Associate Medical Director;" Deposition of Dale Woolridge,

26  page 7, lines 9-11 [hereafter, "Woolridge, page:line"] (Doc. 282-1);

                                       1

3.      All three doctors are employed to conduct "medical forensic examinations" aka "forensic medical examinations" [hereafter "FME"] on children brought to the SACAC;

4.      Since 2007, Defendant Woolridge has conducted on average three (3) to four (4) FME's per month, Woolridge depo, 7:2-6; for a total of between 450 and 550 such examinations;

5.      The other two Associate Medical Directors also conduct FME's;

6.      The SACA doctors perform FME's only at the direction of law enforcement or agents of the Arizona Department of Child Safety [hereafter, "AZDCS"].  Deposition of Marie Fordney, Executive Director, page 28, lines 16 through 21; page 30 line 22 through page 31, line 4 [hereafter, "Fordney, page:line"] (Doc. 282-2);  Woolridge, 30:11;

7.      The SACAC will not conduct a FME at the request of a parent or other caregiver. Fordney 31:10-13;

8.      The SACAC policy on conduct of FME's is memorialized in two documents: (1) The Pima County Protocols for Multidisciplinary Investigation of Child Abuse [hereafter, "the Pima County Protocols" or "PCP's"], Defendant SACAC MSJ, Doc. 274-1, Pima County Protocols which refers to A.R.S §13-3620 and (2) the Standards of the National Children's Alliance [hereafter, the "NCA Standards"]. Fordney, 8:15-22; 9:4-9;  Plaintiffs' Exhibit 3, NCA Standards, Doc. 282-5; Woolridge, 12:7-23;

9.      SACAC's function within the framework of the PCP's is "colocation of relevant agencies in the investigation and prosecution of cases of child maltreatment." Of these "partner agencies" are included the Pima County Attorney's Office and law enforcement agencies. As stated in the NCA Standards, "A CAC is not a facility but serves as an interagency coordinated response center.  Defendant SACAC MSJ, Doc. 274-1, PCP. Doc. 282-4, p.5; Exhibit 3, Doc. 282-5, p. 12;

1    10.    These partner agencies, together, are named the "Multi-Disciplinary

2    Team." The role of the "Multi-Disciplinary Team" (MDT) "is to ensure compliance with

3    the Protocols, which includes "monitoring investigations of criminal conduct (as defined in

4    A.R.S §8-801) to ensure that joint investigation (sic) are done where applicable…." "The

5    core MDT is a group of professionals from specific, distinct disciplines that

6    collaborates from the point of report throughout a child and family's involvement with

7    the CAC.;"

8    11.    Appendix L to the PCP's identifies the Arizona statutory definitions of,

9    among other provisions relevant to crimes against children, "Abuse," "Physical Injury"

10    and "Serious Physical Injury." Defendant SACAC MSJ, Doc. 274-1, Doc. 282-4, pp.

11    117-120;

12    12.    SACAC publicly states that "The Children's Advocacy Center works

13    closely with law enforcement, the Department of Child Safety, prosecuting attorneys, and

14    community agencies to ensure that these child victims are treated with respect and dignity

15    and receives the services they need, while assuring offenders are held accountable for

16    their crimes." http://www.cacsoaz.org/what-is-cac/;

17    13.    As to forensic interviews [hereafter, "FI"], which proceed the FME, "[u]nder

18    no circumstances will defense attorneys, suspects or other alleged victims be allowed to

19    observe the interview. Every person who observes the interview is a potential witness and

20    could be subpoenaed to trial by the prosecution and/or defense." Interviews will be

21    monitored by "an investigator from DCS, OCWI [AZDCS's internal "Office of Child

22    Welfare Investigations"] and/or law enforcement. Defendant SACAC MSJ, Doc. 274-1,

23    PCP, Doc. 282-4, p. 69;

24    14.    As publicized by SACAC, "The purposes of a forensic interview are: (1) To

25    obtain information from the child that may be helpful in a criminal investigation…." The

26    forensic    interviews    are    "recorded    and    provided    to    law    enforcement."

1    http://www.cacsoaz.org/forensic-interviews/;

2        15.    As to FME's, "[m]edical exams are needed in most physical abuse incidents

3    wherein legal proceedings are anticipated. It will be necessary to collect physical evidence

4    related to the child's condition or injuries." Defendant SACAC MSJ, Doc. 274-1, PCP,

5    Doc. 282-4, p. 23;

6        16.    The individual conducting the examination is the "forensic examiner."

7    Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 24;

8        17.    As to the medical examination, "[a]ll children who are suspected victims of

9    child abuse are entitled to a medical evaluation by a provider with specialized training.

10    The collection and documentation of possible forensically significant findings are vital."

11    Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 30;

12        18.    The SACAC publicizes that the purpose of the FME, is, among others, "To

13    diagnose, document evidence and address any medical conditions resulting from abuse.

14    http://www.cacsoaz.org/medical-evaluations/.  Following the FME, "[a] complete medical

15    report and psychosocial report are distributed to DCS and Law Enforcement." Defendant

16    SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 24;

17        19.    When a child is brought to the SACAC by law enforcement and a FME is

18    conducted, no parental notification of the intent to conduct the examination is made.

