Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>Southern Arizona Children's Advocacy Center,<br><br>        Defendants. | Case No.: 4:21-cv-00257-JGZ<br><br>**PLAINTIFFS' REPLY TO DEFENDANT SOUTHERN ARIZONA CHILD ADVOCACY CENTER'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 300]** |

      Now comes Plaintiff Brian Wright, on his behalf, and that of his minor son, L.A.W, and submits the Plaintiffs' Reply.

///

///

///

1

## I. PLAINTIFFS' CLAIMS AGAINST SACAC ARE THE SEVENTH AND EIGHTH CLAIMS, THE PARTIES KNOW THIS AND HAVE MADE THEIR ARGUMENTS UNDER THOSE CLAIMS

Defendant correctly pointed out that Plaintiffs' Motion for Partial Summary Judgment inadvertently named the Fifth and Sixth Claims, rather than the Seventh and Eighth, as brought against SACAC. Defendant was not misled, indeed, has argued the merit of its position both in this Motion and in its own Motion for Summary Judgment. Doc. 273. This is no basis for denial of the Motion.

## II. PLAINTIFFS COMPLIED WITH THE LOCAL RULE 56.1, IT IS DEFENDANT THAT HAS NOT COMPLIED AND ITS OBJECTIONS MUST BE DISREGARDED

Defendant is unhappy that the Statement of Facts upon which Plaintiffs' Motion is grounded was previously filed [Doc. 285]. The Rule does not require the party to clutter the record with duplicate copies of the same content. Defendant doesn't claim it is prejudiced, indeed, it has filed twenty (20) page of "objections" to each numbered paragraph. It is, rather, Defendant that has not met the Rule's mandate.

Local Rule 56.1 has been promulgated to simplify the process of evaluating summary judgment motions. In *Lucero v. STI Trucking, Inc.,* 2024 U.S. Dist. LEXIS 2850 (D. Ariz. January 4, 2024), District Judge Brnovich quoted *Hunton v. Am. Zurich Ins. Co.,* 2018 U.S. Dist. LEXIS 37058 *2 (D. Ariz. March 9, 2018) as follows:

> [T]he rule "requires the controverting party to provide a specific record reference supporting the party's position if a fact is disputed; it does not permit explanation and argument supporting the party's position to be included in the response to the moving party's statement of facts." Id. (quoting *Pruett v. Arizona.* 606 F. Supp. 2d. 1065, 1075 (D. Ariz. 2009).

Judge Brnovich went on to hold that

> [E]xplanation and argument belong in the responsive motion, not in the statement of facts. If Plaintiff believes that information beyond a simple admit or deny is in order, he must admit the assertion and include additional material information in a separately numbered paragraph. Therefore, every explanation or argument supporting Plaintiff's position inserted after a "disputed" or "undisputed" response will not be considered.

*Id.,* at *6; *see, Sandoval v. Cty. Of San Diego,* 985 F.3d 657, 666 (9th Cir. 2021) (advising counsel not to file a frivolous "laundry list of relevance objections")

Even a quick scan of the Defendant's CSOF reveals that it is almost entirely "expositional facts," improper objections and pure legal argument. This Court should, therefore, in its discretion, rule that nothing of these explanations, improper objections nor arguments will be considered.

### III. ARGUMENT OF LAW

The record is clear: the unconsented examination of L.A.W. by Dr. Woolridge was conducted as part of the investigation of criminal child abuse. "[T]here is no dispute here that the Polinsky medical examinations are investigatory because the 'physician is looking for signs of physical and sexual abuse.'" *Mann v. Ct'y of San Diego,* 907 F.3d 1154, 1161 (9th Cir. 2018). Precisely the same rationale applies to FMEs conducted by SACAC.

Defendant's strident complaint that "Plaintiff fails to submit any evidence to substantiate an "anal/genital exam" *was even attempted* on L.A.W." [Memorandum, p. 7 (emphasis added] is belied by this exchange with Dr. Woolridge and the detailed testimony that follows in Doc. 282-1:

Q. Why did you commence to perform a genital anal (sic) exam on this child?

A.  It's part of the body surface exam.

Woolridge MPSJ SOF, ¶42; Woolridge excerpt, 137:5-7; Doc. 282-1.

