Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al., <br><br> Plaintiffs, <br><br> vs. <br><br><br> Southern Arizona Children's Advocacy Center, <br><br> Defendants. | Case No.: 4:21-cv-00257-JGZ <br><br> **MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF PLAINTIFFS BRIAN WRIGHT AND L.A.W.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SEVENTEENTH AND NINETEENTH CLAIMS** <br><br> Hon. Jennifer G. Zipps <br> United States District Judge |

## SUMMARY OF ARGUMENT[1]

As discovery progressed, Plaintiffs identified specific material falsehoods and omissions in the Application for Court Authorized Removal [hereafter, "CAR"] in Plaintiffs' Objections to DCS Defendants' Statement of Facts and Controverting Statement of Facts in Support of their Memorandum in Opposition to the DCS

---

[1] In preparing this Motion, the undersigned conferred with counsel for the DCS Defendants, understanding that these Defendants are filing an early motion for summary judgment, and proposed adopting the Court's recommendation for the briefing of cross-motions for summary judgment. Doc. 99, ¶13. Counsel declined that proposal.

1

Defendants' Motion for Summary Judgment, Doc. 346 [hereafter "Doc. 346, ¶__"], from which Defendants Talamantes and Francisco secured the Court order on December 28, 2020 authorizing them to seize L.A.W. The record now also documents falsehoods and omissions in the Dependency Petition and attachments filed on December 31, 2020 [Doc. 346, ¶¶32-39(a)-(j)]. The nature and number of these fabrications allows only one conclusion: the two Defendants, Gerardo Talamantes and Meghean Francisco, recklessly secured the court orders by judicial deception.

The events at issue here occurred between 10:13 a.m. on December 16, 2020 [when the initial Hotline call was made by the nursing assistant at Copper View Elementary School], to 11:00 a.m. on December 28, 2020, when Defendant Talamantes executed the Court Authorized Removal order he had secured that morning and took L.A.W. from Brian Wright's physical and legal custody. Doc. 346, ¶1.

The Application at issue was prepared and submitted by Defendant Talamantes at 9:00 a.m. on December 28, 2020. It was signed and returned seven (7) minutes later. Doc. 346, ¶¶20, 24.

In the Application Paragraph 6, Defendants encapsulated all the "facts" justifying the removal in the first two sentences:

> Probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect, and it is contrary to the child's welfare to remain in the home under A.R.S. §8-82l(A)…
>
> [L.A.W.] is at unreasonable risk of harm at his current home as *the parent, guardian, or custodian deliberately harmed [L.A.W.] and has caused serious or severe harm to him.*

(emphasis added).; Doc. 346, ¶¶21, 22.

In taking custody of a child, the investigator must serve on the parent a "Temporary Custody Notice." [hereafter, "TCN"]. This is a legal document and the only document the parent is served with at the time of seizure. Doc. 346, ¶29. The TCN documents the ground(s) upon which probable cause exists. Talamantes prepared the TCN at some time before 11:00 a.m. the morning of December 28th, and physically seized the child at 11:00 a.m. that same day. Doc. 346, ¶¶28, 31. The single condition chosen by Talamantes justifying removal, from the many possible ones set out in the TCN form, was: "The child has *serious injuries* which the caregiver and others cannot or will not explain, or the explanation is inconsistent with the child's injuries or condition." (emphasis added). Doc. 346, ¶30. Talamantes concedes that he did not conclude that Brian Wright was unable nor unwilling to care for the child, nor that the father exhibited violent or erratic behavior, nor that the father was so unable to manage his own behavior such as to make him unable to properly parent. *Id*.

Thus, the inclusion of these false allegations, the central pillar supporting the finding that it was "clearly necessary" that the child be removed from Brian Wright's physical and legal custody, coupled with the additional misrepresentations and omissions, was at a minimum, reckless. Summary judgment is therefore warranted on the Seventeenth Claim.

These falsehoods were carried forward and augmented by Defendants to the Dependency Petition on December 31[st.] The Application and CAR, as well as the TCN,

were appended to the Dependency Petition. Doc. 346, ¶17, 34.

