1  KRISTIN K. MAYES
   ATTORNEY GENERAL
2
   CLAUDIA ACOSTA COLLINGS (021647)
3  Assistant Attorney General
   416 West Congress, 2nd Floor
4  Tucson, Arizona  85701-1315
   (520) 638-2815 • Fax (520) 628-6050
5  Claudia.Collings@azag.gov

6  JULIE M. RHODES (016313)
   Assistant Attorney General
7  2005 North Central Avenue
   Phoenix, Arizona 85007-2926
8  Telephone: (602) 542-7612
   Fax: (602) 542-3393
9  Julie.Rhodes@azag.gov

10 Attorneys for Defendants Francisco, Talamantes,
   Orozco, Noriega, Encinas & Sheldon
11

12              **UNITED STATES DISTRICT COURT**

13                  **DISTRICT OF ARIZONA**

14 | Brian Wright, et al., | No. CV-21-00257-TUC-JGZ |

15         Plaintiffs,

16 | v. | **DCS DEFENDANTS' SEPARATE STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIM TWENTY-TWO RE: RETALIATION** |

17 Southern Arizona Children's Advocacy
   Center, et al.,
18
         Defendants.
19

20        Defendants Encinas, Sheldon, Noriega and Orozco (collectively referred to as

21 "DCS Defendants"), through undersigned counsel and pursuant to Federal Rule of Civil

22 Procedure 56, submit their Statement of Facts (DSOF) in support of their Motion for

23 Summary Judgment on the Twenty Second Claim Regarding Retaliation.   DCS

24 Defendants incorporate by reference the DCS Defendants' Statement of Facts (Doc. 307)

25 and supporting exhibits (Doc. 331) in support their Motion for Summary Judgment.

26

## I.      Cast of Characters.

1.      Defendant Michelle Orozco, now known as Michelle Romero, was a DCS Program Manager overseeing investigative, ongoing and mixed units in the South Region. (**Exhibit A**, Declaration of Michelle Romero at ¶ 4; **Exhibit G**, Deposition of Michelle Romero at 7:10-8:5, 11:3-23.)

2.      Defendant Jeannette Sheldon was a supervisor for a DCS ongoing unit in early January 2021 when the Wright case was assigned to her unit until she transferred to the Victim Services Unit at the end of February 2021.  (**Exhibit B**, Declaration of Jeannette Sheldon at ¶¶ 4, 13.)  She supervised Joana Encinas until then and had assigned the Wright case to her.  (*Id.* at ¶ 5.)

3.      Defendant Betina Noriega was promoted to the position of supervisor for a DCS ongoing unit on February 22, 2021.  At that time, she became Defendant Joana Encinas' supervisor.  (**Exhibit C**, Declaration of Betina Noriega at ¶¶ 3, 4.)

4.      Defendant Joana Encinas, now known as Joana Rodriguez, was the ongoing DCS case specialist for the Wright case.  The case was officially transferred to her on January 5, 2021, the day that the juvenile court held the Preliminary Protective Hearing. (**Exhibit D**, Declaration of Joana Rodriguez at ¶ 3.)

5.      Plaintiff Brian Wright is the biological parent of minor Plaintiff L.A.W. (Third Amended Complaint, Doc. 204 at ¶¶ 2, 15.)

6.      Plaintiff Irlanda Wright is married to Brian Wright, is not L.A.W.'s biological mother, but was his stepmother.  (Third Amended Complaint, Doc. 204 at ¶¶ 1, 2, 15, 18.)  She adopted L.A.W. on March 31, 2022.  (*Id.* at ¶ 23.)

## II.     Brian Wright's Ombudsman Complaint.

7.      On December 29, 2020, Brian Wright made a complaint to the DCS Ombudsman's Office regarding L.A.W.'s removal from his care by Defendant Talamantes and another DCS employee, Derrick Wyatt, that occurred on December 28,

2020.   The focus of the complaint was Wyatt's alleged threatening and intimidating conduct toward Mr. Wright.   (Exhibit. A at ¶ 5; **Exhibit A1**, DCS Ombudsman Complaint; **Exhibit E**, Plaintiffs' Responses to Requests for Admissions, RFA No. 28; Ex. G at 139:7-15.)

