KRISTIN K. MAYES
ATTORNEY GENERAL

CLAUDIA ACOSTA COLLINGS (021647)
Assistant Attorney General
416 West Congress, 2nd Floor
Tucson, Arizona 85701-1315
(520) 638-2815 • Fax (520) 628-6050
Claudia.Collings@azag.gov

JULIE M. RHODES (016313)
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85007-2926
Telephone: (602) 542-7612
Fax: (602) 542-3393
Julie.Rhodes@azag.gov

Attorneys for Defendants Francisco, Talamantes, Orozco, Noriega, Encinas & Sheldon

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Wright, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Southern Arizona Children's Advocacy Center, et al., <br><br> Defendants. | No. CV-21-00257-TUC-JGZ <br><br> **DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT ON JUDICIAL DECEPTION CLAIMS (DOC. 375)** |

Defendants Francisco and Talamantes request this Court grant summary judgment pursuant to Rule 56 on Claims Seventeen and Nineteen in Plaintiffs' Third Amended Complaint (Doc. 204) alleging judicial deception. Plaintiffs' Response (Doc. 400) added no legal authority or factual support that would lead a reasonable juror to conclude that the Defendants made material misrepresentations or omissions in the Application for Court Authorized Ex Parte Removal ("Application") or the Dependency Petition

("Petition"). Nor can they establish that either Defendant acted deliberately or with reckless disregard in adding or omitting any perceived errors in the documents.

**I. THE RECORD SUPPORTS THAT THE REMOVAL AND CONTINUED TEMPORARY CUSTODY WERE CLEARLY NECESSARY TO PREVENT FUTURE ABUSE OF L.A.W.**

Plaintiffs' Response to the Cross-Motion for Summary Judgment (Doc. 400) focuses almost exclusively on the argument that this Court not consider any evidence or findings developed during the underlying state court proceeding. (Doc. 400 at 2.) This urgent plea to prevent this Court from considering that information is because Plaintiffs' judicial deception claims cannot withstand the scrutiny. In this Court's ruling on DCS Defendant's Motion to Dismiss (Doc. 120), this Court telegraphed that the record likely supported a finding of probable cause "at least to an incident of physical abuse." (*Id.* at 6.) What concerned the Court was whether removal and continued custody of L.A.W. were "clearly necessary" to prevent future abuse. (*Id.*) At that time, the record was undeveloped, but now the Court has the necessary record to conclude that there is no triable issue of fact that Defendants misrepresented or omitted material facts in the Application or the Petition. At most, minor inconsistencies are present and there is no evidence to support that they intended to misrepresent the judicial officers. And once this Court finds that no judicial deception occurred, absolute or qualified immunity applies to protect the Defendants from liability. *Beltran v. Santa Clara County,* 514 F.3d 906, 908 (9th Cir. 2008); *Saucier v. Katz,* 533 U.S. 194, 200 (2009).

Plaintiffs also attempt to controvert whether the SPD investigation was closed on December 16, 2020 (Doc. 400 at 4) and for the first time argue that the investigation was closed on December 24, 2020. (Doc. 401 at 2.) Their controverting facts state:

> 2. The entire Sahuarita Police Department Detail Incident Report, including the Supplemental Narrative of Det. Johnston, completed on December 24, 2020, is Plaintiffs' Exhibit 6, Appended hereto as Appendix A.

3. In his Narrative dated December 24th, Johnston confirmed in the official report that the investigation was closed, consistent with the conclusion in the report Talamantes received on the 23rd of December. Appendix A, Wright 03691.

But, Detective Johnson further explained in his deposition that the "closed" date shown on the police report under "Disposition" does not equate to the date the actual investigation was completely shut down; rather the investigation was finally closed on January 19, 2021, after he completed his last supplemental report noting that the Pima County Attorney's Office declined to file charges against the Wrights and the case was referred to the Sahuarita Town Prosecutor. (DSSOF ¶ 35.)[1]

## II. THIS COURT MUST CONSIDER EVIDENCE THAT POST DATES THE APPLICATION AND PETITION.

Plaintiffs would like this Court to believe that the factual record for consideration by this Court ceased on December 31, 2020, when the Petition was filed in juvenile court. (Doc. 400 at 2.) The Application was filed earlier on December 28, 2020. The logic appears to be that this Court only reviews the information known by Defendants at the time that they authored and/or approved the two documents in question and that consideration of any post-dated evidence is a backdoor argument for issue preclusion. (*Id*.) Plaintiffs are confusing two issues. Defendants agree with Plaintiffs that this Court must look at the facts, as known by the Defendants, when they completed the requisite paperwork. But this does not negate this Court's ability to consider evidence generated in the course of the underlying state court proceedings regarding the existence of material misrepresentations or omissions or the intent of the Defendants. Judicial deception requires a finding that the misrepresentations or omissions were made "deliberately or with a reckless disregard" for the truth and material to the judicial decision. By necessity,

---

[1] For the Court's clarification, there are two versions of the Sahuarita Police Department report regarding the incidents of December 16, 2020. The second version contains supplemental updates. (Doc. 271-1; Doc. 307 ¶ 1.)