19    Fordney, 11:14-21; 33:11-21;

20        20.    A child upon which an FME is conducted is not asked if he or she consents to

21    the examination but the examiner obtains implied consent. Woolridge 84:17-22;

22        21.    As publicized by the SACAC: "The use of the Child Advocacy Center

23    approach leads to more timely investigations, faster filing of charges, and a dramatic

24    increase in felony prosecutions of child sexual abuse, with a 196% greater rate of

25    convictions." http://www.cacsoaz.org/who-we-are/;

26

1     22.    On the morning of December 16, 2020, L.A.W. was dropped at his school,

2  Copper View Elementary School [hereafter, "CVES"] by his father;

3     23.   At 10:13 a.m., CVES staff placed a call to the Pima County 911 number,

4  following which Officer Melin Carrizosa of the Town of Sahuarita, Arizona Police

5  Department [hereafter, "SPD"] was dispatched to the school. Plaintiffs' Exhibit 6,

6  Sahuarita Police Department Detail Incident Report for S201220504 [Town Defendant-

7  produced] dated 12/23/20, Wright 003650-3695, Doc. 282-6, [hereafter, "SPD DIR"].

8     24.    Officer Carrizosa responded to the call and arrived at CVES at 10:18 a.m.;

9     25.    At 12:00 p.m. the child arrived at the Southern Arizona Child Advocacy

10  Center [hereafter, "SACAC"] accompanied by Officer Carrizosa. Also arriving at

11  SACAC at that time was SPD Detective Tom Johnston. Exhibit 6, SPD DIR, at 003681;

12     26.    On the Intake Form, filled out by Morgan Rau of the SACAC, both Brian and

13  Irlanda Wright were identified, including their home address and dates of birth.

14  Plaintiff's Exhibit 7, produced by SACAC, SACAC 0001-00029, at 0002, Doc. 282-7;

15     27.    Between 12:14 p.m., and 12:39 p.m., the child was subjected to a forensic

16  interview by Morgan Rau. SPD Detective Johnston and Officer Carrizosa observed the

17  FI. Defendant Woolridge was not present for the FI. Plaintiff's Exhibit 7, SACAC 0002,

18  Doc. 282-7;

19     28.    At 1:00 p.m., Defendant Woolridge conducted an FME on the child. The

20  report of his FME consists of nine (9) handwritten entries on SACAC forms. He has no

21  recollection of the examination. Plaintiff's Exhibit 7, SACAC 0006-15, Doc. 282-7;

22  Woolridge, 83:21-25;

23     29.    Defendant asserts that the FME was conducted in conformance with

24  Arizona law, "public policy" and the pertinent Pima County Protocols …. Woolridge,

25  16:2-18;

26     30.    The first page of the FME report is titled "Authorization to Perform

Forensic Medical Examination. The specific language states:

> I confirm I am a legal guardian of [child's name inserted by Woolridge] and I authorize Dr. Woolridge (name of examiner) to perform a medical forensic examination, provide treatment, collect evidence, and photograph injuries. I also give permission to release copies of the completed report to law enforcement for purposes of continuing an investigation.

Plaintiff's Exhibit 7, SACAC 000006, Doc.;

31.    Under the heading "History Disclosed by Patient," SACAC 0008, Defendant entered, "6 yo male presents w/le [with law enforcement] for medical evaluation – concern regarding bruise noted by teacher at school…patient interviewed at CAC – patient disclosed mother hit w/ [with] belt";

32.    Defendant documented no other history of the alleged abuse than he noted in this section of the report. Woolridge, 78:15- 79:11;

33.    Present in the room for the examination were Maria Garrick, of the SACAC, and Detective Johnston. Johnston took photographs of the child's body as pointed out by Defendant;   Woolridge, 86:16-87:11; Plaintiff's Exhibit 12, Doc. 282-8; (See A.R.S. §1`3-3620 I).

34.    Defendant Woolridge c o u l d   i n f e r that the photographs are intended to assist the police in the investigation of child abuse. Woolridge, 62:14-20;

35.    Conducting an FME is a "coordinated effort" between the examiner and law enforcement. Woolridge, 91:18-92:5;

36.    Defendant marked on a body diagram, SACAC 00010, the location and general appearance of the lesions he found on examination. He did not attempt to draw these to scale. Woolridge 101-3-6;

37.    The "horizontal lesions" Defendant noted on the body diagram were "very superficial hyperemic lesions" which "tend to clear very fast"…. Woolridge, 132:20-133:18;

38. Under "Exam Findings/Diagnosis" Woolridge entered, "Multiple  contusions –

location & nature of lesions concerning for inflicted injury. Injuries c/w [consistent with] pt [patient] disclosure of belt as cause." Exhibit 7, SACAC 000012, Doc. 282-7;

39.    Defendant defines the term "inflicted" as meaning either intentional or accidental from an :outside source" Woolridge, 104:22-105:16; 106:20-21; 107:8-9.

40.    The injuries he identified, according to Defendant are "consistent with accidental play, consistent with intentional injury . . ." This is the "pure definition" of a differential diagnosis. Woolridge, 107:18; 122:1-12;

RESPECTFULLY SUBMITTED this 17th day of January, 2024.

/s/ Tom Slutes
Tom Slutes
Attorneys for Defendant Woolridge

Copy of the foregoing e-mailed this
17th day of January, 2024 to:

Michael Garth Moore
6336 North Oracle Road, Suite 326
P. O. Box 119
Tucson, AZ 85704
mike@mgmoorelaw.com
        *Attorney for Plaintiffs*

Robert Grasso, Jr.
Jenna V. Mandraccia
Michael B. Smith
Grasso Law Firm, P.C.
2250 East Germann Road, Ste. 10
Chandler, Arizona 85286
rgrasso@grassolawfirm.com
jmandraccia@grassolawfirm.com
msmith@grassolawfirm.com
        *Attorneys for Southern Arizona Children's Advocacy Center*

Claudia Collings
Julie M. Rhodes
Assistant Attorney General
416 W. Congress, 2nd Floor
Tucson, AZ 85701
Julie.Rhodes@azag.gov
Claudia.Collings@azag.gov
        *Attorneys for Defendants Orozco, Francisco, Noriega,*
        *Encinas, Talamantes, & Sheldon*