Defendant SACAC itself placed into the record the Pima County Protocols for the *Multidisciplinary Investigation of Child Abuse.* (emphasis added) [hereafter, "PCP's"]. This title really says it all. But the document continues: "[m]edical exams are needed in most physical abuse incidents wherein legal proceedings are anticipated. It will be necessary to collect physical evidence related to the child's condition or injuries." Woolridge MPSJ SOF ¶16; Defendant SACAC MSJ, Doc. 274-1, PCP, Doc. 282-4, p. 23.[1]

SACAC concedes, therefore, that its *raison d'etre* is to partner with law enforcement in securing evidence through the Forensic Interview[2] followed by the Forensic Medical Examination. This is precisely the "complex and deeply intertwined process of evaluating and detaining individuals" that converts purely private conduct into willful participation with the state. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 750 (9th Cir. 2020). This undisputed record conclusively establishes that the *policy* of the

---

[1] Although not dispositive of the record, it bears noting that SACAC's co-Defendant has conceded the Plaintiffs' recitation of facts [Doc. 296] and actually restated many of those facts in his Statement of Facts filed in support of his own Motion for Summary Judgment [Doc. 298], including that conducting an FME is a coordinated effort between law enforcement and the forensic examiner. Id., ¶35. Likewise, Woolridge concedes the public pronouncements of the Center in its website. Id., ¶¶12, 14, 18, 21.

[2] See, testimony of Megan Rau, that the FI is "interviewing a child for court." Woolridge, SOF ¶15.

Defendant was the moving force behind the actions of Dr. Woolridge. Defendant has presented no evidence that Woolridge's actions were taken outside of the SACAC's status as an investigatory arm of law enforcement, nor outside his duties as a forensic examiner.

The *Wallis* rule bears restating here:

> [T]he Constitution assures parents that, in the absence of parental consent, physical examinations of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents, and an opportunity to be heard, that grounds for such an examination exist and that *the administration of the procedure is reasonable under all the circumstances.*

*Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000) (emphasis added).

It was standard operating procedure at SACAC for a child to be subjected to a genital/anal examination without any allegation that the child had been sexually abused, and, as in the instant case, when the child was calm and had no complaints of pain and only a single mark on his leg. The administration of this procedure by Dr. Woolridge and Det. Johnston was unreasonable, and, frankly outrageous to any parent.

No doubt recognizing that Plaintiffs' facts require a ruling that the examination violated the Constitution, Defendant turns to the exceptions to parental consent or a court order. Defendant first suggests that the child had an urgent medical need, citing from one question and answer. Motion, p. 6. Defendant omits the exchanges that follow that isolated quote. Dr. Woolridge has no recollection of that examination. Woolridge MPSJ SOF, ¶31. Hence, the only evidence of the examination is found in his report. Here is the exchange that belies the claim the child had any urgent medical condition:

Q. Where in the records does it show urgent medical condition existing with this child when you commenced the exam?

A. I clearly had enough grounds to drive in.

Q. I didn't ask you that. Urgent medical condition requiring urgent medical care. Where did you record that in this report?

A. Per my written report, I don't see those specific words used.

Q. Okay. There was no report of possible sexual abuse of this child, true?

A. Per my note, no.

Woolridge MPSJ SOF ¶39; Woolridge excerpt, 91:5-14. Doc. 282-1.

Dr. Woolridge himself, then, concedes the absence of an urgent medical need.

Defendant then suggests that there were exigent circumstances or a "reasonable concern that material physical evidence might dissipate…." Motion., p. 11. Defendant omits the necessary completing element of such a defense – that the examination must be undertaken because there is no time to secure a court order. Under Arizona law [informed by Ninth Circuit authorities such as *Demaree v. Pederson,* 887 F. 3d 870, 879 (9th Cir. 2018), only under the most narrow circumstances may a child be taken into temporary custody under exigent circumstances, and temporary custody is a pre-condition to the conduct of an FME. A.R.S. §8-821(G), (L).

Defendant has presented no evidence that L.A.W.'s condition met the exigency standard, hence, to evidence that the child was lawfully in Det. Johnson's custody. Nor has Defendant proffered evidence that Woolridge had any concern at all *at the time he*

*commenced the examination* that "material physical evidence" would disappear if he did not undertake the examination before a court order could be secured.

Defendant, disingenuously, cites to marks on L.A.W. that Woolridge identified *after he had commenced the examination and disrobed the child*, but claims these unknown marks "indicates the immediate need for the examination…." Id., pp. 11-12. How any investigator can be concerned about evidence he doesn't know exists defies explanation. This argument does not merit this Court's attention.

On this record, not only did the examination violate the *Wallis/Mann* rule, but for the conduct by Dr. Woolridge no violation would have occurred. And the facts can lead, as well, to only one conclusion: that Dr. Woolridge's actions were taken in conformity with SACAC policy, rendering his examination private party state action, which at bottom is simply put: "*a private party has taken the decisive step* that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur ... if [the State] knowingly accepts the benefits derived from unconstitutional behavior." *Nat'l Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 192 (1988) (emphasis added). It was Woolridge and the SACAC whose conduct constituted the decisive step in the violation, surely that is incontrovertible.