The Petition alleged, among other fabrications, that "BRIAN JOSEPH WRIGHT… committed an act that constitutes *a dangerous crime against children* as defined in A.R.S. §13-705, or caused a child to suffer *serious physical injury*…." Doc. 346 (emphasis added). The Petition was filed, and the juvenile court issued *ex parte* Temporary Orders the same date, confirming custody in the Department, with the child being held in foster care. Plaintiffs' Exhibit 19, Doc. 309-15. All these allegations were made when the objective facts revealed that the "injuries" to the child were superficial, that no evidence existed that Brian Wright had caused or allowed the marks, and the Defendants knew it.

## ARGUMENT

### I.  LIABILITY OF PROGRAM SUPERVISOR FRANCISCO

In this Court's decision denying Defendant Francisco's Motion to Dismiss, the Court wrote that "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Wright v. S. Arizona Child.'s Advocacy Ctr.,* 2023 U.S. Dist. LEXIS 42808 at **5-6 (D. Ariz. March 14, 2023), citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013). Neither the presence of the supervisor when the unconstitutional misconduct happens, nor her specific direction of unconstitutional misconduct, is required. *Starr v. Baca,* 652 F.3d 1202, 1205-06 (9th Cir. 2011).

The substance of an AZDCS investigation, according to Department policy, is to be captured in the "Child Safety & Risk Assessment" [hereafter, "CSRA"] module within the CHILDS database used by AZDCS. Doc. 346, ¶10.

The record now reveals dispositively that Francisco participated in and directed the decision to file the Application for the CAR and the Dependency Petition with full knowledge of the facts – and the absence of facts. AZDCS policy provides that at every "key decision point" from pre-commencement to investigative closure, the supervisor is to engage the investigator in a "clinical discussion" which "shall proactively prepare the DCS Specialist for key activities and decisions in the life of the case….". Plaintiffs' Supplemental Statement of Facts, ¶¶1-2 [hereafter, "SSOF ¶¶__"]. Key decisions points include (1) the investigator's pre-commencement planning of the investigation before he goes into the field to make contact with the family [SSOF ¶5]; (2) the determination whether or not the child is in "present danger," [SSOF ¶6] [necessarily the first decision made]; (3) if the child is in present danger, formulation of a Present Danger Plan [hereafter, "PDP"]; and, (4) the conduct of the "Family Functioning Assessment" [hereafter, "FFA"] at the completion of the investigation including the decision whether or not the child should be removed [SSOF ¶¶7, 8, 9]. In the instant case, the Defendants secured temporary custody of L.A.W. through the CAR on the allegation that the child was in "impending danger" on the morning of December 28th and the only option was

removal. Doc. 346, ¶22. Francisco was, as with all decisions, actively engaged with Talamantes in making a "mutual decision" as to actions to be taken. *Id.*

This evidence conclusively establishes that Francisco is jointly liable for violations as asserted in the Seventeenth and Nineteenth Claims.

## II. THE VIOLATIONS ARE DETERMINED BASED ON FACTS KNOWN TO THE DEFENDANTS AT THE TIME THEY TOOK THE ACTIONS – NO AFTER-THE-FACT EVIDENCE IS RELEVANT.

The genesis of the liability of children's services agents for judicial deception is found in the Ninth Circuit authority addressing the liability of law enforcement for fabrication in support of search and arrest warrants. *See, Costanich v. Dep't of Soc. & Health Svc's,* 627 F.3d 1101, (9th Cir. 2010); *Spencer v. Peters,* 857 F. 3d 789, 798-802 (9th Cir. 2017). The same standards apply.

"[A]ll data necessary to show probable cause for the issuance of a [Court Authorized Removal order] must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde,* 440 F. 3d 1065, 1067 (9th Cir. 2006) (*en banc*) (citation omitted); *United States v. Hove,* 848 F. 2d 137, 140 (9th Cir. 1988) ('An obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge."); *United States v. Thai Tung Luong,* 470 F.3d 898, 905 (9th Cir. 2006) (unsworn, unrecorded oral colloquies inadmissible to show good faith of officer).