8.   Wright's December 28, 2020 Ombudsman Complaint did not mention DCS Defendants Encinas, Sheldon, Noriega, or Orozco.   (Ex. A at ¶ 6; Ex. A1; Ex. E at RFA No. 29.)

9.   Wright's Ombudsman Complaint came to the attention of DCS Defendant Michelle Orozco when the Ombudsman Office advocate forwarded a copy of the complaint to her and DCS Investigative Supervisor Jason Dedmon in an email dated December 29, 2020.   (Ex. A at ¶ 7; **Exhibit A2**, DCS Ombudsman emails to Romero; Ex. G at 137:15-139:25.)

10.   The Ombudsman Office advocate indicated in the email to Orozco that they had recommended that Mr. Wright first try to resolve his concerns with the investigative supervisor, Jason Dedmon.   The advocate also noted that the matter regarding the child's removal and the allegations to support the removal would be discussed at an upcoming team decision making meeting.  (Ex. A at ¶ 8; Ex. A2.)

11.   On December 30, 2020, Wright acknowledged to the Ombudsman Office advocate that with his attorney, they would be addressing his concerns with the DCS supervisor.  (Ex. A ¶ 9; **Exhibit A3**, DCS Ombudsman emails to Wright.)

12.   Wright's Ombudsman Complaint came to the attention of DCS Defendant Francisco from Defendant Orozco in early January 2021.   (**Exhibit H**, Deposition of Meghean Francisco at 190:8-17, 220:16-22.)   At the time, Francisco was a program supervisor for investigations.  (*Id.* at 7:11-15.)

13.   On January 11, 2021, Orozco followed up with Jason Dedmon and Meghean Francisco regarding any updates on addressing the allegations in Wright's Ombudsman

Complaint.  Orozco asked Francisco to follow-up with Wyatt to discuss the allegations in the complaint and to let her and Dedmon know what his response was.  (Ex. A at ¶ 10; **Exhibit A4,** Romero follow-up emails.)

14.    Francisco met the DCS employee Wyatt, who was the subject of Wright's complaint and provided a response to Orozco.  (Ex. H at 190:18-191:2; Ex. A4.)

15.    On January 12, 2021, Orozco received an update from Francisco after she met with Wyatt and received his response to the allegations in Mr. Wright's Ombudsman Complaint.  (Ex. A at ¶ 11; Ex. A4 at Wright 09913-14.)

16.    Francisco testified that she was not motivated to take any negative actions toward Mr. Wright and did not direct any negative actions toward Mr. Wright as a result of the Ombudsman Complaint.  (Ex. H at 220:16-221:12.)

17.    Orozco did not share Wright's Ombudsman Complaint with Encinas, Sheldon, or Noriega.  The Ombudsman Complaint had nothing to do with Encinas, Sheldon, or Noriega.  (Ex A at ¶ 12.)

III.    **DCS Defendants' Actions Were Not Motivated by any Retaliatory Intent.**

A.    **Defendant Orozco**

18.    Orozco did not instruct or direct Encinas, Sheldon, or Noriega or anyone under her supervision at any time to take any adverse or retaliatory actions against Mr. Wright or his family to prevent or obstruct reunification because of his filing an Ombudsman Complaint on December 28 or 29, 2020. (Ex. A at ¶ 13.)

19.    Orozco did not instruct or direct Encinas, Sheldon, or Noriega or anyone under her supervision at any time to take any adverse or retaliatory actions against Mr. Wright or his family to prevent or obstruct reunification because of his ongoing concerns, advocacy, or statements that he made during meetings, phone calls, or communications that she was involved in during the Wright case.  (Ex. A at ¶ 14.)

///

20.     Neither Mr. Wright's Ombudsman Complaint nor any of his expressed concerns to Orozco while the Wright case was in the ongoing case-management phase under her supervision were factors in her duty to provide case management services or efforts to reunify the family.  (Ex. A at ¶ 15.)