3

this mandates an inquiry into the intent of the Defendants. *See Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (Judicial deception involves a state-of-mind question to determine if the party acted deliberately or with reckless disregard.) To succeed on either Counts Seventeen or Nineteen, Plaintiffs must make a substantial showing that the state court would not have signed the Application Order or the Petition Order but for Defendants' alleged deception. *Id*   Erroneous assumptions do not equate to deception. *See Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). Critical to this analysis are the actual decisions rendered by the state court as well as the testimony and evidence considered in that process. But the Plaintiffs seek to erase the state court findings on probable cause for temporary custody and re-litigate the issues.

Plaintiffs provide no legal authority for the proposition that this Court should be restricted from reviewing the state court proceedings, because none exists. In fact, the seminal cases on judicial deception clearly demonstrate that United States District Courts can and do consider evidence created or offered after the document was drafted when deciding whether there is a genuine issue of fact that a social worker deliberately fabricated facts on judicial applications to request removal of minors. *See Costanich v. Department of Social and Health Services*, 627 F.3d 1101, 1106 (9th Cir. 2010). In *Costanich* it was claimed that the social worker (1) falsified evidence in her investigation, (2) used that evidence in support of her declaration filed with the court, and (3) that the court terminated plaintiff's foster case license based on this false evidence. *Id*. at 1111. The district court reviewed the underlying state court proceeding involving rulings by an administrative law judge who considered live testimony and sworn letters when determining the fate of the foster care licensee. This fact pattern is identical to the claims here where Plaintiffs are asserting that the Application contained misrepresentations and omissions that were carried over into the Petition causing the state court to take negative actions against Plaintiffs. It is also similar to Defendants' request that this Court consider

the state court testimony, exhibits, and rulings (Docs. 307, 331) when deciding whether the documents in question contained sufficient true facts allowing the state court to rule that "probable cause exist[ed] to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect." When determining materiality, the *Costanich* court looked to the "record evidence in the form of sworn letters" that were supplied to the state court by witnesses to refute the social worker's claims in her declaration. *Id.* at 1113. The Court is responsible for determining "materiality." *Butler*, 281 F.3d at 1024.

The case most on point and factually similar is *Hart v. County of Los Angeles*, No. LA CV12-08034 JAK (FFMx), 2014 WL 12631437, *11 (C.D. Cal. 2014) (*affirmed on appeal*, 649 Fed. Appx. 462 (9th Cir. April 29, 2016)). In *Hart*, the court considered the deposition testimony proffered in the civil rights proceeding to determine the social worker's state of mind at the time she wrote the detention report in the underlying dependency action. *Id.* at *11 ("Thus, Williams states that at the time she wrote the detention report, she believed that Plaintiff had a history of drug abuse based on the contents of the prior petition concerning [redacted].") It also relied on the detention hearing record and the judge's questions to determine the state-of-mind of the defendant when drafting the declaration. *Id.* at * 14. This specifically contradicts Plaintiffs' position that the Court should resist "Defendants …dragging into consideration…such testimony, pleadings and decisions of the dependency case which long post-dated the two submissions…" (Doc. 400 at 2.)

**III.    THIS COURT SHOULD CONSIDER THE STATE COURT FINDINGS.**

In contrast to Plaintiffs' position that the Court should disregard everything that occurred in the state court when determining materiality, the *Hart* ruling went even further by undeniably and affirmatively adopting the state court judge's findings.

There remained serious allegations of [Plaintiff's] conduct sufficient to

> create a prima facie showing of the basis to detain [redacted] ***particularly given the adverse statements by the judge about Plaintiff's credibility***. Thus, even when made aware of Plaintiff's position that certain allegations in the petition were untrue, the judge still concluded that a prima facie case for detention had been made.

*Id.* at *15 (emphasis added). *Hart* relied extensively on the underlying state court transcripts to conclude no triable issue of material fact was present in the subsequent civil case.