The Defendant's penultimate argument, which has colored the entire defense, is that, because the PCPs' assign to law enforcement the responsibility to notify parents of *appointment times*, SACAC had no responsibility to secure parental *consent* to the

intrusive examinations; and the officer executing *SACAC's* form authorizing the examination, immunize the SACAC Defendants against constitutional liability. First, the provisions say nothing about securing parental consent. Indeed, a fair reading of the entire PCPs confirms that the omission of seeking parental consent was not an oversight. The Medical Protocol specifically provides that in SACAC releasing the findings on FME to law enforcement, parent/guardian permission is *not* required, and only post-examination will a parent be provided with pertinent positive results of labs or information necessary to the medical condition of the child. Doc. 301-1, PCP, pp. 29, 33.

But, whether by oversight or intentionally, the PCPs simply do not specify which participant in the FME is obligated to secure the consent, or, if consent is denied, the court order authorizing the Fourth Amendment search. Defendant's argument thus boils down to the claim that it cannot be liable because securing consent of the parent was not the job of its forensic examiner. But it cites no authority for this claim, because none exists.

The Defendant, without acknowledging it, is arguing an affirmative defense – upon which it bears the burden of proof. But a private entity, like a municipal entity, does not enjoy qualified immunity, nor any sort of "good faith" defense. *Wallis, supra,* 202 F.3d at 1144. Defendant argues that it complied with Arizona law. But State law, under the Supremacy Clause, cannot immunize state actors against Section 1983 liability. *Id.* If the entity, as here, engages in state action that is the cause-in-fact of the injury to the innocent citizen, the action constitutes the proximate cause of the injury as well. SACAC has no defense that the application of constitutional limitation to its actions was not so clearly

established such that it could not have known that conducting the FME without consent or a court order was forbidden. No authority countenances this argument and the argument has no merit.

Finally, Defendant argues that the facts fail to prove deliberated indifference, but simply reiterate the claim that the PCPs "delegate" duties of notification of parents to law enforcement while misstating that the Plaintiff asserts *Monell* liability on the basis of "omission." Motion, p. 15-16. This is not simply an error. As the Ninth Circuit clarified in *Sandoval v. Cty. Of San Diego*, *supra,* 985 F.3d at 682 n.17 the "deliberate indifference standard does not apply when a Monell defendant's policies, customs, or practices directly require unconstitutional conduct." Here, SACAC long-standing practice required the FME to be conducted upon authorization by law enforcement, without parental consent or court order. Hence, deliberate indifference in the adoption of the practice is not required.

Defendant cites that this Court has already held that the PCP's "do not authorize unconstitutional searches." Id. This statement goes too far. In its decision *Wright v. Southern Arizona Child Advocacy Center,* 2022 U.S. Dist. LEXIS 179104 (D. Ariz. September 30, 2022), this Court held, on a Rule 12(b)(6) motion, that Plaintiffs did not plausibly allege that the Town Defendants – not SACAC – operated under a policy unconstitutional *on its face*. "Plaintiffs fail to point to any language in the protocols which *authorizes* interrogations, seizures, or medical exams of suspected victims of child abuse without parental consent." *Id.,* at 23 (emphasis added).

This Court did not have before it on that motion to dismiss the body of facts developed through discovery laid out in this record. The question of the SACAC's protocols, customs and usages was not before the Court. The question, then, is not whether the PCP on its face *directs* that the partners conduct FMEs without first seeking parental consent. The PCPs' language that law enforcement conduct "an impartial investigation" no more answers the question than other statements quoted above. Conducting an impartial investigation, and affirmatively seeking constitutionally-mandated consent for an examination, are, it is submitted, not the same.

The question in this Motion is whether SACAC's long-standing practice, in light of no direction regarding parental consent in the policy that Defendant relies on, imposes liability. The authorities addressed answer, "yes." Even if the PCPs affirmatively directed that no FME be conducted without parental notice and consent or a court order, the long-standing practice would be actionable, "otherwise an entity, no matter how flagrant its actual routine practices, always could avoid liability by pointing to a pristine set of policies." *Castro v. Cty. Of Los Angeles,* 833 F.3d 1060, 1075 n.10. (9th Cir. 2016) (*en banc)*.

But the Defendant's argument, unintentionally it appears, leads right back to the rule that neither state law, nor, as here, a mere agreement among law enforcement and private parties, can immunize the integral participants in constitutional violations from Section 1983 liability. For a court to hold that such an agreement *does* control the

constitutional question would open a Pandora's box and eviscerate civil rights law far beyond this set of facts.

## IV. CONCLUSION

For the reasons set out in the Motion and this Reply, Plaintiffs respectfully submit that no genuine issue of material fact appears in the record as to Defendant SACAC's policy of conducting FME's when parental consent has not been secured beforehand. The practice being unconstitutional, this Court should enter judgment for Plaintiff Brian Wright individually and on behalf of L.A.W.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on January 24, 2024. Notice of this filing will be sent to all parties and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system.

                        Respectfully submitted,

                        /s/ Michael Garth Moore