Information coming to the affiant's attention *after the issuance of the order sought* is irrelevant. *United States v. Sandoval-Venegas*, 292 F.3d 1101, 1105 (9th Cir.

2002) ("[C]ourts look to the totality of the circumstances known to the officers in determining whether there is probable cause for an arrest").

Hence, the fact-finder – in this instance, this Court – cannot consider any proffer of evidence by Defendants as to (1) what they claim to have known that allegedly supported probable cause for removal but was not included within the four corners of the Application for CAR, nor (2) what they or their successors learned at a later time which would tend to favor probable cause at the *earlier time.*

The same lesson applies to the defense of qualified immunity. Where the ground(s) allegedly supporting justification for removal are contravened by fact, the Defendants cannot claim qualified immunity. *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995).

### III. DEFENDANTS HAD NO EVIDENCE THAT THE MARKS OR BRUISES ON L.A.W. CONSTITUTED "SERIOUS PHYSICAL INJURIES" LET ALONE "SEVERE INJURIES": THE ALLEGATION IN APPLICATION FOR THE COURT AUTHORIZED REMOVAL, THEREFORE, MUST BE HELD TO HAVE BEEN A MATERIAL MISREPRESENTATION AS A MATTER OF LAW WHICH WAS CARRIED FORWARD INTO THE DEPENDENCY PETITION

For the correct analysis of the issues addressed in this Motion, the Court need only turn to its own decision in *Daschke v. Hartenstein,* 420 F. Supp. 3d 919 (D. Ariz. 2019), and the authorities cited therein. Whether a false statement [or omission of a fact] is made, and whether that inclusion or omission was made deliberately or recklessly, is a question of fact. Whether the falsehood or omitted fact was material to the judicial order, such that probable cause was illusory, is a question of law for the Court whether on

summary judgment or at trial. *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir. 1997; *Butler v. Elle,* 281 F.3d 1014, 1024 (9th Cir. 2001).

The evidence establishes that the Defendants rushed to judgment on the afternoon of December 16th in concluding that L.A.W. was in "present danger" requiring immediate intervention by the department. This evidence is highly probative of recklessness in subsequent submissions to the Juvenile Court. First, Talamantes' actions failed to conform to his obligations under AZDCS policy. The initial report to the DCS Hotline, which came from the school at 10:13 a.m, according to the narrative subsequently downloaded to Francisco, and by her to Talamantes, described a single mark on the left hamstring of the child, who had been known to have "little boy bruises," the child denying knowing how he got the particular mark which had *not* been present the day before. SSOF ¶¶11-12. Talamantes, in conducting his "pre-commencement" inquiries, failed to contact the reporting source – the school nursing assistant -- at all. SSOF ¶20.  The investigator, when he did speak to an unidentified law enforcement "source," at 2:37 p.m. that day [SSOF ¶22], failed to collect the salient evidence necessary to assess family functioning, the history of how the injury might have occurred; nor did he ask for contact information on other "collaterals" who would have knowledge. Hence, he made no contact with such collaterals – which would have included the key staff at the school – to learn anything about the events at the school or the child's past history.

Talamantes then showed up at the Southern Arizona Child Advocacy Center [hereafter, "SACAC"] at 3:30 p.m., but has little recollection of what he did there. One thing he did *not* do was to observe the body of the child for evidence of injury, a requirement of each investigation. Doc. 346, ¶12. In fact, he never *did* observe the child throughout his twelve (12) day investigation. Although he knew that a Forensic Medical Examination [hereafter, "FME"] had been conducted, and that photographs had been taken, he did *not* see those photographs that afternoon nor at *any time* before he removed the child on December 28th. Doc. 346 ¶¶11, 16(d). Nor did Talamantes ever interview the child.

The only evidence he had of any marks or bruises was the description the forensic medical examiner, Dr. Woolridge, documented in the FME report. SSOF ¶23.