21.     Orozco did not retaliate against Mr. Wright and his family and never had the intent or motivation to do so.  (Ex. A at ¶ 16.)

**B.     Defendant Sheldon**

22.     Sheldon testified that it was not Orozco's practice to inform her if an Ombudsman's complaint had been made if it did not involve her or her unit.  (Exhibit I, Deposition of Jeannette Sheldon at 107:17-22.)

23.     At or near the time the Wright case was transferred from investigations to my unit, Sheldon learned that Mr. Wright was very upset about L.A.W.'s removal from his care.  (Ex. B at ¶ 6.)

24.     Sheldon was not aware that Mr. Wright had made a complaint to the Ombudsman's Office about the investigation unit.  (Ex. B at ¶ 7.)

25.     If an Ombudsman's Complaint did not involve Sheldon or someone in her unit that she was supervising, she would not have been told about it.  (Ex. B at ¶ 8.)

26.     At no time did anyone direct Sheldon to take any adverse actions against Mr. Wright or his family because of his filing an Ombudsman Complaint or because of his ongoing concerns, advocacy, or statements that he made during meetings or phone calls that Sheldon was involved in while the dependency action was open.  (Ex. B at ¶ 9.)

27.     At no time did Sheldon direct Encinas to take any adverse actions against Mr. Wright or his family because of his filing an Ombudsman Complaint or because of his ongoing concerns, advocacy, or statements that he made during meetings or phone calls while Sheldon was supervisor.  (Ex. B at ¶ 10.)

///

5

28.     Mr. Wright's Ombudsman's Complaint or any of his expressed concerns to Sheldon during Ms. Encinas' ongoing case management of the Wright case were not factors in Sheldon's duty to provide case management services or make efforts to reunify the family.  (Ex. B at ¶ 11.)

29.     Sheldon did not retaliate against Mr. Wright and his family and never had the intent to do so.  (Ex. B at ¶ 12.)

**C.     Defendant Noriega**

30.     Noriega was not aware that Mr. Wright made a complaint to the Ombudsman Office in December 2020.   She would not have known about his Ombudsman Complaint because it did not involve her as an ongoing case specialist or anyone in her ongoing unit and because she was not an ongoing supervisor at that time. (Ex. C at ¶ 5.)

31.     At no time did anyone direct Noriega to take any adverse or retaliatory actions against Mr. Wright or his family because of his filing an Ombudsman Complaint. (Ex. C at ¶ 6.)

32.     At no time did anyone direct Noriega to take any adverse or retaliatory actions against Mr. Wright or his family because of his ongoing concerns, advocacy, or statements that he made during meetings or phone calls that she was involved in while the dependency action was open.  (Ex. C at ¶ 7.)

33.     Noriega did not direct Ms. Encinas to take any adverse or retaliatory actions against Mr. Wright or his family because of his filing an Ombudsman's Complaint or because of his ongoing concerns, advocacy, or statements that he made during meetings or phone calls while she was supervisor.  (Ex. C at ¶ 8.)

34.     Neither Mr. Wright's Ombudsman Complaint nor any of his expressed concerns to Noriega during Ms. Encinas' ongoing case management or her supervision of the Wright case was a factor in her duty to provide case-management services or to make

1   efforts to reunify the family.  (Ex. C at ¶ 9.)

2       35.    Noriega did not retaliate against Mr. Wright and his family and never had

3   the intent to do so.  (Ex. C at ¶ 10.)

4       **D.**    **Defendant Encinas**

5       36.    Encinas was not aware that Mr. Wright had filed a complaint with the

6   Ombudsman Office that involved the actions of the DCS employees on the day of

7   L.A.W.'s removal.  She was not involved in the Ombudsman Complaint, and she did not

8   receive a copy of it.  (Ex. D at ¶ 4.)

9       37.    Encinas was never instructed or directed by anyone in DCS to not fulfill her

10  case management duties or to obstruct the reunification process for the Wright family.

11  (Ex. D at ¶ 5.)