> This back-and-forth [in the detention transcript] confirms that there is no triable issue of fact with respect to whether the alleged misstatements in the detention report were material to the decision to detain [redacted]. It reflects not only Plaintiff's continued combativeness, but confirms that the judge was satisfied that the relatively low prima facie standard was satisfied; the factual issues would be addressed in greater detail at the subsequent trial. ***Therefore, summary judgment is appropriate on this independent basis: There is no showing of a genuine issue of fact as to a causal link between the alleged misstatements by the Defendants and the decision by the judge of the Superior Court to order the detention of [redacted]. They were not material.***

*Id.* at *14 (emphasis added). This Court should follow this practice and consider the state court findings when looking at the materiality of the alleged misrepresentations or omissions. (Doc. 307 at ¶¶ 9-17, 24-28.) Plaintiffs must establish that the alleged misrepresentations caused them harm, but if they cannot prove the alleged misrepresentations affected the state court's decision, their judicial deception claims fail. Utilizing and relying upon the state court transcripts as well as additional evidence presented in those proceedings is critical to deciding whether the Defendants were negligent, made good faith mistakes, were careless, or entertained serious doubts about the truth of the publication. *See generally Franks v. Delaware,* 438 U.S. 154, 171 (1978)*; see also Costanich and Hart*. This Court should adopt the state court findings. (Doc. 307 at ¶¶ 26-28).

1  These cases make it abundantly clear that this Court should consider affidavits, exhibits, deposition testimony, prior court testimony, and prior judicial findings when deciding whether a genuine issue of material fact exists that Defendants misrepresented or omitted critical facts in the Application and Petition causing the state court to erroneously continue temporary custody to prevent future abuse. Given the extensive litigation in state court, the only plausible conclusion is that no reasonable juror could conclude that the Application or Petition contained material misrepresentations or omissions or that any misrepresentations or omissions were made intentionally or with reckless disregard for the truth. Essentially, the state court already completed the task of purging the Application and Petition of the challenged content and still found that it was clearly necessary to continue temporary custody to prevent the future abuse of L.A.W. *See Ewing*, 588 F.3d at 1224. Here, Plaintiffs have not only failed to establish that the content of either the Application or Petition contained misrepresentations or omissions, but additionally failed to establish that any errors were material.

**IV.  EXCULPATORY FACTS IN THE APPLICATION OR PETITION.**

Plaintiffs rely on *Costanich* for the proposition that exculpatory facts must be included in the Application and Petition, or more precisely, in the "investigative file and any submissions to a court." (Doc. 400 at 10.) But they are wrong because that is not the holding of *Costanich* nor is the term "exculpatory" even contained in the opinion. *See generally Costanich,* 627 F.3d 1101. *Costanich* certainly stands for the proposition that a social worker cannot fabricate evidence and concluded that "going forward, officials who deliberately fabricate evidence in civil child abuse proceedings which result in the deprivation of a protected liberty or property interest are not entitled to qualified immunity." 627 F.3d at 1114. It does not stand for the proposition that a social worker who failed to include exculpatory facts is equivalent to the fabrication of facts. *Id.* at 1111-1113. Rather, it specifically recognized that "there is no constitutional due process

right to have child witnesses in a child . . . abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way." *Id.* at 1115 (citing *Devereaux v. Abbey,* 263 F.3d 1070, 1075 (9th Cir. 2001)). It further recognized that "mere allegations that Defendants used interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983." *Id.* at 1111. Thus, Plaintiffs' arguments regarding Talamantes' deviations from standard practice, or state policy, procedures, or regulations in conducting investigations have no bearing here.

Plaintiffs chastise Defendants for referencing Ariz. R. Juv. Ct. 47.3[2] (Doc. 400 at 2) apparently interpreting the reference as an excuse to not comply with the United State Constitution. But then, Plaintiffs proceed to reference A.R.S. § 8-846(D)(1) to support their position that Defendants failed to comply with their statutory duties to conduct a thorough investigation. (Doc 400 at 10.) Once again, Plaintiffs mischaracterize the law and facts. Defendants never argued that they are immune from their constitutional duty to incorporate truthful facts in the Application/Petition avoiding misrepresentations and omissions of key facts. (Doc. 375.) However, the statutory duty "to make a prompt and thorough *investigation*…to evaluate and determine…conditions created by a party…that tend to support or refute the allegation that a child is the victim of abuse or neglect…" is not equivalent to Plaintiffs' position that Defendants are required to incorporate any and all facts discovered during their investigation into the Application/Petition itself. *See* A.R.S. § 8-846(D)(1) (emphasis added) and Ariz. R. Juv. Ct. 47.3. The statute addresses the investigation itself and the rule outlines the content requirements of the Application. A review of the juvenile court statutes and rules makes it clear that a parent's response to the investigation, presumably including their version of exculpatory facts, must be

---

[2] Now cited as Rule 327, effective January 1, 2024.

included in the "written report of the investigation" filed before the first court hearing. *See* A.R.S. § 8-823(B)(9) and § 8-824(H)[3]. Again, nothing in the statutes or rules establish that Defendants must include all information obtained during their investigation or consult with Plaintiffs to determine which facts they deem to be critical requiring inclusion in the Application or Petition.