This was the *only* description of the alleged injuries known to Defendants before the decision to remove on the morning of December 28, 2020 and Talamantes provided Francisco with no evidence that the child's injuries were serious. SSOF ¶10. The marks observed by Dr. Woolridge during the FME were, in fact, "superficial lesions" except for a couple penny-sized bruises on the child's buttocks [photos taken by Brian Wright the next day show almost indiscernible bruise on the right hip]. SSOF ¶¶24-25. Woolridge's use, in the report's findings, of the term "inflicted" to identify the cause of the lesions, was not intended for lay persons, but for "trained professionals" who would understand he was intending to convey that all the marks were equally likely to be caused by accident in play as by deliberate action. SSOF ¶26. Indeed, a forensic

examiner specifically looks for injuries which would qualify as "serious physical injury" under Arizona statute, *see infra,* but Woolridge found none in the examination of L.A.W. SSOF ¶24. The marks were so insignificant that Woolridge did not provide any wound care at all.

Talamantes *did,* however, see images of L.A.W.'s body during his investigation – three photos taken by Brian Wright on the afternoon of December 17th. Doc. 346, ¶14. The images, incorporated in Plaintiff's Exhibit 37, as this Court can see, reveal nothing more than a couple superficial lesions of the kind described by Dr. Woolridge in his testimony.

But on the evening of December 16th, without having seen *any* of the marks or bruises on the child, Talamantes concluded that L.A.W. was in present danger because [in addition to another identified condition not relevant to the issue here] the child demonstrated "*serious injuries* that the caregivers and others cannot and will not explain, or the explanation is inconsistent with the observed or diagnosed injuries or condition." SSOF ¶¶27-30 (emphasis added). Yet, when he made that determination, Talamantes had refused to communicate with the parents anything about the alleged injuries, and had not allowed them to explain anything.

However, five (5) days later, on the evening of December 21st, both parents gave completely consistent narratives of how the singular mark on the child's left hamstring had probably happened, and Brian Wright, in going with Talamantes through the photographs Brian had taken on the afternoon of the 17th, explained that those marks

were consistent with others he had seen on his children resulting from roughhousing. Doc. 346, ¶16(e).

On December 28th, following his final key decision point conference with Francisco, Talamantes swore out the Application for a CAR, for which his justification was the same Defendants identified in the finding of "present danger" twelve (12) days earlier – that the parent, guardian or custodian *deliberately harmed* the child and "has caused *serious or severe harm* to him." Talamantes concedes this language could lead a reader to conclude that he was alleging that Brian Wright actually harmed his son. Doc. 346, ¶22. Francisco approved this filing although she had not been presented with any evidence that Brian Wright had abused his son, nor that any mark found on the child constituted serious or severe harm. She knew, as well, that law enforcement had ruled out physical abuse on the night of December 16th, see *infra.*

In determining whether the CAR was based on other than illusory probable cause that the removal was clearly necessary, this Court, as it did in deciding the Motion to Dismiss, must turn to Arizona statutory law, particularly Chapter 8 of the Arizona Revised Code. As this Court stated in addressing the DCS Defendants' Motion to Dismiss, Arizona defines an injury which could be considered physical abuse includes that of skin bruising, no matter how slight. *Wright, supra,* 2023 U.S. Dist. LEXIS 42808 at **9-10.

Arizona requires *more* of the Defendants, however, when they allege "serious physical injury" resulting from abuse. The DCS investigator is to apply the statutory

definitions in arriving at decisions regarding abuse. Indeed, as Program Manager and Defendant Michelle Orozco testified, the statutory definitions control the actions of the investigator. Doc. 346, ¶7. The applicable law, set out in A.R.S. ¶8-201(34), reproduced in training materials given to department investigators and supervisors, states that:

> *"Serious physical injury"* is "an injury that is *diagnosed by a medical doctor* and that does any one or a combination of the following:
>
> a.  creates a reasonable risk of death
> b.  causes serious or permanent disfigurement
> c.  causes significant physical pain
> d.  causes serious impairment of health
> e.  causes loss or protracted impairment of an organ or limb.