12      38.    Encinas did not obstruct Mr. Wright's efforts to reunify with L.A.W. or

13  intentionally take any actions to prevent Mr. Wright from having physical custody of

14  L.A.W.  (Ex. D at ¶ 6.)

15      39.    Mr. Wright's Ombudsman Complaint or any of his expressed concerns to

16  Encinas while she was the ongoing case manager of the Wright case were not factors in

17  her duty to provide case management services or in her efforts to reunify the family.  (Ex.

18  D at ¶ 7.)

19      40.    Encinas did not retaliate against Mr. Wright and his family and never had

20  the intent to do so.  (Ex. D at ¶ 8.)

21      41.    After the juvenile court dismissed the dependency action on October 14,

22  2021, Encinas close the case.  (Ex. D at ¶ 9.)

23  **IV.**    **Brian Wright's Discovery Responses.**

24      42.    In January 2021, DCS placed a referral for a Rapid Response Assessment on

25  L.A.W and the Intermountain Centers was the contracted provider that conducted the

26  assessment and recommended services for L.A.W.  (Ex. E at RFA No. 16)

43.    Intermountain Centers provided family therapy for the Wright family including Brian Wright and L.A.W.  (Ex. E at RFA No. 17.)

44.    Paternal grandmother, Lisa Pugliano, made a hotline call to DCS on February 11, 2021 expressing "lots of concerns" for L.W. while L.W. was living in the care of Brian and Irlanda Wright.  (Ex. E at RFA No. 19.)

45.    Paternal grandmother, Lisa Pugliano, expressed concerns to employees at Intermountain Centers about statements that she said Brian Wright was making to L.A.W. and that L.A.W. was repeating those statements in her home including: "Mimi, you kidnapped me"; and "Mimi is stupid, she doesn't know anything."  (Ex. E at RFA No. 20.)

46.    In April 2021, DCS offered psychological evaluations to Brian and Irlanda Wright, but both declined to undergo the evaluations on advice of counsel. (Ex. E at RFA No. 21.)

47.    The juvenile court approved DCS's recommendation that Brian and Irlanda Wright undergo psychological evaluations.  (Ex. E at RFA No. 22.)

48.    On August 26, 2021, the Pima County Juvenile Court refused to dismiss the dependency action.  (Ex. E at RFA No. 26.)

49.    On October 14, 2021, the Pima County Juvenile Court dismissed the dependency.  (Ex. E at RFA No. 27.)

50.    In addition to his Ombudsman Complaint, Brian Wright stated that he continually expressed his "concerns" to Encinas, Sheldon, Noriega, and Orozco in calls, meetings, Child and Family Team meetings, Team Decision Making meetings, and emails in January, February, March, April, and June 2021 to support his retaliation claim. (**Exhibit F**, Plaintiffs' Responses to Non-Uniform Interrogatories, NUI No. 1.)

///

///

1       RESPECTFULLY SUBMITTED this  10th  day of May, 2024.

2                                   **KRISTIN K. MAYES**
                                  **ATTORNEY GENERAL**

3

4                                   /s/Claudia Acosta Collings
                                  CLAUDIA ACOSTA COLLINGS

5                                   JULIE M. RHODES
                                  Assistant Attorneys General

6                                   Attorneys for Defendants Francisco,
                                  Talamantes, Orozco, Noriega, Encinas &

7                                   Sheldon

8

9                           CERTIFICATE OF SERVICE

10       I hereby certify that on 10th day of May, 2024, I caused the foregoing document to

11 be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing
and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

12

13 Michael Garth Moore
mike@mgmoorelaw.com

14 *Attorney for Plaintiffs*

15 Tom Slutes
Slutes, Sakrison & Rogers, P.C.

16 Tslutes@sluteslaw.com
*Attorneys for Defendant Dale Woolridge, MD*

17

18 Robert Grasso, Jr.
Pari K. Scroggin
Pamela L. Judd

19 Grasso Law Firm, P.C.
rgrasso@grassolawfirm.com

20 pscroggin@grassolawfirm.com
pjudd@grassolawfirm.com

21 *Attorneys for Defendants Southern Arizona Children's
Advocacy Center*

22

23 /s/slf
12049220

24

25

26

9