Notably, Plaintiffs cite no authority for their proposition that the Constitution requires Defendants to incorporate any and all facts Plaintiffs perceives to be exculpatory. The Constitution protects basic due process rights but does not delve into any specific requirements. *See* U.S. Const. amend. XIV. Instead, case law tackles the specific requirements. For instance the Ninth Circuit has explained that hearsay can be included in a warrant. *See Beltran v. Santa Clara County,* 389 Fed.Appx. 679, 681 (9th Cir. 2010) (citing *Peterson v. California*, 604 F.3d 1166, 1171 n. 4 (9th Cir. 2010)). Plaintiff also does not get to dictate the content of the application to include information deemed favorable to his case. *Id.* ("We previously have stated that 'the omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed…'") (citing *United States v. Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008).

The quality of the investigation is also not determined by plaintiff. A "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Hart*, 2014 WL 12631437 at * 7 (citing *Harte-Hanks Communications Inc. v. Connaughton*, 491 U.S. 657, 667, 668 (1989)). The *Ewing* court addressed this issue and reviewed cases from other jurisdictions and concluded that not all facts were required to be submitted to the court.

> [T]he government need not include all of the information in its possession to obtain a search warrant…The omission of facts rises to the level of

---

[3] Laws 2017, Ch. 282, § 4, eff. July 1, 2018; Laws 2014, 2nd S.S., Ch. 1, § 73, eff. May 29, 2024.

9

misrepresentation only if the omitted facts 'cast doubt on the existence of probable cause.'" (*citations omitted*) … *United States v. Luciano,* 785 F.Supp. 878, 881 (D. Mont.1991) ("Certainly, an investigating officer cannot be expected to include the sum total of all of his investigation in the affidavit supporting a search warrant."). None of the details appellants cite cast doubt on the existence of probable cause.

*Ewing*, 588 F.3d at 1226. Lastly, when analyzing the requirement to include exculpatory facts in a child detention warrant, the Ninth Circuit has repeatedly emphasized that "the Fourth Amendment does not require inclusion of all exculpatory evidence." *Olvera v. County of Sacramento*, 932 F.Supp.2d 1123, 1154 (E.D. Cal. 2013) (citing *Beltran* 389 Fed.Appx. at 681) (stating that the Ninth Circuit has "upheld a warrant in the face of omitted evidence that contradicted statements in the warrant application."). Even failing to include a non-identifying witness statement does not disrupt the finding of probable cause. "The Ninth Circuit concluded that, given the strength of the identification by the one witness, omission of a non-identification by another witness 'does not cast doubt on probable cause.'" *Olvera,* 932 F.Supp.2d at 1154 (citing *Ewing*, 588 F.3d 1226-7).

In *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987), the Ninth Circuit held "[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." And, "mere negligence in checking or recording the facts…is not sufficient." *Id.* Here, Plaintiffs are asserting that the investigation was insufficient and that exculpatory evidence was excluded from the Application, but neither argument is valid when looking at the totality of the document. As noted by Plaintiffs, the Court should not parse and isolate statements, but incorporate the full context of the documents. (Doc. 400 at 4); *United States v. Perkins,* 850 F.3d 1109, 1117-8 (9th Cir. 2017). When reviewing the specific language in the Application/Petition against the backdrop of the state court rulings and transcripts, it is obvious that the totality of these two documents support a finding that continued custody was clearly necessary to protect L.A.W. from future abuse.