Doc. 346 ¶5 (emphasis added).

"Severe" is a term not defined in Arizona law, but it's universally understood definition is "grievous, serious." See, e.g., Merriam Webster's New World Dictionary and Thesaurus of the American Language (1970). In short, "severe" injury as used by Defendants connotes in the mind of a reasonable reader an injury that is more than serious.

This Court must, it is respectfully requested, hold that the CAR Application's allegation, that the marks/bruises on L.A.W. were "serious or severe" is false, and that Defendants knew it was false or were reckless in including this material "fact" in the Application.

Further, the allegation that the child displayed serious physical injuries was a central pillar of the Dependency Petition [see, e.g., Doc. 346, ¶23], which Francisco

reviewed and approved, and which also bears Talamantes' sworn verification of accuracy. This, in the context of the falsehoods and omissions identified in the corrected Application [Doc. 346, ¶23] and the TDM Summary [Doc. 346, ¶39(f)] allows for no legitimate argument that the Application was *not* false in every relevant respect.

## IV. THE COURT MUST HOLD THAT THERE WAS NO PROBABLE CAUSE DOCUMENTED BY DEFENDANTS THAT BRIAN WRIGHT ALLOWED HIS SON TO BE PHYSICALLY ABUSED

Defendants concede that they had no evidence that Brian Wright had inflicted any injury on his son. It was Irlanda Wright who was the "threatening person." This Court previously quite correctly noted that, under Chapter 8, a parent can be liable for physical abuse if he "allows" another to inflict physical injury on a child. *Wright, id., at* *10, citing Ariz. Rev. Stat. Ann. § 8-201(2). The common definition of the term "to allow" is to *permit* something to happen. See, e.g., Merriam Webster's New World Dictionary and Thesaurus of the American Language (1970).

However, Defendants did *not* present evidence in the Application that would support a finding of probable cause that Brian permitted his wife to injure his child, but Talamantes framed the language to lead a magistrate to conclude that Brian Wright *himself* abused his son.

The corrected submissions allow no more than a hunch that the child had been deliberately injured by a caregiver. "Mere suspicion, common rumor, or even strong reason to suspect are not enough [to establish probable cause]." *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984), (citing *Henry v. United States*, 361 U.S. 98, 101 (1959).

13

Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities. *Gasho v. United States*, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted).

The conclusive evidence is that the Application was slanted to persuade the magistrate that Brian Wright had actually participated in the alleged abuse, and Talamantes frankly concedes that. This invokes the Ninth Circuit's admonition that, when evaluating an application, the Court's deference to the magistrate's decision must be tempered with the knowledge that "an affiant can mislead a magistrate '[b]y reporting less than the total story, [thereby] . . . manipulat[ing] the inferences a magistrate will draw.'" *United States v. Perkins,* 850 F. 3d 1109, 1117-18 (9th Cir. 2017), quoting *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), amended by 769 F.2d 1410 (9th Cir. 1985). Thus so was Talamantes' allegations.

### V.   THE SECOND JUSTIFICATION FOR REMOVAL, THAT THE FATHER'S EXPLANATION FOR THE MARKS/BRUISES WAS INCONSISTENT WITH THE DIAGNOSED CONDITION, WAS FALSE

As noted, *supra,* Defendants' alleged justification for imposition of a PDP on the 16th, and for the removal on the 28th, were the same. On the 16th, to reiterate, Talamantes' justification was that the child demonstrated "*serious injuries* that the caregivers and others cannot and will not explain, or *the explanation is inconsistent with the observed or diagnosed injuries.*"

The condition Defendants claimed justified removal at the conclusion of the investigation on December 28th was grounded on the identical allegations – (1) serious

physical injuries and (2) the caregiver's explanation being "inconsistent" with the serious injuries allegedly diagnosed.

But, as addressed, *supra,* Brian reported to Talamantes that what he had seen was consistent with marks from the siblings' roughhousing -- which itself was consistent with Talamantes' knowledge from the nursing assistant's Hotline report of the child having a history of "little boy bruises." Talamantes omitted all this from the Application and then included the falsehood that Brian told him marks on L.A.W. could have resulted from Irlanda spanking the child.