## V. AGGRAVATING CIRCUMSTANCES LANGUAGE IN THE PETITION.

This same logic applies to Plaintiffs' distaste for the "Aggravating Circumstances" language required by state law to be incorporated in the Petition. Plaintiffs disregard their own position, as cited in *Perkins*, that this Court should not parse and isolate statements. (Doc. 400 at 4); *Perkins*, 580 F.3d 1117-18. And, then parcel out portions of the statutory language included in the Petition to support their predetermined conclusion that Defendants alleged Brian Wright committed a dangerous crime. Plaintiffs purposely disregard the statutory language "knew or reasonably should have known that another person was committing abuse." When that language is incorporated, there is no reasonable factual dispute that the Petition's allegations are accurate. (Doc. 307 at ¶ 23.) In his forensic interview, L.A.W. reported being struck with a hand, a belt, and a Hot Wheels track at ages 4, 5, and 6. (Doc. 307 at ¶ 15.) These facts establish that physical discipline with objects was long-standing and it was accurate to include language in the Petition alleging that Brian Wright "knew or should have known" that his son was being harmed by his step-mother. (Doc. 307 at 23.)

Plaintiffs also repeatedly refer to allegations in the TDM Summary to support his claim. (Doc. 400 at 4, 12 - 14.) But there is no evidence that either Defendant authored the TDM Summary or made any alleged material misrepresentations in it to support Plaintiffs' claim of judicial deception in the Petition. (Doc. 307 at ¶20.) There is no dispute that Talamantes, Francisco, and the Wrights attended the meeting, and that the TDM facilitator was a different DCS employee altogether. (*Id*.) Accordingly, the TDM Summary has no bearing here.

## VI. CRIMINAL INVESTIGATIONS VERSUS DCS INVESTIGATIONS.

Plaintiffs assert that law enforcement and DCS are completing the same investigation with the identical end goal of determining whether or not a crime has been committed. (Doc. 400 at 3.) Plaintiffs' Response once again is devoid of any legal

11

authority to support this confusing position.  The mandate of DCS is clearly outlined in A.R.S. §8-451 and it states nothing about a social worker's duty to investigate with the purpose of establishing probable cause that a crime has been committed.  If that argument is taken to the logical conclusion, every time that DCS removes a child with a probable cause finding issued by the Court, the parent would be arrested.  The flip argument would also stand—every time law enforcement arrested a person with a finding of probable cause for a crime involving a child, DCS would take custody.  That is simply inaccurate and not how the two separate and distinct organizations function.  To that end, the Ninth Circuit has recognized that there are distinctions between criminal prosecutions and civil foster care proceedings and that the interest at stake in a criminal action "do not parallel" the interests at stake in a civil child welfare proceedings. *Costanich,* 627 F.3d at 1115.

## VII. CONCLUSION

Plaintiffs have to make a substantial showing that judicial deception occurred and they have not done so.  A review of the extensive state court proceedings and findings, upon which this Court can rely and adopt, establishes that continued temporary custody of L.A.W. was clearly necessary to prevent future harm.  This fact alone is established by the state court's ruling on the dependency adjudication on May 28, 2021.  (Doc. 307 at ¶ 28.) The state court analyzed exactly the same disputes regarding language in the Application/Petition and found L.A.W. required protection until dismissal of the dependency in October, 2021.  (Doc. 307 at ¶ 30.)  In reality, all Plaintiffs have really proven is their dislike in the word choices by Defendants including "regularly" "physical discipline" "minimized" and "serious" but that does not make the words false nor does it establish that Defendants acted deliberately or recklessly when using those phrases.  In *Gausvik v. Perez,* 3435 F.3d 813, 817 (9th Cir. 2003), the Ninth Circuit addressed word choice and concluded that substitution of the word "positive" to describe sexual abuse findings instead of "consistent with" sexual abuse findings was not an actual

misrepresentation, but only demonstrated the social worker carelessly handled the facts and the investigation. Defendants request this Court grant the Motion for Summary Judgment on Counts Seventeen and Nineteen (Doc. 375.)

RESPECTFULLY SUBMITTED this __20th__ day of June, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

/s/Julie M. Rhodes
CLAUDIA ACOSTA COLLINGS
JULIE M. RHODES
Assistant Attorneys General
Attorneys for Defendants Francisco, Talamantes, Orozco, Noriega, Encinas & Sheldon

CERTIFICATE OF SERVICE

I hereby certify that on 20th day of June, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael Garth Moore
mike@mgmoorelaw.com
*Attorney for Plaintiffs*

Tom Slutes
Slutes, Sakrison & Rogers, P.C.
Tslutes@sluteslaw.com
*Attorneys for Defendant Dale Woolridge, MD*

Robert Grasso, Jr.
Pari K. Scroggin
Pamela L. Judd
Grasso Law Firm, P.C.
rgrasso@grassolawfirm.com
pscroggin@grassolawfirm.com
pjudd@grassolawfirm.com
*Attorneys for Defendants Southern Arizona Children's Advocacy Center*

s/slf
12097687