Talamantes also knew the outcome of the SPD investigation, the report of which he had received on December 23rd. That report documented the SPD's interviewing L.A.W. at the school, observing the Forensic Interview, participating in the FME, conducting searches of the entire Wright home, interviewing both parents and conducting welfare checks of the siblings. The conclusion SPD Det. Johnston reached that evening after this thorough investigation corroborated Brian's explanation that any marks/bruises were caused by roughhousing[2]. Defendants knew this but left it completely out of the Application for the CAR and the dependency petition.

---

[2] No doubt Defendants will argue that the SPD investigation was not closed the night of December 23rd, but was "on-going." However, the only report Talamantes possessed on December 28th indeed did document the conclusion stated above, and did note the disposition as "closed." This Court's analysis must be based, of course, on knowledge the affiant possessed at the time of the Application, not later-acquired information. And, whether Talamantes agreed, or not, including the conclusion of law enforcement was necessary to give the magistrate a complete and unbiased account of the facts.

There is no genuine dispute that the two facts claimed as justification for removal, (1) existence of serious or severe injuries and (2) no explanation or an inconsistent explanation for those injuries, were simply false.

### VI.  THE COURT MUST CONCLUDE THAT DEFENDANTS ARE LIABLE FOR JUDICIAL DECEPTION IN THAT THE FABRICATIONS IN THE OPERATIVE DOCUMENTS, WHEN REDACTED, LEAVE NO PROBABLE CAUSE THAT THE REMOVAL WAS "CLEARLY NECESSARY" TO ENSURE THE CHILD'S SAFETY, AND THAT THE FABRICATIONS WERE MADE IN RECKLESS DISREGARD OF THE TRUE FACTS AND LAW

The first issue is whether the statements of "fact" at issue in this Motion were false. Demonstrably, and irrefutably, they were. There was *no evidence* that any mark or bruise on L.A.W. met the legal definition of "serious physical injury" which a magistrate necessarily must apply in assessing probable cause in this specific context. Yet, Defendants included the falsehood as central to the justification for seizing the child, and, three (3) days later, securing *ex parte* Temporary Orders.

Second, the connected "fact" that the father either refused to give an explanation or that the explanation given was inconsistent with the "serious physical injuries" allegedly diagnosed is also demonstrably false.

Finally, the absence of *any* fact that Brian Wright knew, or reasonably should have known, before the afternoon of December 16th, that his wife had allegedly abused L.A.W. cannot be ignored. The concession of the Defendants that they had no evidence that Brian Wright was either unwilling or unable to provide parental care for his son refutes the claim that removal from Brian's custody was "clearly necessary" for the child's safety. SSOF ¶¶31-32. Indeed, Plaintiffs had the option of the "threatening

person" leaving the home in order to avoid separating the child from his father not been concealed from Brian by Defendants, that is precisely the action the parents would have taken. Id.

This Court's analysis of the false statements in the search warrant application in *Daschke* applies directly to the Application, Dependency Petition and supporting documents in the instant case. The same outcome, it is respectfully submitted, is fully supported by the record.

## CONCLUSION

For the reasons set forth above, Plaintiff Brian Wright respectfully requests that this Court grant this Motion, and enter judgment for himself and his minor son on the Seventeenth and Nineteenth Claims against Defendants Gerardo Talamantes and Meghean Francisco.

Respectfully submitted,

/s/ Michael Garth Moore
Michael Garth Moore (023742)
6336 N. Oracle Road, Suite 326, No. 119
Tucson, Arizona 85704
Telephone: 520-437-9440
mike@mgmoorelaw.com

*Trial Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was filed through the Court's electronic filing system on April __ 2024. Notice of this filing will be sent to all parties and counsel through the Court's filing system. Parties and counsel may access the filing through the Court's system.

                                        Respectfully submitted,

                                        /s/ Michael Garth Moore